## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | |
|---|---|
| **ANTHONY C. GUNTER,** | : |
| 1030 Dumbarton Road | : |
| Glen Burnie, MD   21060 | : |
| | : |
| Plaintiff, | :  **Civil Action No.:** |
| | :  (Jury Trial Demanded) |
| v. | : |
| | : |
| **ALUTIIQ ADVANCED SECURITY** | : |
| **SOLUTIONS, LLC,** | **:** |
| 3909 Arctic Boulevard | : |
| Suite 400 | : |
| Anchorage, AK   99503 | : |
| | : |
| Serve:  CSC-Lawyers Incorporating Service | : |
|          Company | : |
|          Suite 820 | : |
|          Baltimore, MD   21202 | : |
| | : |
| Defendant. | : |
| _____ | : |

## **COMPLAINT**

**COMES NOW**, Anthony C. Gunter, ("Mr. Gunter" or "Plaintiff"), by and through his undersigned counsel, and hereby brings this Complaint against Alutiiq Advanced Security Solutions., Inc. ("Defendant") by averring and asserting as follows:

## **INTRODUCTION**

1. This is an action brought pursuant to Maryland's anti-discrimination statute, MD. CODE ANN., STATE GOV'T § 20-606 ("Title 20"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633a, *et seq.*, as amended ("ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII") for age and gender discrimination and retaliation in the terms, conditions and discharge of employment.

1

2. These claims, supporting facts and damages set forth in this action are referred to individually or, at times, collectively as the "Lawsuit."

## THE PARTIES

3. Mr. Gunter is a 52-year-old adult male resident of the State of Maryland who at all times relevant to this Lawsuit was an "employee" of Defendant within the meaning of Title 20, Title VII and the ADEA.

4. Alutiiq Advanced Security Solutions., Inc. ("Alutiiq" or "Defendant") is a foreign corporation registered to do business in the State of Maryland with a listed principal place of business at 3909 Arctic Boulevard, Suite 400, Anchorage, Alaska 99503.

5. Alutiiq is a large federal contractor that provides a wide array of law enforcement and other services on behalf of the federal government and its agencies in installations throughout the country. In particular, Alutiiq has a federal contract whereby it provides law enforcement services for multiple United States Coast Guard facilities, including one located at 2401 Hawkins Point Road, Baltimore, Maryland 21226 – which is known as the United States Coast Guard Yard ("USCG Yard").

6. At all times relevant to this Complaint, Alutiiq was an "employer" within the meaning of Title 20, the ADEA, and Title VII. All actors and individuals identified in this Lawsuit were employees of Alutiiq acting within the scope and course of their employment and authority.

## JURISDICTION AND VENUE

7. Jurisdiction in this matter arises under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331 with a federal question involving the ADEA and Title VII. In addition, the Title 20 Maryland statutory claims set forth herein are so intertwined and related to the federal question

to form a part of the same case and controversy, thus vesting this Court with supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in the United States District Court for the District of Maryland, Baltimore Division, under 42 U.S.C § 2000e-5(f)(3) and 28 U.S.C. § 1391(b).

## ADMINISTRATIVE UNDERTAKINGS

9. On or about August 27, 2019, Mr. Gunter filed a formal charge of discrimination with the Baltimore Field Office of the Equal Employment Opportunity Commissions ("EEOC") alleging recurring discrimination and retaliation based on his age and gender.  The charge was dually filed with the Maryland Commission on Civil Rights ("MCCR").

10. On August 24, 2020, the EEOC issued a Dismissal and Notice of Rights ("NRTS") notifying Mr. Gunter that he had 90 days upon receipt of the NRTS to file a lawsuit against Defendant in federal court.

11. The EEOC's envelope enclosing the NRTS was date stamped August 27, 2020 and Mr. Gunter received the NRTS on September 2, 2020.

12. The present Lawsuit is brought within the 90-day period following Mr. Gunter's receipt of the NRTS, and is initiated within two years of certain acts, events and omissions giving rise to these claims as required by Title 20.

13. All conditions precedent necessary to file the claims contained in this Lawsuit have been satisfied.

## FACTS

### Background of Alutiiq and Mr. Gunter

14. In or around April of 2017, Alutiiq was awarded a large consolidated multi-facility security federal contract to provide armed and unarmed security and associated services with USCG facilities throughout the country.

