**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANTHONY C. GUNTER, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No.: 1:20-cv-03410-RDB |
| ALUTIIQ ADVANCED SECURITY | * | |
| SOLUTIONS, LLC, | | |
| | * | |
| *Defendant*. | | |

\*      \*      \*      \*      \*      \*

**REPORT AND RECOMMENDATION**

In accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the U.S. District of Maryland, this case was referred to me on November 2, 2021 by Judge Bennett for discovery and all related scheduling. (ECF No. 45).  Pending before the Court is Defendant's Motion for Sanctions and Dismissal.  (ECF No. 50).  The Court has reviewed Defendant's' motion, along with Plaintiff's opposition (ECF No. 51) and Defendant's reply (ECF No. 52).  The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). Although the basis of Defendant's motion concerns discovery materials, because Defendant has requested dispositive relief in the form of dismissal, I am issuing a Report and Recommendation concerning the action I recommend Judge Bennett take. *See* 28 U.S.C. § 636(b); Loc. R. 302. For the reasons set forth below, the Court recommends that Judge Bennett GRANT in part and DENY in part Defendant's motion.

## I.    BACKGROUND

Plaintiff's Fourth Amended Complaint alleges age discrimination, harassment, and retaliation by Defendant, his employer, who is a federal government contractor. (ECF No. 35).

Plaintiff also alleges retaliation as a result of his "whistleblower" activities in which Plaintiff alleged Defendant committed fraud in over-billing the government.  *Id.*

At its core, Defendant's instant motion argues that Plaintiff fabricated certain electronic evidence produced in discovery, and withheld or spoliated other electronic evidence during the discovery process.[1]  Defendant further alleges that Plaintiff made false and misleading statements about such actions, designed to conceal his misconduct and strengthen his case. As a result, Defendant seeks dismissal of the case pursuant to Rules 41(b) and 11(c), and the Court's inherent power to police discovery misconduct.  (ECF No. 50 at 6).

More specifically, Defendant seeks dismissal based on the following allegations. First, Defendant alleges that Plaintiff altered the wording of a purported printout from a text message between Plaintiff and his supervisor to falsely suggest a retaliatory motive on Defendant's part based on Plaintiff's whistleblower activities.  (ECF No. 50, Ex. 1 at 10-11).  Second, Defendant alleges Plaintiff fabricated another series of text messages so as to falsely suggest that he was being improperly denied leave under the Family Medical Leave Act ("FMLA") compared to younger colleagues.  *Id.* at 11-13.  Finally, Defendant alleges that Plaintiff failed to produce relevant messages between him and his supervisor regarding the circumstances of his termination, and falsely testified that no such messages existed at a time when they did exist on his cellphone (as determined by a later forensic review).  *Id.* at 13-16.

In support of these allegations, Defendant offers a variety of evidence.  Defendant contrasts the messages produced by Plaintiff to the version of those messages preserved by their recipient (Defendant's supervisory employee), highlighting material differences.  *Id.* at 11-13.  Defendant

---

[1] Some of the evidence was in paper form, but purported to be printouts of electronic evidence downloaded from Plaintiff's cell phone.

also emphasizes Plaintiff's farfetched description of the process by which he claims he downloaded and printed the disputed text messages from his cell phone. *Id*. at 17-22. Defendant notes that Plaintiff's description invokes unnamed government agents and intermediaries, at least three of whom are known only as "Bob," which thwarts any verification of this process and further undermines the authenticity of the messages.  (*Id*.; ECF No. 51 at 3).  Defendant points out that Plaintiff admits, after allegedly obtaining two paper copies and an electronic copy of his cell phone text messages from the "Bobs," he destroyed one of the two paper copies, cannot locate the only electronic copy, and then selected only some, but not all, of the text messages for production from the remaining paper copy, discarding what he deemed as non-relevant messages.  (ECF No. 50, Ex. 1 at 22; ECF No. 51 at 3-4).  Defendant also scrutinizes the printout itself, calling its authenticity into question, with attention to its uneven spacing, differences in the boldness of certain words, and hand-drawn lines.  (ECF No. 50, Ex. 1 at 10-12).  Finally, Defendant highlights that when the Court ultimately ordered Plaintiff to produce his cell phone for forensic examination, none of the suspect text messages was found.  *Id*. at 26.