15. At the time of the contract award Mr. Gunter was employed by Alutiiq in the position of Access Control Officer at the USCG Yard in Baltimore.

16. The USCG Yard has been the United States Coast Guard's sole shipbuilding and major repair facility for over a century.

17. Mr. Gunter's security position involved working with the USCG Police in maintaining access control; ensuring proper identification and verification of all entrants to the USCG Yard; vehicle inspections, patrols, and oversight of safety and security protocols for vessels and vehicles utilizing the USCG's waterways, among other duties.

18. Mr. Gunter was qualified for his security position at the USCG Yard. He was familiar with military protocols and is a decorated veteran and former active military member of the United States Army who received an honorable discharge.

19. In addition to his service in the military, Mr. Gunter had decades of experience in law enforcement, security, and protecting military and government assets. He spent years working as an armed guard protecting the Army's Asymmetric Warfare Group in Ft. Meade, Maryland. He guarded the Social Security Administration headquarters building. He also was an officer for the Anne Arundel County Police and Sheriff Department, among other jobs and assignments.

20. He was one of Alutiiq's most experienced Access Control Officers.

21. Mr. Gunter was also the oldest Access Control Officer employed by Alutiiq at the USCG Yard.

<u>Physical Readiness Testing; Disparate Treatment</u>

22. At the time of his hiring, Mr. Gunter's immediate supervisor was Alisha Smith ("Ms. Smith")(female; under 40 years of age). Mr. Gunter's second-tier supervisor was Norman Watts ("Mr. Watts"), the District Manager and moving force who largely oversaw, controlled and managed operations at the USCG Yard for Alutiiq.

23. While working under Ms. Smith's supervision, Mr. Gunter was forced to take and complete numerous physical readiness tests. These tests included, but were not limited to, a 1.5 mile timed run and numerous sets of sit-ups and push-ups.

24. The physical readiness test was not applied uniformly to all Access Control Officers. Females and younger officers were not required to take and pass this test. The clear import being that females were not expected to meet certain physical thresholds and that younger male officers must be fit enough that they did not need such a test.

25. On at least four occasions during his employment, Mr. Gunter was forced to take and complete this physical readiness test, whereas females and younger male officers were not subjected to this testing and rigors.

26. Mr. Watts – as District Manager – made it a point to oversee Mr. Gunter's physical readiness testing, even though a District Manager does not normally administer such testing. Mr. Watts' actions in this regard indicated to Mr. Gunter that he was viewed as too old to perform in his officer position and, therefore, needed constant physical testing due to his age. Subsequent statements confirmed Mr. Watts' age-based animus.

<u>Other Disparate Treatment</u>

5

27. In addition to physical readiness testing, Mr. Gunter was repeatedly subjected to other forms of disparate treatment in a manner that was not done to similarly situated to female or younger Access Control Officers.

28. On at least one occasion Mr. Gunter was forced to work a different shift when an officer was removed, yet no female officer was asked to do so. When Mr. Gunter complained to his supervisor that no female officer was required to change shifts, he was told "do it or be terminated."

29. In December of 2018, Mr. Gunter became ill and, following Alutiiq's policies and call-in procedures, he notified his Site Supervisor that he was sick and unable to work.

30. The next day Mr. Gunter was written up and placed on two days of administrative suspension without pay. Mr. Gunter was placed on leave despite the fact that he had done nothing wrong and had followed Alutiiq's policies for utilizing sick pay.

31. Similarly situated female and younger male officers utilized sick leave, but were not disciplined or suspended for taking sick leave or calling in sick.

32. On numerous occasions throughout his employment, Mr. Gunter was consistently denied permission to use the bathroom or take short bathroom breaks during duty. When Mr. Gunter complained to his site supervisor, Ms. Smith, she tersely informed him that the company was not required to give him a bathroom break. Yet, female officers were allowed to take breaks to use the restroom and get coffee.

33. Mr. Gunter eventually began bringing a cup to his post each day in which to urinate, otherwise he would not been able to control his bladder during his entire shift.