Relatedly, Defendant notes that Plaintiff failed to produced certain other text messages, testifying at deposition that no such messages existed.  However, following the Court-ordered production and forensic examination of Plaintiff's cell phone, responsive messages concerning his termination were located.  Plaintiff does not dispute this.

Plaintiff generally defends the authenticity of the messages.  Plaintiff acknowledges that his supervisor's version of the messages is different from the version he produced, but suggests (without evidence) that perhaps it is his supervisor who manipulated evidence.[2]  (ECF No. 51 at

---

[2] Plaintiff argues that multiple messages, if sent in quick succession, can contain the same time stamp, and the Court accepts this as true. However, other than the partially preserved paper printout allegedly generated by the Bobs, Plaintiff has no support authenticating the messages and, as importantly, no evidence that those messages were

8).  He accepts that the messages at issue were not found when his cell phone was forensically examined, but offers several explanations.  He testified that his phone sustained water damage. (ECF No. 50, Ex. 6 at 7).  He further testified that the cell carrier might have overwritten data on his phone at a certain point, given the age of the messages.  *Id*. at 11.  Plaintiff additionally suggests that because the messages from July and August of 2019 predated the filing of this lawsuit, there was no duty to preserve as he did not reasonably anticipate litigation at that time.  (ECF No. 51 at 4).

Based on the above, the Court has serious doubts about the authenticity of the text messages at issue, and finds Plaintiff's clarifications insufficient to ease such doubts. For example, concerning why the disputed messages may no longer be on his cell phone, Plaintiff offers no explanation for why his cellphone *does* contain some text messages from as early as 2017, as verified in Defendant's forensic examination of Plaintiff's cell phone ordered by the Court.  (ECF No. 50, Ex. 7). Plaintiff's assertion that his supervisor's version of the text messages might themselves be inaccurate is completely unsupported. His explanation of the alleged download process by the "Bobs" is convoluted and completely unverifiable.  Finally, Plaintiff's assertion that he had no duty to preserve the messages on his cell phone is undermined by the fact that his whistleblower complaint was filed in July 2019 and his EEOC charge was filed on August 27, 2019, according to his Fourth Amended Complaint. (ECF No. 35 at 3-4). His allegedly wrongful discharge occurred on September 10, 2019. *Id*. at 10.

However, as set forth more fully below, the Court does not have the kind of clear evidence necessary to conclude that Plaintiff fabricated the text messages so as to warrant dismissal.

---

received but deleted by his supervisor, especially in the face of contradictory messages produced by that supervisor with the same time stamp.

Additionally, Plaintiff's failure to produce other text messages relating to his termination that were later located during forensic examination of his cell phone does not warrant dismissal of the case. Nonetheless, both circumstances fully support some sanction short of dismissal, as will be explained below.

## II.   LEGAL ANALYSIS

At the outset, the Court makes three observations.  First, as addressed more fully below, the Court does not find that the prerequisites for dismissing the case pursuant to its inherent authority or Rule 41(b) are met (although the Court does not rule out those prerequisites being met in the future, depending on how the record develops).  Second, despite this matter centering on electronic evidence, Defendant does not invoke Rule 37 concerning electronic evidence, and argues that it has no application at all.  (ECF No. 52 at 5).  However, the Court concludes that Rule 37(e) controls a key portion of this dispute.  Finally, by its terms, Rule 11 is not available for discovery misconduct.  *See* Fed R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections and motions…..").  Instead, Rule 26(g) largely serves the intended purpose and will be analyzed accordingly. Each theory is explained in turn.

### a.   Dismissal under the Court's inherent power or Rule 41(c)

"Courts ... have the inherent power to dismiss a case 'when a party deceives [the] court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process.'" *Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 124 (4th Cir. 2019) (quoting *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (citation omitted)). Under its inherent power, the Court considers "the degree of culpability of the wrongdoer; the prejudice to the judicial process and the victim caused by

the misconduct; the availability of other adequate sanctions; and the public interest." *Beach Mart*, 784 F. App'x at 124 (quoting *Projects Mgmt. Co.*, 734 F.3d at 373–74 (citation omitted)).

Similarly, under the Court's ability to dismiss pursuant to Rule 41(b), the Court considers "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Griffin v. Wright Med. Tech., Inc.*, No. DKC-18-1959, 2020 WL 92208, at *3 (D. Md. Jan. 8, 2020) (quoting *O'Briant v. GAF Corp.*, No. ELH-18-2457, 2019 WL 5625761, at *5 (D. Md. Oct. 31, 2019) (quoting *Hillig v. Comm'r of Internal Revenue*, 916 F.2d 171, 174 (4th Cir. 1990))).