34. Similarly situated female and younger male officers were routinely allowed to use the bathroom facilities.

<u>New First Line Supervisor</u>

35. In January of 2019, Lieutenant Zachary Caster ("Lt. Caster") became Site Supervisor for Alutiiq at the USCG Yard and Mr. Gunter's new direct supervisor.

36. Unfortunately, the poor treatment he had suffered continued under Lt. Caster.

<u>Non-Selection:  Lead Officer</u>

37. In or around January of 2019, Alutiiq posted an opening for a position of lead officer at the USCG Yard.  An email announcing the position was forwarded to all security officers, including Mr. Gunter.

38. The Lead Officer position was a highly visible and significant opportunity in terms of pay, classification, responsibilities and career advancement.

39. Mr. Gunter applied for the position and was the most qualified and experienced candidate due to his decades of law enforcement background, training and service in the military.

40. Despite being the most qualified candidate for the position, Mr. Gunter was not chosen for the position.  Instead, a very young male applicant approximately half his age named Tical Montgomery ("Mr. Montgomery")(male, 26 years of age) with very little experience, background and qualifications in security was chosen for the position.

<u>"You Should be Glad Your Old Ass Has a Job"</u>

41. In the immediate aftermath of the selection decision, Mr. Gunter complained to his Site Supervisor, Lt. Caster, that he should have been selected for the position and that he had concerns that Alutiiq selected a younger, unqualified candidate for the Lead Officer position.

42. In response, Lt. Caster was immediately dismissive of his complaint and curtly stated "you should be glad your old ass has a job."

43. Disturbed by what he had been told, Mr. Gunter contacted his union representative about the selection decision and Lt. Caster's comments. The union representative confirmed that management felt that he was too old for the job.

44. Notwithstanding the discrimination he encountered, Mr. Gunter worked hard to build a strong work rapport with his Site Supervisor, Lt. Caster in hopes that he would not continue to be discriminated against.

45. Mr. Gunter had multiple conversations with Lt. Caster about career advancement. On at least one occasion in June of 2019, Lt. Caster confirmed that Mr. Gunter had the most seniority, and promised that when the next Lead Officer position became available, he would recommend him.

New Posting: Lead Officer -July 22, 2019

46. On July 22, 2019, Lt. Caster posted, via email, to all security officers an opening for the position of Lead Officer at the Baltimore Facility.

47. Once again, this Lead Officer position was a highly visible and significant opportunity in terms of pay, classification, responsibilities and career advancement.

48. Mr. Gunter was surprised that Lt. Caster was soliciting interest with all officers since he was the most experienced officer at the site, and Lt. Caster had previously expressed that if another opportunity came up, Mr. Gunter should get the position.

49. Frustrated by the open posting, Mr. Gunter sent an email response directly to Lt. Caster on July 29, 2019 stating "really ok i'm [sic] already senior officer by time on site but it's whatever."

50. About 15 minutes later, Mr. Gunter followed up with Lt. Caster and exchanged a series of text messages addressing why Lt. Caster had not already recommended him for the position in light of Lt. Caster's previous assurances that he would get the job.

51. Despite being the most qualified candidate for the position, Mr. Gunter was not chosen for the position. Instead, a very young male applicant approximately half his age named Cory McClure ("Mr. McClure")(male, 25 years of age) with almost no background in security or law enforcement was chosen for the position.

Mr. Gunter's EEOC Charge; Retaliatory Termination

52. Due to the ongoing discrimination, Mr. Gunter filed a charge of discrimination with the Baltimore Field Office of the EEOC, on or about August 27, 2019.

53. Mr. Gunter informed Mr. Caster that he had filed an EEOC charge because of the non-selection and the ongoing discrimination he had been subjected to at Alutiiq.

54. Mr. Gunter's previous internal complaints and his filing of an EEOC charge were protected activity in that he was attempting to oppose the practices, and treatment that he in good faith believed to be discriminatory and illegal.

55. Less than two weeks later, on September 10, 2019, Mr. Gunter received a text message from Lt. Caster informing him that he was terminated. Lt. Caster did not inform Mr. Gunter why he was being terminated.

56. Prior to his discharge, Mr. Gunter's work performance was excellent and had been for many years.

57. The discrimination, disparate treatment and acts of reprisal by the Alutiiq's employees and agents caused Mr. Gunter to sustain and continue to sustain, economic harm, emotional pain, mental anguish, humiliation and embarrassment.