The Court does not have enough evidence before it to conclude that Plaintiff fabricated text messages so as to justify dismissal of his case for malfeasance at this stage. For example, unlike the court in the case relied upon by Defendant which involved a very similar issue, the Court does not have before it expert forensic evidence regarding the disputed messages. *Rossbach v. Montefiore Medical Center*, 2021 WL 3421569 at *1-3 (S.D.N.Y. Aug. 5, 2020). Nor does the Court have before it a sworn third-party declaration that renders Plaintiff's assertions factually impossible, as the court did in the other case chiefly relied upon by Defendant. *Vargas v. Peltz*, 901 F. Supp. 1572, 1576 (S.D. Fla. 1995) (moving party offering affidavit of third-party clothing manufacturer definitively establishing that it did not begin making the disputed clothing evidence until after the time allegedly claimed by proponent).

To be sure, the Court has serious doubts about the authenticity of the text messages relied upon by Plaintiff for his whistleblower and FMLA retaliation claims as noted above, but there is not the clear evidence present in the above cases to warrant the severe sanction of dismissal. Defendant raises issues with the printouts themselves which, admittedly, are a matter of

perspective.  Additionally, to the extent Defendant relies on the contents of the text *recipient's* cell phone to dispute the authenticity of the text messages, or the fact that they are now missing from Plaintiff's cell phone, there is insufficient forensic evidence to allow the Court to conclude there was fabrication. Proof or implication of such fabrication would require evidence akin to verification that the metadata from the recipient's phone rules out any deletion or manipulation, and, as to Plaintiff's phone, the time, date, and circumstances of the deletion, the lack of damage to the cell phone, or the true data over-writing practices of the cell phone carrier.[3]

More typically, the determination of the authenticity of evidence is a matter to be decided by the trial judge pursuant to the Federal Rules of Evidence, including Rules 901 and 902, not the discovery judge pursuant to the Federal Rules of Civil Procedure.  For example, Rule 902(13) and (14) set forth the manner by which such evidence can be authenticated (or disputed).  It is doubtful based on the evidence now before the Court that Plaintiff would be able to satisfy such standards of admissibility.  Regardless, the Court is not prepared to dismiss Plaintiff's case as a discovery matter at this stage based on alleged fraudulent activity.  This determination is without prejudice to Defendant raising this matter again, outside of the discovery context.

Similarly, Plaintiff's failure to produce messages regarding the circumstances of his termination was remedied by the court-ordered forensic examination of his cell phone that uncovered those messages.  Thus, the Court cannot justify the sanction of dismissal on that basis. The Court will, however, consider other sanctions under Rule 26(g) based on this failure.

b.  <u>Sanctions under Rule 37(e)</u>

---

[3] As will be addressed below in the context of Rule 37(e) remedies, a significant reason why Defendant lacks such evidence has to do with Plaintiff's failure to preserve the messages when he had a duty to do so.

Although the Court lacks the clear evidence necessary to justify dismissal under its inherent authority or Rule 41(c), the Court recognizes that a chief reason for the absence of such evidence is due to Plaintiff's failure to preserve the disputed text messages in a reasonable way so that, for example, a forensic examiner could examine the metadata surrounding the time, place, and circumstances of their creation.

As an alternative remedy, Rule 37(e) provides that when a party fails to take reasonable steps to preserve evidence that cannot be restored or replaced, and it causes prejudice to the opposing party, the court may order sanctions no greater than necessary to cure the prejudice. The Court has no difficulty concluding that Plaintiff failed to take such reasonable steps to preserve the text messages at a time when he had a duty to do so.  His whistleblower complaint was filed in July of 2019 and his EEOC charge—a necessary precursor to the current lawsuit—was filed on August 27, 2019, according to his Fourth Amended Complaint.  (ECF No. 35 at 3-4).  His allegedly wrongful discharge occurred on September 10, 2019. *Id*. at 10.  The text messages at issue were from July 29, 2019, and August 20, 2019.  Therefore, the Court concludes that Plaintiff's preservation duty was in effect at that time. Ultimately, Plaintiff's deletion of those messages in combination with the cloak and dagger account of the downloading of his cell phone by the "Bobs," and his failure to preserve the electronic copy (or even a full print copy) of that alleged download, did not fulfill his obligation to preserve evidence. Thus, Defendant was deprived of key tools to dispute the authenticity of those messages.