## COUNT ONE
## RETALIATION- ADEA
(<u>Retaliation in the Terms and Conditions of Employment and Discharge of Employment</u>)

58.     Mr. Gunter incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

59.     At all times relevant to this Lawsuit, Mr. Gunter was an "employee" and the Alutiiq was an "employer" within the meaning of the ADEA.

60.     During the times specified in the Lawsuit and this Complaint, Mr. Gunter repeatedly engaged in protected activity by opposing, complaining and raising the illegal and discriminatory practices by complaining internally and filing his EEO complaint.

61.     The ADEA makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding.

62.     Defendant violated Mr. Gunter' right to equal employment opportunity by treating him more harshly, disciplining him, failing to promote him and discharging him, all of which caused Mr. Gunter economic damages and ongoing emotional and psychological harm in violation of the anti-retaliation provisions of the ADEA.

63.     The actions and conduct described in the Lawsuit and this Complaint were willful, entitling Mr. Gunter to liquidated monetary damages for each offense.

WHEREFORE, Mr. Gunter demands judgment against Defendant and seeks the following relief:

        A.     Economic damages;

        B.     Liquidated damages;

        C.     Prevailing party attorneys' fees, expenses, and costs;

    D.    Pre and Post-Judgment interest; and

    E.    Other relief as the nature of his causes permit.

## COUNT TWO
## DISCRIMINATION - ADEA
(Discrimination in the Terms, Conditions of Employment and Discharge of Employment)

64. Mr. Gunter incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

65. At all times relevant to this Complaint, Mr. Gunter was an "employee" and Defendant was an "employer" within the meaning of the ADEA.

66. As described in this Lawsuit, the discriminatory treatment Mr. Gunter was subjected to in the terms, conditions, benefits and discharge of his employment due to his age were in violation of the ADEA.

67. As set forth in the Lawsuit, Defendant engaged in unlawful employment practices against Mr. Gunter on the basis of his age by subjecting him to disparate treatment, harsh treatment, disciplining him, failing to promote him and discharging him in violation of the ADEA.

68. The actions and conduct described in the Lawsuit were willful, entitling Mr. Gunter to liquidated monetary damages for each offense.

WHEREFORE, Mr. Gunter demands judgment against Defendant and seeks the following relief:

    A.    Economic damages;

    B.    Liquidated damages;

    C.    Prevailing party attorneys' fees, expenses, and costs;

    D.    Pre and Post-Judgment interest; and

  E. Other relief as the nature of his causes permit.

## COUNT THREE
## RETALIATION- TITLE VII
(Retaliation in Terms and Conditions of Employment and the Discharge of Employment)

69. Mr. Gunter incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

70. At all times relevant to this Lawsuit, Mr. Gunter was an "employee" and the Alutiiq was an "employer" within the meaning of Title VII.

71. During the times specified in the Lawsuit, Mr. Gunter engaged in protected activity by opposing, complaining and raising the illegal and discriminatory practices through internal complaints and filing the EEOC complaint.

72. Title VII makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding.

73. Defendant violated Mr. Gunter' right to equal employment opportunity by disciplining him, treating him more harshly, failing to promote him and discharging him, which caused Mr. Gunter economic damages and ongoing emotional and psychological harm in violation of the anti-retaliation provisions of Title VII.

WHEREFORE, Mr. Gunter demands judgment against Defendant and seeks the following relief:

  A. Economic damages;

  B. Compensatory damages;

  C. Prevailing party attorneys' fees, expenses, and costs;

  D. Pre and Post-Judgment interest; and

      E.      Other relief as the nature of his causes permit.

## COUNT FOUR
## DISCRIMINATION- TITLE VII
(Discrimination in the Terms and Conditions of Employment and Discharge of Employment)

74. Mr. Gunter incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

75. At all times relevant to this Lawsuit, Mr. Gunter was an "employee" and the Defendant was an "employer" within the meaning of Title VII.

76. The conduct as alleged throughout this Lawsuit constitutes discrimination on the basis of Ms. Gunter's gender (male) and/or gender plus age in violation of Title VII.