This situation is analogous to the situation confronted by the Court in *Ericksen v. Kaplan Higher Education*, LLC, 2015 WL 6408180 at * 4-6 (D. Md. Oct. 21, 2015).  There, defendant suspected that two documents offered by plaintiff were fabricated and, like Defendant here, offered evidence in support of that suspicion.  The *Ericksen* plaintiff's willful and intentional failure to

8

preserve her computer data and suspend file maintenance deprived defendant of the ability to clearly demonstrate that the documents were fabricated.  *Id*.  As part of its suggested remedy in that case, this Court recommended that both documents be precluded from evidence.  *Id*.  Notably, that case was decided just prior to current Rule 37(e) taking effect. The 2015 revisions to Rule 37(e) are more restrictive in that, absent evidence that Plaintiff acted with intent to deprive, neither dismissal nor an adverse inference instruction is appropriate.  Fed. R. Civ. P. 37(e)(2).  For the same reasons that it cannot conclude based on the record that Plaintiff's conduct justified dismissal under Rule 41(b) or the Court's inherent authority, the Court also cannot conclude that Plaintiff acted with an intent to deprive as the time, place, or circumstances of the now-missing data is not established. Therefore, instead, Rule 37(e)(1) governs, and instructs that the Court may order measures no greater than necessary to cure the prejudice.

The Court recommends that Plaintiff be barred from relying upon the text messages at issue—specifically the one from July 29, 2019, suggesting whistleblower retaliation, and the series of messages from August 20, 2019, suggesting FMLA retaliation. Hamstrung in its ability to challenge the authenticity of these messages given Plaintiff's failure to preserve, Defendant should not have to defend against those messages at either the motions or trial stage.

### c.   Sanctions under Rule 26(g)

There is one remaining aspect of Plaintiff's discovery behavior that falls outside of Rule 37: his denial of the existence of relevant text messages related to his termination. Plaintiff failed to produce relevant text messages relating to his termination that were ultimately found on his phone by Defendant's forensic review, and Plaintiff further testified in his deposition that he produced all such relevant messages and never received an explanation of why he was terminated. Those issues should be analyzed under Rule 26(g).

9

Rule 26(g) addresses the duty of counsel (or a *pro se* party) in responding to discovery requests. There must be "a reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand." Advisory Committee Notes to 1983 Amendments to Fed. R. Civ. P. 26(g). "What is reasonable is a matter for the Court to decide on the totality of the circumstances." *Id.* "[U]nder Rule 26(g)(2)…[the subject of the inquiry] is the thoroughness, accuracy and honesty (as far as counsel can reasonably tell) of the responses and the process through which they have been assembled." *Poole v. Textron, Inc.*, 192 F.R.D. 494, 504 (D. Md. 2000) (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 42(c), 541 (3rd edition 2000)). Most often, sanctions for violations of Rule 26(g) consist of an award of attorney's fees and/or expenses. *Id.* at 498 (citing Joseph at §44(b)).

The Court easily finds that Plaintiff did not make a reasonable effort to produce relevant information that was later located on his cell phone only after the Court ordered forensic examination. The prejudicial effect of Plaintiff's conduct was compounded by his deposition testimony indicating he had, in fact, produced all relevant information. Accordingly, the Court recommends as a sanction that Plaintiff reimburse Defendant for the cost of the forensic exam that ultimately disclosed what Plaintiff did not, unless Judge Bennett determines that Plaintiff has no ability to pay.

## III.    CONCLUSION

Accordingly, I recommend that Judge Bennett GRANT the Defendant's motion in part, and preclude any reliance by Plaintiff on the disputed text messages dated July 29, 2019, and August 20, 2019. I further recommend that Judge Bennett award as a sanction the cost of the forensic review of Plaintiff's cell phone, unless he determines that Plaintiff has no ability to pay. Finally, I recommend that Judge Bennett DENY Defendant's request to dismiss Plaintiff's case,

without prejudice to Defendant's ability to raise the issue of the authenticity/alleged fabrication of the disputed text messages in the future or at trial.

## IV.    NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report. Such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

_____/s/_____
J. Mark Coulson
United States Magistrate Judge
Dated: December 28, 2021