77. Defendant violated Mr. Gunter' right to equal employment opportunity by disciplining him, failing to promote him, treating him more harshly and discharging him, which caused Mr. Gunter economic damages and ongoing emotional and psychological harm in violation of Title VII.

WHEREFORE, Ms. Gunter demands judgment against Defendant and seeks the following relief:

      A.      Economic damages;

      B.      Compensatory damages;

      C.      Prevailing party attorneys' fees, expenses, and costs;

      D.      Pre and Post-Judgment interest; and

      E.      Other relief as the nature of his causes permit.

## COUNT FIVE
## RETALIATION IN VIOLATION OF TITLE 20

78. Mr. Gunter incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

79. At all times relevant to this Lawsuit, Mr. Gunter was an "employee" and Defendant was an "employer" within the meaning of the Maryland State Government Article, § 20-602, *et seq.* ("Title 20").

80. During all times specified in the Lawsuit, Mr. Gunter engaged in protected activity by opposing, complaining and raising the illegal and discriminatory practices internally and by filing an EEOC charge.

81. Title 20 makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding.

82. Defendant violated Mr. Gunter' right to equal employment opportunity by disciplining him, failing to promote him, treating him more harshly and discharging him, which caused Mr. Gunter economic damages and ongoing emotional and psychological harm in violation of the anti-retaliation provisions of Title 20.

83. As a result of the retaliatory conduct, Mr. Gunter has suffered and in the future will continue to suffer economic harm and emotional pain, mental anguish and distress, justifying an award of compensatory damages.

84. Through the actions of its employees and agents, Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton and reckless disregard for Mr. Gunter's rights or with deliberate indifference to the protected rights of Mr. Gunter, entitling him to monetary damages for each offense.

WHEREFORE, Mr. Gunter demands judgment against Defendant and seeks the following relief:

    A.    Back pay and Compensatory damages in excess of 75,000.

      B.      Punitive damages;

      C.      Prevailing party attorneys' fees, expenses, and costs;

      D.      Pre and Post-Judgment interest; and .

      E.      Other relief as the nature of his causes permit.

## COUNT SIX
## DISCRIMINATION IN VIOLATION OF TITLE 20

85.    Mr. Gunter incorporates by reference all allegations and paragraphs contained in the Complaint as if more fully set forth herein.

86.    At all times relevant to this Lawsuit, Mr. Gunter was an "employee" and Defendant was an "employer" within the meaning of the Maryland State Government Article, § 20-602, *et seq.* ("Title 20").

87.    As described in this Lawsuit, the discriminatory treatment of Mr. Gunter in the terms, conditions, benefits and discharge of his employment because of his age, gender and/or age plus gender are in violation of Title 20.

88.    As a result of the discriminatory conduct, Mr. Gunter has suffered and in the future will continue to suffer economic harm and emotional pain, mental anguish and distress, justifying an award of compensatory damages.

89.    Through the actions of its employees and agents, Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton and reckless disregard for Mr. Gunter's rights or with deliberate indifference to the protected rights of Mr. Gunter, entitling him to monetary damages for each offense.

WHEREFORE, Mr. Gunter demands judgment against Defendant and seeks the following relief:

      A.      Back pay and Compensatory damages in excess of 75,000.

  B.  Punitive damages;

  C.  Prevailing party attorneys' fees, expenses, and costs;

  D.  Pre and Post-Judgment interest; and

  E.  Other relief as the nature of his causes permit.

<strong><u>DEMAND FOR TRIAL BY JURY</u></strong>

Mr. Gunter demands a trial by jury in this action on all causes in this Lawsuit.

          Respectfully Submitted,

          _____/s/_____
          Ruth Ann Azeredo  (No. 16175)
          1997 Annapolis Exchange Parkway
          Suite 300
          Annapolis, MD  21401
          (410) 558-1915
          (410) 558-1917 Fax
          ruthazeredo@comcast.net
          *Counsel for Plaintiff*

          -and-

          Timothy W. Romberger
          Fed. Bar No. 014408
          1025 Connecticut Avenue, N.W.
          Suite 1000
          Washington, D.C.  20046
          (202) 248-5053
          (703) 582-6494 Cell
          timromberger1@comcast.net
          *Counsel for Plaintiff*

Date:  November 23, 2020