IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


ANTHONY C. GUNTER

     v.                                  CIVIL CASE NO.
                                        RDB-20-3410

ALUTIIQ ADVANCED SECURITY
SOLUTIONS,

     Defendant
_____/



(Motions Hearing)
Thursday, April 14, 2022
Baltimore, Maryland


Before:  Honorable Richard D. Bennett, Judge



Appearances:

     On Behalf of the Plaintiff:
     Anthony C. Gunter, Pro Se

     On Behalf of the Defendant:
     Kathleen A. McGinley  Esquire
     Larry R. Seegull, Esquire

     Also Present:
     J. Christopher Racich, President, Vestigent, LLC

----------------------------------------------------------------
Reported By:
Mary M. Zajac, RPR, FCRR
Fourth Floor, U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

1          (Proceedings commenced at 11:03 a.m.)

2          THE COURT:  This is calling the matter of Anthony

3    Gunter versus Alutiiq Advanced Security Solutions, LLC, Civil

4    Number RDB-20-03410.  We are here today on a hearing on motions

5    for sanction and dismissal, and essentially an objection to the

6    report and recommendation prepared by Magistrate Judge Coulson in

7    this case.

8          The record will reflect that, pursuant to the standing

9    orders of this court, masks are to be worn in all public areas of

10   the courthouse with the exception that in the matter of

11   appearances in court, within the discretion of the presiding

12   judge, masks may be pulled down while speaking if persons have

13   been fully vaccinated, both counsel and parties.

14         The record will reflect that I'm here up on the bench

15   behind a wall of plexiglass.  I have been fully vaccinated and

16   have had one booster shot.  I'm about ready to get another.  So

17   I'm fully vaccinated and so I have my mask pulled down.  It will

18   remain pulled down for these proceedings.  So I will inquire of

19   the parties and counsel with respect to their vaccination status

20   as we proceed.

21         You don't have to pull your mask down.  You're welcome

22   to continue to speak with a mask.  But you're permitted to pull

23   your mask down if you so desire.

24         So, with that, if the plaintiff, the pro se plaintiff,

25   Mr. Gunter, if you'll please stand, Mr. Gunter.  Good morning to

1    you, sir.

2           MR. GUNTER:  Good morning, Your Honor.

3           THE COURT:  You're proceeding pro se in this matter

4    under Local Rule 101.2, and you're entitled to do so.  Two

5    different sets of lawyers having withdrawn their appearance in

6    representing you.  But I need to inquire of your vaccination

7    status.  Have you been fully vaccinated, sir?

8           MR. GUNTER:  Yes, Your Honor.  I had two shots.  I

9    don't remember if it's Moderna or Pfizer.

10          THE COURT:  And have you had a booster shot?

11          MR. GUNTER:  Haven't had a booster but I got a CDC card

12   in my wallet.

13          THE COURT:  Then you can pull your mask down while

14   speaking.  You don't have to.  You're free to do so.  It's really

15   up to you.  Thank very much.  Thank you.

16          And then on behalf of the defendant, Alutiiq Advanced

17   Security Solutions, if counsel would identify themselves for the

18   record, please.

19          MS. MCGINLEY:  Good morning, Your Honor.  My name is

20   Kathy McGinley, from Jackson Lewis.

21          THE COURT:  Good morning, Ms. McGinley.  And have you

22   been fully vaccinated?

23          MS. MCGINLEY:  I have.  And I've been boosted as well.

24          THE COURT:  Nice to see you here.  You can pull your

25   mask down, you don't have to, but you can, while addressing the

4

1    Court.

2            If you do not pull your mask down, everyone should

3    speak clearly for Ms. Zajac, our veteran court reporter.  She's a

4    veteran because she started very early in life.  That's why she's

5    a veteran.  She has not only to keep up with a quick talking

6    federal judge, but also deal with the masks of people who are

7    speaking.

8            Thank you.  Ms. McGinley, nice to see you.  Nice to

9    have you here.

10           And on behalf, also on behalf of the defendant?

11           MR. SEEGULL:  Yes.  Larry Seegull with Jackson Lewis,

12   Your Honor.

13           THE COURT:  Yes, Mr. Seegull.  And have you been fully

14   vaccinated?

15           MR. SEEGULL:  I've been fully vaccinated and also had

16   one booster shot.

17           THE COURT:  Nice to have you here as well.  Same rule

18   applies.

19           MR. SEEGULL:  Nice to be back.

20           THE COURT:  Nice to have you back here.  Let me just go

21   over -- you all may be seated for a minute here.  Anyone else

22   who's in the gallery here should remain masked.  And I gather

23   that we have with us J. Christopher Racich, the President of

24   Vestigant, LLC, to provide expert testimony with respect to

25   texting.  Is he in the courtroom here?

1          MS. MCGINLEY:  He is, Your Honor.

2          THE COURT:  Good morning to you.  Same rule applies,

3     sir, to you, Mr. Racich.  Sir, have you been fully vaccinated?

4          MR. RACICH:  I have.

5          THE COURT:  When you're up on the witness stand, you

6     can pull your mask down.  The defendant will be presenting

7     testimony and Mr. Gunter, acting on his own behalf, pro se, will

8     be permitted to cross examine you, Mr. Racich.  And so with that,

9     you can pull your mask down while speaking as well.  So with

10    that, let me just go over what's before us here today and what is

11    not here before us today.

12          First of all, there is a preliminary matter.  There

13    are, there's a motion filed by Mr. Gunter, when he was

14    represented by counsel, for summary judgment, Paper Number 43.

15    And then there was a motion for extension of time to respond to

16    the motion for summary judgment, Paper Number 47, filed by the

17    defense.  I'm going to deal with those forthwith in that the

18    plaintiff here, Mr. Gunter, has filed an eight-count fourth

19    amended complaint -- we are now on the fourth amended

20    complaint -- raising various employment-related claims against

21    the defendant Alutiiq.

22          Am I pronouncing that name correctly?

23          MS. MCGINLEY:  Alutiiq.

24          THE COURT:  Alutiiq?  Just trying to remember, if I

25    can.  Alutiiq.  And in his complaint he alleges causes of action

1   in violation of the Age Discrimination and Employment Act, as

2   well as hostile work environment under that act, as well as

3   retaliation.

4          There's also charges under the Maryland Fair Employment

5   Practices Act in terms of retaliation, and discrimination under

6   that act as well, the state corollary to the Age Discrimination

7   Employment Act, as well as retaliation in violation of the

8   defense contractor Whistleblower Protection Act as codified in 10

9   USC Section 2409.

10         Presently pending before this Court, before we get to

11  the matters that will be addressed here today, are Mr. Gunter's

12  motion for summary judgment and Alutiiq's, as I said, motion for

13  extension of time.  These essentially will be handled forthwith

14  as follows.

15         Mr. Gunter's motion for summary judgment is going to be

16  denied without prejudice for reasons I'm going to indicate in a

17  moment.  And Alutiiq's motion for extension of time will be

18  rendered moot.

19         Mr. Gunter's motion for summary judgment is subject to

20  denial without prejudice -- it's not a prejudicial denial, it's

21  without prejudice -- mainly because it's premature.  Ordinarily,

22  summary judgment is inappropriate without the opportunity for

23  reasonable discovery.  And discovery hasn't been completed in

24  this case.  So I would not enter summary judgment on the merits

25  for either you or the defendant in this matter because there's

1    still discovery to be pending.

2         So any rulings in favor of the defendant in terms of

3    what they're seeking has nothing to do with summary judgment on

4    the merits.  It has to do with what's alleged to be discovery

5    violations.  So you're certainly, if the case proceeds, you're

6    certainly free at some point in time, both sides can file motions

7    for summary judgment once discovery is concluded.

8         Do you understand that, Mr. Gunter?

9         MR. GUNTER:  Yes, Your Honor.

10        THE COURT:  If you're going to address the Court, you

11   have to stand, sir.

12        MR. GUNTER:  I'm sorry.

13        THE COURT:  Do you understand that?

14        MR. GUNTER:  Yes, Your Honor.  You explained so

15   perfectly.

16        THE COURT:  Just so we're clear on that -- and you may

17   be seated again.  Thank you, sir.  In the middle of Mr. Gunter's

18   deposition on September the 10th of last year, 2021, I conducted

19   an off-the-record telephone conference with the parties and

20   counsel -- at that time Mr. Gunter was represented -- in response

21   to concerns or allegations that Mr. Gunter had not produced

22   relevant text messages.  And I issued a letter order on that

23   date, Paper Number 39 in the file, where I ordered Mr. Gunter to

24   produce his cell phone to Alutiiq for forensic examination.

25        Essentially, that examination revealed some previously

1    unproduced text messages dated from August 31 through September 5

2    of 2019, which addressed the circumstances of Mr. Gunter's

3    termination from employment with Alutiiq.

4              In this case, the record reflects the discovery has

5    been stayed since November 10, 2021, pending the resolution of

6    Alutiiq's motions for sanction and dismissal.  Indeed, the

7    resolution of that motion may render any summary judgment motions

8    moot.

9              So, I conclude in terms of the interest of effective

10   management of this case that the pending motion for summary

11   judgment, Paper Number 43, is premature.  So it is being

12   dismissed without prejudice.  It's not being dismissed on the

13   merits.  It's just being dismissed procedurally in light of the

14   posture of the case, until we complete discovery.

15             And I have prepared an order that will be filed later

16   today to that effect, as well as noting that the motion for

17   extension of time filed by Alutiiq, Paper Number 47, is therefore

18   rendered moot.

19             So with that, we have the matter of the only pending

20   motions that we're going to be dealing with in a second.  As a

21   corollary to that, I would note that on April the 13th,

22   yesterday, Mr. Gunter submitted 70 pages of exhibits in advance

23   of the evidentiary hearing in this matter, which is set for

24   today.  And many of these exhibits appear to be duplicative,

25   duplicates of exhibits he had submitted in support of his motion

1    for summary judgment and in support of his opposition to

2    Alutiiq's, Alutiiq's motion for sanctions and dismissal.

3           I don't really know that they're relevant for the

4    purposes of this upcoming hearing, which is addressing just the

5    matter of further discovery on the matter of allegedly altered

6    text messages.  So I have received these exhibits, Mr. Gunter.  I

7    don't know that I really need to address some of these.  This has

8    to do with the merits of your claim for discrimination and

9    retaliation.  And that's really not what we're going to be

10   addressing here.

11          To whatever extent you want to utilize some of those

12   when you cross examine the expert witness postured by the

13   defendant, Mr. Racich, you can certainly refer to those.

14          Yes, Mr. Gunter?  Yes.

15          MR. GUNTER:  I just want to say, Your Honor, part of

16   their motion for sanctions include a Rule 11 violation, which

17   says that the suit is frivolous.  So their sanctions are for 41

18   and 11.  So by submitting those exhibits, that's to address both

19   of those concerns.

20          THE COURT:  I understand.  The point is is that the

21   reality is, is that with respect to Judge Coulson's previous

22   ruling under Rule 11(d), a sanction under Rule 11(d) is not

23   available for discovery misconduct.  So in that regard you're

24   correct in that position.  That's not really, we're not dealing

25   with a Rule 11 here in this context because Rule 11(d) provides,

1    as Judge Coulson noted in his report and recommendation, Paper

2    Number 50, Rule 11(d) sanctions are not available for discovery

3    misconduct.  We're really looking at this case in the context of

4    Rule 41(c) in terms of the inherent power of this Court with

5    respect to any violations of Rule 37(e) as to spoliation of

6    evidence or with respect to Rule 26(g) in terms of cost.  And

7    that's the context of it.

8           So, Ms. McGinley, unless you have anything further to

9    add on that, that will sit.  There may or may not be some

10   reference by Mr. Gunter to some of these things he filed.  We're

11   not having a hearing on the merits of this case today.  That's

12   correct from your point of view as well, correct?

13          MS. MCGINLEY:  That's correct, Your Honor.

14          THE COURT:  All right.  Okay.  So I think we're all on

15   the same wavelength on this.  I didn't want you to think I

16   ignored it.  I've received it and I've looked at some of them.

17   But they're really not apropos to what we're going to be doing

18   here today.

19          So with that, let me just, before we hear from the

20   expert witness here and before I hear statements generally from

21   Mr. Gunter and counsel for the defendants, still pending before

22   this Court is the motion for sanctions and dismissal, which were

23   the subject of a report and recommendation by Judge Coulson here.

24   The basis of the motion concerns discovery materials because the

25   defendant has requested dispositive relief in the form of a

1    dismissal.  And Judge Coulson's report and recommendation granted

2    in part and denied in part that motion.

3         Specifically, he noted that the defendant has sought

4    dismissal first on grounds of altering a text message; secondly,

5    on fabrication of another set of text messages; and, thirdly,

6    failing to produce certain messages.

7         The defendant has briefed this matter, as has Mr.

8    Gunter.

9         Judge Coulson indicated in his report and

10   recommendation, Paper Number 53, that he, quote, "has serious

11   doubts about the authenticity of the text messages at issue that

12   were supplied by the plaintiff in discovery."  But the underlying

13   matter here is in terms of the appropriate analysis, which is

14   really, as I've said, is under Rule 41(b) and Rule 37, not Rule

15   11, and under Rule 26(g) in terms of full production as required.

16        Judge Coulson specifically noted in his report and

17   recommendation that he felt that he did not have enough evidence

18   before the Court to conclude that Mr. Gunter had fabricated text

19   messages so as to justify dismissal of the case for malfeasance.

20   And he did specifically note certain cases that had been cited by

21   the defendant, but specifically noted that he did not have before

22   him expert forensic evidence regarding the disputed messages.

23        The record will reflect that I essentially have

24   permitted there to be forensic analysis on this.  And

25   specifically, as I've noted at the conference call on September

1    the 10th of last year, I dealt with certain discovery disputes

2    and rendered certain orders here with respect to production of

3    the certain material.  Essentially, here, the fact of the matter

4    is is that I have already ruled that there could be a forensic

5    examination of the subject text messages.

6           As I understand it from Mr. Gunter's opposition to the

7    Alutiiq's objections, I'm unclear, Mr. Gunter, whether or not

8    you're still seeking to introduce those text messages as part of

9    your case.  Because I note that you have really not, you have

10   made no objection to Judge Coulson's recommendation that you be

11   precluded from relying on the allegedly fraudulent text messages,

12   specifically the July 29 and August 20, 2019 text messages.  Are

13   you still seeking to introduce those into evidence?

14          MR. GUNTER:  No, Your Honor.  As I put in my brief, I

15   am in 99% agreement with Judge Coulson's recommendations and his

16   analysis because it's thorough.  He recommended that those two be

17   precluded.  I accept that as a reality.  But these folks are

18   trying to dismiss this case, which I'm certainly standing --

19          THE COURT:  No.  I understand.  I understand that.  So

20   the point is is that, in that context, the issue becomes, one, my

21   determining whether or not they are fraudulent and whether or not

22   they were altered.  And if I make a factual finding, there can be

23   various ramifications.  The defense is seeking for that to result

24   in a dismissal under Rule 41 and Rule 37.

25          There are other parameters that can be reached by the

1    Court.  They include, they would include not having them being

2    introduced into evidence.  But you already indicated here on the

3    record -- if you'll take your hands out of your pockets, please,

4    sir -- you've already indicated that you're not seeking to

5    introduce those.  So, essentially, that becomes moot.

6           The matter may not be that easily definable for this

7    reason, which is still the need for the hearing today.  If I

8    determined, if I determine that they had been fabricated, if I

9    made a factual finding that they had been fabricated, then it is

10   possible -- I'm not sure how I'll rule on this -- it's possible

11   I'll say, fine, I'm not dismissing the case, but the defense

12   would be free to, in terms of attacking your credibility, the

13   defense would be free to introduce the correct text messages and

14   the fabricated text messages to attack your credibility.

15          MR. GUNTER:  I accept those terms, Your Honor.

16          THE COURT:  Okay.  I understand.  Okay.  And, Ms.

17   McGinley, from that point of view, that's clearly understood.

18   The record will reflect that he, Mr. Gunter, accepts that

19   reality.  So, again, I'm not ruling ahead of time.

20          So we understand the context of this, it's still

21   important for me to hear from Mr. Racich for me to make a factual

22   determination that could not be made by Judge Coulson.  And if I

23   did not dismiss the case and the case proceeded forward, you

24   certainly would be free, as that Mr. Gunter's now represented

25   himself has acknowledged, that you would be free to introduce the

1    correct text messages and what right now is contended to be the

2    fabricated text messages in a matter of challenging and attacking

3    Mr. Gunter's credibility.  Do you understand that?

4            MS. MCGINLEY:  I understand that, Your Honor.

5            THE COURT:  And you had not actually sought that, but

6    that is something that could be relief here, quite frankly.

7    Again, if the case is not dismissed.  I'm not in any way

8    prejudging your motion.

9            You have every right, the defendant in this case has

10   every right, under Rule 41 and Rule 37(b), to seek to have there

11   be a sanction of dismissal in light of what you contend to be

12   fabrication of evidence in this case.  So I am just making sure

13   we're clear as we start.

14           We've already cleared the decks on some matters that

15   really don't need to be addressed at this point in time.  I think

16   that's where we are on this matter.

17           MS. MCGINLEY:  That's where we are, Your Honor.  It's

18   our position that just barring the text messages, or even

19   allowing us to introduce that this happened, that these messages

20   were fabricated or altered or are false, would not be enough of a

21   remedy because defendant's act or plaintiff's actions have showed

22   that he is willing to fabricate and lie in sworn testimony to

23   cover up that falsity, and that no reasonable jury could ever

24   credit --

25           THE COURT:  Well, I understand that.  And it may be

1   that discovery proceeds.  And again, either side can file a

2   dispositive motion for summary judgment at the conclusion of

3   discovery because discovery's not completed yet.  And in light of

4   Mr. Gunter's acknowledgment here, the matter of attacking his

5   credibility is, again, if I find that the text messages were

6   fabricated -- I haven't been found that yet, I've got to hear

7   from the expert witness here, and I have to give Mr. Gunter an

8   opportunity, if he so chooses, to cross examine -- that will be

9   something that will certainly be weighed in that context.  I

10  understand that.

11             MS. MCGINLEY:  Okay.

12             THE COURT:  All right.  Thank you.  So I think that

13  we're just about ready to hear from the expert witness here.

14  Just one other matter just preliminarily.

15             Just finally here in terms of the, the proceedings

16  here, to make sure we're clear on the record here.  Under Local

17  Rule 301 of the rules of this court, a district judge may accept,

18  reject, or modify the recommended decision of a magistrate judge

19  in a report and recommendation or may receive further evidence.

20  And I have chosen to allow there to be receipt of further

21  evidence here in this regard.

22             So with that, I think, unless there's anything further

23  from the point of view of the plaintiff, or anything further from

24  the point of view of the defense, we are ready to hear from Mr.

25  Christopher Racich, President of Vestigant, LLC.

1          Anything further from your point of view, Mr. Gunter,

2    before we hear from the witness?

3          MR. GUNTER:  Your Honor, I just need to know if I'm

4    going to have an opportunity to make an oral argument after --

5          THE COURT:  Sure.  We're going to hear testimony and

6    I'm going to make a ruling here in terms of that.  Both sides

7    can, you know, present oral argument to me, particularly in light

8    of the matter of the defendant seeking a dismissal with prejudice

9    now at this stage of the proceeding.  You certainly will be given

10   an opportunity to do that.

11         And obviously, to the extent that if I were to dismiss

12   the case with prejudice as a result of the hearing today after

13   reflection, you certainly would have a way to appeal to the

14   Fourth Circuit Court of Appeals in that regard, obviously.

15         But I think we're ready to move on with witness

16   testimony.  Ms. McGinley, from your point of view, are we ready

17   to move on with witness testimony?

18         MS. MCGINLEY:  Yes, Your Honor.

19         THE COURT:  All right.  Sir, if you'll come forward,

20   please.

21         THE CLERK:  Raise your right hand.

22     JOHN CHRISTOPHER RACICH, DEFENDANT'S WITNESS, SWORN

23         THE WITNESS:  I do.

24         THE CLERK:  You may be seated.  Speaking directly into

25   the microphone, can you please state your full name and spell

```
1    your first and last name for the record.

2                 THE WITNESS:  It's John Christopher Racich,

3    R-A-C-I-C-H.  First name is John, J-O-H-N.  Last name is Racich,

4    R-A-C-I-C-H.

5                 THE COURT:  Thank you.  And again, Mr. Racich, you've

6    been fully vaccinated so you can keep your mask down while

7    testifying.

8                 THE WITNESS:  Thank you.

9                 THE COURT:  With that, Ms. McGinley, be glad to hear

10   from you.

11                DIRECT EXAMINATION

12   BY MS. MCGINLEY:

13   Q    Thank you, Your Honor.  Mr. Racich, where do you work?

14   A    I work at Vestigant, LLC.

15   Q    Would you please describe to the Court what your occupation

16   is?

17   A    I'm the President/CEO of the company.

18   Q    Do you have another occupation?

19   A    I do.  I do computer forensic investigations, consulting,

20   litigation support on a number of different ways.

21   Q    Could you please describe what a computer forensic examiner

22   is?

23   A    A computer forensic examiner is a person who will acquire

24   and examine computer media, whether or not that be computers,

25   servers, cell phones, thumb drives, hard drives, and establish a
```

1    timeline of events based upon the data and metadata that exists

2    within the systems.

3    Q    Is that the type of work that you do?

4    A    Yes.

5    Q    Could you explain to the Court what is metadata on, for

6    example, on a cell phone?

7    A    So, the simplest explanation is data about data.  The data

8    itself is the content.  In terms of text messages, it's going to

9    be the message or the images or the media that's sent or received

10   by, by a user.  The metadata is the data about that data.  So the

11   dates and times things were sent, where it was located on the

12   device, whether or not it was marked as deleted or active.

13   That's the sort of thing that we look at as well.

14   Q    In your practice as a forensic computer examiner, how do you

15   examine metadata?

16   A    So the first thing that we do is we have to have the media

17   in a format that allows us to review it in a way that doesn't

18   alter it in any way, because just touching data can change it.

19   So the first thing that typically is done is you create a

20   forensic image or extraction of a system, process it utilizing

21   forensic software, and review the data in a way that's human

22   readable so it can be presented in court and people can

23   understand it.

24   Q    Do you need any tools for that type of examination?

25   A    Typically, yes.  For the most part you utilize forensic

1    tools.  In the case of cell phones, Cellebrite is an industry

2    standard tool that is utilized.  And in this case that's what we

3    used.

4    Q    Does Cellebrite, can you explain how Cellebrite helps you in

5    reviewing the metadata?

6    A    Sure.  So what it does is the data is kept in the systems in

7    database format, in compressed format, in various encoding

8    formats.  And what the Cellebrite tool does is translate the

9    artifacts into a human readable format.  So you can pull out

10   things like dates, times, physical location of the data on the

11   device, and that sort of thing.

12   Q    How are forensic computer examiners --

13        THE COURT:  Can you pull that microphone just a little

14   closer to you, Ms. McGinley, for purposes of Ms. Zajac?  There

15   you go.  Thank you.

16   Q    How are forensic computer examiners useful in litigation?

17   A    As I said before, what we typically get called on to do is

18   to provide timelines of events.  So, activity on media, again,

19   whether it's computers or thumb drives or hard drives or phones,

20   and being able to establish what activity of the data.  It's a

21   very factual basis of, of identifying the issues in a particular

22   piece of media.

23   Q    At Vestigant do you provide these forensic examination

24   services for plaintiffs and for defendants?

25   A    I do.

1    Q     Could you describe your educational background?

2    A     I have a Bachelor of Arts from Cornell University, which I

3    received in 1993.  And I received my J.D. from American

4    University Washington College of Law in 1997.

5    Q     When did you start in computer forensics?

6    A     After law school I immediately started working for Kroll

7    Associates, which was the largest investigation firm in the world

8    at that point.  And I began doing computer forensics immediately

9    after law school.

10   Q     Have you received any training in the field?

11   A     Over the years, lots and lots of different types of

12   training.  Applications, specific training for certain software

13   types, computer forensics training as a whole.  I taught classes

14   on computer forensics.  And I have a, I teach a class in my old

15   law school at Washington College of Law as an adjunct professor

16   on electronic discovery and practical uses of computer forensics

17   in the E-discovery field.

18   Q     Have you received any awards or been recognized for your

19   work as a computer forensic examiner?

20   A     I have.  There was an ITC case that was submitted to be the

21   case of the year for the High Tech Crimes Investigation

22   Association.  And myself and one of my employees received an

23   award for that.

24   Q     Have you been qualified by a court to testify in court as an

25   expert in forensic examination?

1    A    Yes, I have.

2    Q    How many times?

3    A    I think I'm at 44 times at this point.

4    Q    Could you list a few of those courts briefly?

5    A    Sure.  Eastern District of Virginia, federal court in New

6    York Southern District, the International Court of Arbitration,

7    the ITC, the National Labor Relations Board, various arbitration

8    bodies, I've been qualified as an expert.

9    Q    Your Honor, at this time I would like to offer Mr. Racich as

10    an expert in the area of forensic examination.

11          THE COURT:  Yes.  Any cross examination or challenge on

12    this, Mr. Gunter, in terms of his qualifications?

13          MR. GUNTER:  No, I accept his qualifications.  They're

14    impressive.

15          THE COURT:  All right.  Thank you very much, Mr.

16    Gunter.  The Court recognizes Mr. Racich as being an expert in

17    the area of forensic examination of metadata, and under Rule 702

18    he may testify with respect to his expert opinion with respect to

19    the matters at issue as to the text messages in this matter.

20    Thank you very much.

21    BY MS. MCGINLEY:

22    Q    Mr. Racich, what were you retained to do by defendant in

23    this case?

24    A    I was asked to look at certain paper copies of produced text

25    messages and compare them to forensic images or, in one case, an

1    actual cell phone of Mr. Gunter and Mr. Castor to try to

2    determine whether or not these particular text messages matched

3    or didn't match either of the text messages that existed in the

4    actual devices.

5    Q    Have you completed this assignment?

6    A    I have.

7    Q    To do the analysis, did you have to have the training,

8    knowledge, and experience in computer forensic examination to do

9    that?

10   A    Yes.

11   Q    And why is that?

12   A    You have to understand how data and metadata actually work.

13   There is no real find-evidence button in any of these types of

14   software.  You have to actually understand what's going on under

15   the hood in order to make the determination as to what's going

16   on.

17   Q    Before we get to the specifics of your opinion, did you,

18   after completing your analysis, prepare a report?

19   A    I did.

20   Q    And this is Exhibit One, which I'll --

21          THE COURT:  Will be introduced as Exhibit One.

22   Q    Mr. Racich, do you recognize Exhibit One?

23   A    I do.

24   Q    Is this the report that you prepared?

25   A    Yes, it is.

1   Q     Would you tell the Court what documents and information you

2   reviewed to conduct your analysis?

3   A     Sure.  As I said, I reviewed the paper copies of produced

4   text messages by Mr. Gunter and by defendant through Mr. Castor

5   that were provided in discovery.  I also reviewed an iPhone, a

6   Cellebrite iPhone extraction that was performed by KL Discovery

7   back in September of last year, as well as a Cellebrite

8   extraction that was done of Mr. Gunter's Android phone in the

9   same time frame.  And I also reviewed Mr. Gunter's Android phone

10  in which I created a Cellebrite image and extracted the

11  information from.

12  Q     Okay.  So to start with the documents you reviewed.  I'm

13  going to pass you a few exhibits and we'll go through those.

14        THE COURT:  Ms. McGinley, it might be helpful to me --

15  Q     Yup.

16        THE COURT:  We don't necessarily need go do it yet.

17  But if we put the DOAR system up on the ELMO, some of the

18  documents to which you'll make reference I can look at here on

19  the TV monitor.  It's much more easily presented to me, so I can

20  look here without paging through.  He can have the fixed

21  materials there.  It would be helpful if I could have this up on

22  the screen for me as well.

23        Ms. Maldeis is expert at getting you involved with

24  that.  You can use it back there at the podium right behind you.

25  You can use it there.  Thank you.

1       I hope that's not too inconvenient for you.  Is that

2   all right with you, Ms. McGinley?

3       MS. MCGINLEY:  It works great for me.

4       THE COURT:  It works well for me on the bench so I can

5   look at it.  And you have the monitor there, Mr. Gunter, and you

6   can look at it as well, sir, right there, sir.

7   BY MS. MCGINLEY:

8   Q   Mr. Racich, is this it -- are you able to see this on the --

9   A   I cannot.  Okay.

10   Q   So I'm going to show you, going to show you, this is Gunter

11   12.  Did you review a document --

12       THE COURT:  Gunter 12, that's a Bates stamp number,

13   Gunter 12, at the bottom of the right-hand page, and it's

14   included as Exhibit 1 here in this.  Yes.

15   Q   This is Exhibit 1, Bates stamped Gunter 12.  Is this one of

16   the documents that you reviewed to prepare your report?

17   A   Yes.

18   Q   Going to show you Exhibit 3, which is Bates stamped as

19   Gunter 13.  Is this one of the documents -- I'll show from the

20   top to the bottom -- one of the documents that you prepared or

21   you reviewed to prepare your report?

22   A   Yes.

23   Q   Okay.  This is Exhibit 4.  This is Bates stamped AASS 935.

24   Show you the document, the full document.  Is this one of the

25   documents that you reviewed to prepare this report?

1    A    Yes.

2    Q    And this is Exhibit 5, Bates stamped AASS 936.  Is this one

3    of the documents that you reviewed to prepare your report?

4    A    Yes.

5    Q    And you also reviewed copies of two phones in this case.

6    Could you explain that?

7    A    Yes.  So, as I said, I received two forensic extractions

8    from KL Discovery, one being the iPhone that was utilized by Mr.

9    Castor, which was one of the parties involved in these particular

10   text messages.  And the other was an extraction of an Android

11   phone used by Mr. Gunter, again, another party in these, in these

12   text messages.

13          And I also reviewed, or was provided with, an Android

14   phone which I created a Cellebrite extraction of, which was used

15   by Mr. Gunter.

16   Q    How were you able to verify the data on the extractions that

17   you reviewed of each cell phone?

18   A    So, the Cellebrite software, what it does is when it creates

19   the extraction, it creates what's called an MD5 hash value.  It

20   takes the data and it pushes it through an algorithm that pushes

21   out a very, very large number.  And what happens is at that

22   moment in time the MD5 hash is created, and when I look at the

23   Cellebrite extraction I can compare what the MD5 hash value is at

24   the moment in time that I look at it.  And, therefore, if the MD5

25   hash is matched, essentially an electronic fingerprint, I can say

1   that the image that I looked at, the extraction that I looked at

2   is exactly the same as it was the moment in time it was created.

3   And I have metadata that shows when it was created, in this case

4   September, 2021 for the KL Discovery items, the hash values

5   matched.  So, therefore, they are exactly the same as they were

6   in the, when they were created in September.

7   Q    Thank you.  How did you verify the user of each phone?

8   A    So, there's certain user information embedded within the

9   cell phone itself.  And one user, the user of the iPhone for the

10  KL Discovery extraction, was Mr. Castor.  And the user

11  information for the Android phone was Mr. Gunter.

12  Q    Okay.  Before we get to the specifics of your analysis and

13  your findings, are all the opinions you're offering today made to

14  a reasonable degree of scientific certainty?

15  A    Yes, they are.

16  Q    Okay.  Let's spend time breaking down your findings as to

17  the paper messages you reviewed.  What I'm going to do is put up

18  Exhibit 4 and Exhibit 2.  Exhibit 2 is Gunter 12, Bates stamped

19  Gunter 12.  What is your understanding of this document that

20  we're looking at?

21  A    My understanding is that this is a paper copy of text

22  messages that were extracted from Mr. Gunter's Android phone

23  sometime in 2019 or early 2020, and these are the text

24  information that was extracted from such and produced.

25  Q    Okay.  And what is this text message that is highlighted

1    here?

2    A    The highlighted message is the message, the 7/29/2019

3    message.  And the name convention that I used for that is the

4    Gunter Paper July Promotional Message in my report.  And that is

5    a message that was received from the phone number 410-608-2110 at

6    4:42 p.m. and 6 seconds.

7    Q    Okay.  Was this text message on the Samsung phone copy that

8    you reviewed?

9    A    So, the --

10            THE COURT:  So the record is clear, the Samsung phone

11   that was reviewed was the Samsung phone of Lieutenant Castor,

12   correct?

13            MS. MCGINLEY:  The Samsung phone of Mr. Gunter.

14            THE COURT:  Mr. Gunter.  Okay.  Fine.

15            THE WITNESS:  I'll clarify that.  I reviewed two

16   different copies of that phone, one that was created by KL

17   Discovery and one that I created.  And this message was not on

18   either of those extractions.

19   BY MS. MCGINLEY:

20   Q    Of Mr. Gunter's cell phone?

21   A    That's correct.

22   Q    Okay.  Was this message on Mr. Castor's iPhone copy that you

23   reviewed?

24   A    In part.  So there was a message that was sent from Mr.,

25   from Mr. Castor to Mr. Gunter's phone number at this exact moment

1    in time, or at the 4:42 time frame, that had the vast majority of

2    this text message, up to the ellipses.  It was exactly the same.

3    The part afterward where it says I told them about the IG

4    investigation, however, that was not in Mr. Castor's iPhone.

5    Q    Okay.  Now I'm showing you Exhibit 4, which is Bates stamped

6    AASS 935.  What is this text message here that is highlighted?

7    A    So this is the same message from the same moment in time

8    from the Castor iPhone.  But as you can see, the sentence after

9    the ellipses is different from the one that was produced --

10         THE COURT:  This is Defendant's Exhibit 4, is that

11   correct?

12   Q    Yes, Your Honor.

13         THE COURT:  Thank you.

14   Q    How is it -- Mr. Racich, if you could finish.  How is it

15   different in this message versus on Exhibit 2?

16   A    The last line after the ellipses are different words.

17   Q    Was this message present on Mr. Gunter's Samsung phone?

18   A    It was not.

19   Q    Was this message present on Mr. Castor's iPhone?

20   A    It was.

21   Q    What are your findings about the authenticity of the

22   electronic version of this message on Mr. Castor's iPhone?

23   A    So, this message is exactly the same in this format as it is

24   on Mr. Castor's iPhone.  There's no difference between the

25   content, the paper copy, of Mr. Castor's, the production from Mr.

1    Castor's phone and the phone itself.

2            I also did a review of the phone to try to determine if

3    there was any possible way that a, that someone could have

4    altered the content of the message in, in an iPhone environment.

5            THE COURT:  Yes, Mr. Gunter.

6            MR. GUNTER:  I object.

7            THE COURT:  Basis of the objection?

8            MR. GUNTER:  I want to clarify which phone did he say

9    he did an examination, physical examination?  The iPhone or the

10   Samsung phone?

11           THE COURT:  You don't ask him a question.  You have an

12   objection to me.

13           MR. GUNTER:  I'm sorry.

14           THE COURT:  And that objection is overruled.  You can

15   certainly pursue that on cross examination when your time comes.

16   Objection is overruled.

17           THE WITNESS:  So, from the extraction of the iPhone

18   phone, I reviewed the electronic copy of this message that

19   occurred at this moment in time.  And I was able to identify that

20   the message itself was exactly the same.  So looking to see if

21   there was any evidence that someone could have changed the

22   content, the actual body content of the message.  Apple doesn't

23   give users the ability to change individual objects within the

24   messages, messaging application itself.

25           There are some methods that can be done where if you do

1    something called jailbreaking a phone, where you essentially

2    bypass Apple security, there is a way to do that where you can

3    literally go into the actual database and change the body of a

4    message.  However, that in and of itself leaves traces within the

5    phone.  The act of jailbreaking a phone does leave essentially

6    fingerprints all over it.

7          So one of the things I looked for in order to be

8    thorough was to confirm that there was, whether or not there was

9    any possibility that someone had the technical capability within

10   the phone to alter the data.

11         There was no evidence of any of the hallmarks of

12   jailbreaking that would be there if that had occurred.  So,

13   therefore, given the limitations of a normal user on the phone

14   without jailbreaking the device, there's no way that the content

15   of the database that existed in electronic format could have been

16   altered by a user.

17   BY MS. MCGINLEY:

18   Q    Thank you.  Going to show you Exhibit 3, which is Bates

19   stamped at Gunter 13.  And I'll try to zoom out a little.  Maybe

20   I'll just show you the top.  What is this message that is

21   highlighted here that continues on to the bottom?

22   A    This is the paper copy of the August 20th message at 2:42

23   p.m., which I identified as the Gunter Paper August FMLA message.

24   Q    Is this message, because it was -- do you understand this

25   message to have been produced by Mr. Gunter?  It's Bates stamped

1    Gunter 13.

2    A    Yes, I do.

3    Q    Was this message highlighted here on this exhibit located on

4    Mr. Gunter's Samsung phone that you examined?

5    A    It was not.  It was not.

6    Q    Was this message, this exhibit located on Mr. Castor's

7    iPhone that you, a copy that you examined?

8    A    It was not.  There was, however, a message that was

9    identified in the same exact moment in time on Mr. Castor's

10   phone, but it did not have the body text that exists here.

11   Q    Going to show you Exhibit 5, which is AASS 936.  What is

12   this message highlighted here on August 20th at 2:42 p.m.?

13   A    That is the message that existed on Mr. Castor's iPhone at

14   that moment in time, the 2:42 p.m. time frame.

15   Q    So this message highlighted here was located on Mr. Castor's

16   iPhone copy that you examined?

17   A    That's correct.

18   Q    And this is the same iPhone copy that you did not find --

19   can you explain whether, again, whether it was jailbroken?

20   A    Yes.  There's no evidence that the iPhone had been altered

21   in any way that would allow for the alteration of the body of any

22   messaging in the messaging application.

23   Q    So what does -- what were you findings, then, about the

24   authenticity of this August 20th, 2019, 2:42 p.m. message on

25   Exhibit 5?

1    A    Based on my analysis, because the electronic version that

2    existed in the Cellebrite extraction of Mr. Castor's phone

3    matched identically to the body of the information in the paper

4    copy, which essentially is a screen shot of Mr. Castor's phone,

5    the produced copy is the unaltered copy of the electronic

6    information in the phone.

7    Q    And what does that information tell you about this message

8    on Exhibit 3, Bates stamped Gunter 13?

9    A    It means that this message was altered and the text of it

10   was added to this paper copy.

11   Q    Were there other messages -- when you were examining Mr.

12   Gunter's Samsung phone, were there other messages present between

13   Mr. Castor's phone number and Mr. Gunter's phone number?

14   A    Yes.  So I examined the extractions of Mr. Gunter's phone,

15   the two different extractions, and was able to identify a number

16   of different messages that were in fact between Mr. Castor and

17   Mr. Gunter's phone number that still existed in the messaging

18   database on Mr. Gunter's Android phone.

19   Q    What does that reveal -- let me -- does the Samsung

20   operating system allow for determination of when messages may

21   have been deleted?

22   A    Not typically.  There isn't a deleted-on date.  Sometimes

23   that can be inferred with certain information.  But not

24   typically, you don't typically have the moment in time when

25   things are deleted, messages in fact are deleted.

1    Q    The fact that the messages reflected on the paper copies of

2    Exhibits 2 and Exhibit 3 were not on Mr. Gunter's Samsung phone,

3    what does that reveal to you about those messages?

4    A    So, because we had a conversation chain between Mr. Castor

5    and Mr. Gunter that was in existence, and there were numerous

6    messages between the two phone numbers, and because we were

7    missing these particular messages, these messages themselves were

8    not in existence in that database on Mr. Gunter's phone, that

9    means that those particular messages were targeted, deleted in a

10   targeted manner.  It wasn't an automatic process.

11   Q    How are messages, how can messages be deleted from a phone,

12   a Samsung phone?

13   A    There are a number of different ways that deletion can occur

14   with regard to messaging.  You can set up systems where messages

15   are deleted based upon time.  A 30-day retention or a 90-day

16   retention or a year-long retention.  You can delete messages,

17   have things deleted by size.  If your size of your messaging

18   database gets to be a certain size, you can delete larger

19   messages.  Or you could swipe and delete individual messages

20   themselves.  You can also delete whole conversations.

21        Those are the main methodology that can be used to

22   destroy information from an Android phone as far as messaging

23   goes.

24   Q    Did the Samsung phone copy that you examined reflect

25   deletion by size of these messages on Exhibits 2 and 3?

1   A    There was no evidence that I found of that.

2   Q    Did the Samsung phone that you examined reflect deletion of

3   the messages on Exhibits 2 and 3 by date?

4   A    There was no evidence of that.  In particular, there were

5   messages that existed prior to this, the dates that were still

6   on, in existence on the Android phone.

7   Q    How were you able to determine that the messages were

8   targeted for deletion, as you just testified?

9   A    As I said, there were messages within the conversation

10  itself that still existed.  So the only way for these individual

11  messages to be removed -- because the whole conversation wasn't

12  removed, there's no evidence of automated deletion occurring --

13  the only way for these particular messages to be removed would

14  have had to have been by a user.

15  Q    Intentionally?

16  A    I don't typically go with intent.  But it would had to have

17  been a physical action to do so.

18  Q    Can a cell phone carrier delete individual messages from a

19  user's cell phone remotely?

20  A    No.  Once they're imbedded within the database itself, it's

21  outside of the cell phone carrier's control.

22  Q    Did you review Mr. Gunter's cell phone for any other data?

23  A    Yes.

24  Q    Applications installed?

25  A    Yes.  There was an application that had been installed in

1   August of 2019 called Transfer Companion.  And Transfer Companion

2   is an application that is specifically designed to help a user

3   export out messaging, messages from the text messaging

4   application to a computer in text format, including the date

5   information.

6   Q    What does an export from Transfer Companion look like?

7   A    For the most part, not dissimilar from the Gunter production

8   of the text messages.  It's text and date and time information

9   and broken apart in a very similar way.  It also can be done to

10  PDF format as well, as opposed to pure paper.

11  Q    When was this application installed on plaintiff's phone?

12  A    I'd have to look at my report specifically.  But I believe

13  it was August 23rd.  August 22nd.

14  Q    2019?

15  A    2019, yes.  Apologize.

16  Q    And when was the application last run on the phone?

17  A    So there's a certain log file that's imbedded within the

18  Transfer Companion application that was last modified on January

19  8th, 2020, which indicates that it was last run on that date.

20  Q    What does that last-run date reveal about the messages on

21  Exhibit 2 and Exhibit 3 that are no longer on plaintiff's Samsung

22  phone?

23  A    So if the Transfer Companion was utilized to export the

24  messages, which it appears to be on its face, the export would

25  have had to have occurred sometime after August 22nd and on or

1    before January 8 -- August 22nd, 2019 or on or before January

2    8th, 2020.

3    Q    So, in other words, is it fair to say that the messages

4    would still be on the phone when the run, when the Transfer

5    Companion was run?

6    A    So the messages that we see in those exhibits don't match

7    the messages from Mr. Castor's phone so they wouldn't likely

8    exist in that format.  But the messages at that moment in time,

9    which we do have a moment in time that exist, would have been

10   exported out at that moment in time.

11   Q    Could you tell me, what is your fee in this matter?

12   A    We bill at, or I bill at $400 an hour for investigation and

13   $550 an hour for testimony.

14   Q    Okay.

15   A    At present I think we've, if we include today, and this is

16   very, an estimate, I think we're at $12,000, maybe a little more.

17   Q    Thank you.  Your Honor, no further questions.

18          THE COURT:  Thank you very much, Ms. McGinley.  Mr.

19   Gunter, you may proceed with cross examination, sir.

20          CROSS EXAMINATION

21   BY MR. GUNTER:

22   Q    How you doing today, sir?

23   A    Good.  Thank you.

24   Q    All right.  You began your testimony by talking about the

25   procedures that are involved in what you call jailbreaking.

1   A    Yes.

2   Q    All right.  So are you familiar with a program called Cydia?

3   A    Yes.

4   Q    And could you explain to the Court what Cydia is?

5   A    Sure.  So Cydia is a library, a repository for applications

6   that you can use and download on a jailbroken phone that cannot

7   utilize the Apple certificate system.  So you can bypass Apple

8   security.

9   Q    Okay.  And so you didn't actually physically examine the

10  iPhone, did you?

11  A    I did not.

12  Q    So you can't state to this Court whether Cydia was used or

13  not, can you?

14  A    I can, actually, because the extraction that was provided to

15  me from KL Discovery, the Cellebrite software that was utilized

16  to extract it would have extracted the jailbroken information,

17  including Cydia.

18  Q    Okay, sir.  But you've already testified that you physically

19  examined my phone and you discovered the Transfer Companion.  So

20  why didn't you simply look at the download from KDL to know that

21  the Transfer Companion was there?  You just physically went in

22  the phone, you said after I physically went in this phone I

23  discovered Transfer Companion.

24  A    And I apologize if I misspoke.  When I'm talking about the

25  phone itself, I'm talking about the Cellebrite extractions.  Both

1    the phone that you provided, as well as the KDL.  And I compared

2    those to see if there was any delta between the two of them in

3    order to make sure that the information was the same.

4    Q    Okay.  So, at the end of the day, you didn't actually

5    physically examine these phones.  Now, I want to show you a

6    couple of exhibits.

7            THE COURT:  Just so I'm clear on this line of inquiry,

8    it would help me to understand this, Mr. Gunter.  In the middle

9    of your deposition on September the 10th of 2021, as a result of

10   my discussion with counsel, when you were represented by counsel,

11   I ordered that you produce your cell phone to the defense for

12   forensic examination.  And that's the cell phone which we're

13   speaking of, the Samsung phone that you turned over by order of

14   the Court, correct?

15           MR. GUNTER:  No, Your Honor.

16           THE COURT:  It's not?

17           MR. GUNTER:  I'm asking the witness did he physically

18   examine Mr. Castor's iPhone.

19           THE COURT:  Okay.  Mr. Castor's iPhone?

20           MR. GUNTER:  Yes, sir.

21           THE COURT:  Okay.  I'm just trying to clarify it.

22   That's fine.

23           MR. GUNTER:  And the reason I ask, Your Honor, is

24   because --

25           THE COURT:  You don't need to explain it now.  You can

1   continue your cross examination.  I was trying to make sure I was

2   clear as to which phone you were speaking about.

3   BY MR. GUNTER:

4   Q    So I'm going to use the podium.  I'm not, I'm not familiar

5   with how this works.

6          THE COURT:  I think you can lay it there.  That's fine.

7   Q    So, sir, you testified that at the exact moment in time,

8   that what you referred to as this FMLA text message has the exact

9   same time as is Bates Gunter 13.  Didn't you just testify to

10  that, sir?

11  A    Yes.

12  Q    So as a moment of clarity, can you, at the top of that, just

13  tell the Court what timestamp does that have?

14  A    Can you refresh my recollection as to which exhibit this

15  was?

16  Q    This is from your report, sir.  And it's your exhibit.

17  A    Absolutely.  I just want to know which one so I know --

18  Q    Well, Ms. McGinley just --

19         THE COURT:  He's looking.  He's trying to respond to

20  your question, Mr. Gunter.  Just give him a moment to locate the

21  material about which you're asking him a question.

22         THE WITNESS:  Thank you.  All right.  This is 45.  Got

23  it.  Yes.

24  BY MR. GUNTER:

25  Q    So, sir, if you could please read the exact date time

1    stamped for the Court, sir.

2    A    Sure.  The timestamp field, which is the fourth over from

3    the left, fifth over from the left, which is 2:42 and 26.

4    Q    Okay, sir.  So you just declared and stated that it's two --

5    let me get this right -- 2:42:26?

6    A    That's correct.

7    Q    Okay.  Now, this Exhibit 16, can you read the timestamp at

8    the top of this?

9    A    Yes.  It's 2:42 and 24.

10   Q    So, sir, how can you sit here in a federal court and say

11   that's the exact same moment in time?  Now, I know that Your

12   Honor's only going to let me go so far, but in the Olympics, you

13   know, they go by seconds and time.  So there's a difference

14   between 24 and 26.  You said the exact same moment to justify

15   that it's been, it was one and the same.  Your principal argument

16   is that these two text messages are the same when, clearly, as we

17   stand here, they have two different timestamps now.

18        Now, I don't know what I need to do to make this point

19   any clearer but as clear as day these are two different --

20        THE COURT:  This is not, this is not time for you to

21   argue your theory, Mr. Gunter.  You're highlighting a two-minute

22   (sic) difference and the witness can respond to it.  And I'll

23   determine whether or not it's of any moment or not, sir.  Your

24   difficulty with having two different lawyers represent you and

25   both sets of lawyers withdraw, and the difficulty you face in

representing yourself, is that this is not the time to make argument. You can make argument to me when the time comes. Just ask the witness a question, he'll respond, and then you can address it.

MR. GUNTER: Yes, Your Honor.

THE COURT: I know you're representing yourself. And that's the difficulty with pro se litigants. Pro se litigants don't just get up and make speeches. You're just examining the witness here right now. So ask the question and the witness will respond. You can argue your theory to the Court later as to the significance of the two-minute gap you contend exists.

THE WITNESS: I believe I know what the question is. So there is a two-second difference in times.

THE COURT: I'm sorry. Two-second difference in time.

THE WITNESS: It's a two-second. So the extraction here is the extraction from the Android.

THE COURT: Well, let's be clear. We're talking about a two-second variance?

THE WITNESS: Yes.

THE COURT: So it's not two minutes? It's a two-second variance? Correct? Okay. I understand, Mr. Gunter, what your theory is.

THE WITNESS: So the extraction here is from the Android phone. And the embedded date and time -- so, one thing you have to know first is that the way that computers in general

1    and, in particular, phones, keep track of time, they don't

2    actually keep track of time with Gregorian calendar information.

3    It's actually a number of milliseconds past a certain date.

4          So, in the case of an Android phone, it's the number of

5    milliseconds past January 1st, 1970.  I'm not exactly sure why

6    that is but that's the way it is.

7          So, in the database itself, what it does is it takes

8    that number of milliseconds and interprets that to what human

9    time is.  So when it prints it out, when it puts it forth, that's

10   one of the things.  And that's where you can sometimes get a

11   small variation in time depending on how the application is

12   interpreting it.

13         But the other thing is the document that was just up

14   there was actually the information from the sent, sending device,

15   from Mr. Gunter's device.  In my opinion, it took about two

16   seconds for the message to navigate from the Gunter phone to the

17   Castor phone, and that's why you have a two-second earlier,

18   beyond the sent phone, being then the iPhone which was the

19   recipient phone.

20         THE COURT:  All right.  Next question, Mr. Gunter.

21   BY MR. GUNTER:

22   Q    Okay.  I want to show this gentleman another exhibit.  Just

23   want to get this.  All right, sir.  This is the same exhibit that

24   Ms. McGinley had shown you.  So I'm sure you're familiar, right?

25   A    Yes.

1   Q    Okay.  Now, when you look at this exhibit, you see four text

2   messages, is that correct?

3   A    I'm only seeing two here.

4   Q    I'm sorry.  I'm sorry.

5   A    That's fine.  Yes.

6   Q    You see four text messages, right?

7   A    Yes, sir.

8   Q    One, two, three, four.  Is that --

9   A    That's correct.

10  Q    Okay.  Now, the text message that you verified it being

11  genuine, what is the date of that text message?

12  A    It's not listed on the top level of that, that piece of

13  paper.

14  Q    So if these other three text messages clearly have a date

15  listed above them and that one does not, can you explain to the

16  Court why it does not?

17  A    Yes.  So when you have a conversation on a per day, it

18  typically lists only, on the Apple messaging system, it typically

19  only lists the date and time of the first message that exists.

20  Q    The message above that says it is no way -- can you see

21  that?

22  A    Yes, I can.

23  Q    Okay.  Now, as we scroll down the page, you see another

24  thing that says okay, right?

25  A    Yes.

1  Q    All right.  Now, where it says okay, there's a date under

2  that, right?

3  A    There's a date under that but that date is actually in

4  reference to the one beneath that.

5  Q    Okay.  So you just said that if there's only one message

6  sent in a given day, that is what generates the date.  Isn't that

7  what you said?

8  A    But, and I can't see from this, the message at the top is an

9  earlier message than the one, the larger one in green, the

10  message in question, and that would have the information at the

11  top of it.

12  Q    Okay.  Well, based on what I'm looking at, sir, clearly,

13  there's a difference between the one that says there's no way and

14  okay and there's a date between the two.  But Your Honor

15  instructed me not to argue.  So I am just pointing this out to

16  you.  There's clearly a difference.  In my opinion this has been

17  photoshopped.

18           THE COURT:  I'm sorry.  What did you just say?

19           MR. GUNTER:  This exhibit has been photoshopped.

20           THE COURT:  All right.  Would you go over by the

21  microphone?  Just so we're clear on the record, in terms of my

22  making findings of credibility here, you're proffering that the

23  Defendant's Exhibit 4, ending with "you've been pretty straight",

24  has been photoshopped?

25           MR. GUNTER:  Yes, Your Honor.

1     THE COURT:  Okay.  Good.  Then I'll have to await your

2     argument on that and whether or not you have any evidence in that

3     regard.  You're not an expert, so that's just your opinion.  You

4     have notice of this hearing and you either will or will not be

5     able to support that factual contention that you make.  So that's

6     not a question.

7          And you're quite right.  That is argument.  And I'll

8     hear argument from you and I'll determine whether or not there's

9     any evidence in that regard.  So thank you very much for that.

10         Move on with the next question, Mr. Gunter.

11    BY MR. GUNTER:

12    Q    Okay.  So you didn't physically examine Mr. Castor's iPhone?

13    A    That's right.  I examined a Cellebrite forensic extraction

14    of the phone.

15    Q    And what is the difference between the fact that you

16    physically examined my phone, like what did you gain?  What was

17    the purpose?

18    A    So the reality is the extraction that I had from KL

19    Discovery from September 2019 and the extraction that I made from

20    your phone in February of this year, for the purposes of the

21    messaging database and these particular messages, there was no

22    difference between those two, those two artifacts.  So the

23    Cellebrite extraction with regards to the messages in question

24    was the same for both the KL Discovery extraction and my

25    extraction.

1  Q     Okay.  And so you did not physically examine Mr. Castor's

2  phone so you can't make the exact same determination based on

3  what you just said?

4  A     Well, I can make the determination that the phone as it

5  exists right now, or in February of this year, would have been

6  exactly the same one way or the other.  But I can say that the KL

7  Discovery extraction in September of 2019 was completed with no

8  errors, hashed correctly as of the moment in time it was created,

9  and the hash value that I looked at shows there have been no

10  alterations of the case file or any of the information within.

11  So all the data that existed as of that moment in time and in

12  September of 2021 was the same.

13  Q     Okay.  Sir, you're familiar with a so-called screen shot?

14  A     I'm familiar with the, the ability to make screen shots,

15  yes.

16  Q     Can you explain to the Court what that is?  Like how do you

17  perform a screen shot or produce one?

18  A     Sure.  So it depends on what type of device you're using for

19  a screen shot.  For an iPhone you can press a, you press either

20  the home button and the volume up or the power button and the

21  volume up, you can create a screen shot of your phone.  You can

22  use an application to do so.  You can use an application on a

23  computer to do so.  On a Mac, it's open Apple/shift 4 to get a

24  specific screen shot.  So there's lots of different ways, lots of

25  different devices.

1    Q    Okay.  So since you're an expert, sir, can you tell this

2    Court when the screen shot was taken?

3    A    Not from the information I have here.

4    Q    So, let me put this down here again, sir.  At the top of

5    this exhibit, it has May 4th, 11 -- 11:46?

6    A    Yes, but I don't know what May 4th that was based on the

7    information I have.

8    Q    So my question is why is the date, which you explain it can

9    only have one text per day, but I want to know what is this right

10   here?  I'm a layman.  It says 10:47 May 4th.  What is that?

11   A    So, the May 4th date appears to be the date and time when

12   the screen shot was created.

13   Q    Okay.  And you testified that the download of the phone took

14   place on September 10th, is that correct?

15   A    Yes.

16   Q    So then that means there had to be six or seven months

17   between the screen shot and when the download was performed?

18   A    September -- call it five months, but yes.

19   Q    Okay, sir.  That's all I wanted to know.  I'm going to make

20   my argument when they're proper.

21          THE COURT:  That's fine.  I'll hear argument from you.

22   Any further cross examination?

23          MR. GUNTER:  No, Your Honor.

24          THE COURT:  All right.  Fine.  Any redirect, Ms.

25   McGinley?

1    MS. MCGINLEY:  Just briefly, Your Honor.

2    THE COURT:  Sure.

3    REDIRECT EXAMINATION

4  BY MS. MCGINLEY:

5  Q    Mr. Racich, I just wanted to clear up one, one item from,

6  about the Cellebrite extraction of Mr. Gunter's Samsung that you

7  reviewed.  Is that dated September 10th, 2021 or September 10th,

8  2019, from your reports?

9  A    I'd have to go back to the reports and check.  September

10  10th, 2021.

11  Q    Okay.  Great.  If you could turn to Exhibit 1, which is your

12  expert report.  I'm going to flip to, it is Exhibit D.

13  A    I have it here.

14  Q    Could you tell me -- I'll show the first page.  Could you

15  tell me what this Exhibit D is?

16  A    This is the default front page when one exports a report of

17  tagged items in Cellebrite.

18  Q    Okay.  Can you tell me what Page 2 of this Exhibit D to your

19  report is?

20  A    This is the content of the messages that were tagged in this

21  case.

22  Q    Okay.  And this message here that says, I didn't tell you

23  that you had any position so I don't know where you got that

24  from, and then it ends with, I've told them you've been pretty

25  straight, can you explain, based on what your findings, what this

1   message is?  For example, when it was sent and between who?

2   A    Sure.  This is a representation of the, a textual

3   representation of the information in the SMS database that

4   existed in Mr. Castor's phone that was extracted.

5   Q    Okay.  And this here, it says the source is a native

6   message.  What does that mean?

7   A    So, Cellebrite has the ability to parse out lots of

8   different messaging applications.  The native messaging is the

9   native, little green text bubble that you see in an Apple iPhone.

10  Q    And then it's from -- and the from and to here, can you

11  explain what these numbers are?

12  A    Sure.  So the phone number at the top of the from is the

13  number from which the -- was sent.  In this case, it's the owner,

14  which didn't have a field information, which is why it has that

15  unusual dollar sign exclamation point.  There was no information

16  imbedded with that, although the phone number itself was

17  imbedded.  Basically, the person didn't address their own contact

18  as the owner of the phone number.

19       It was sent to the 410-707-0368 number, which was

20  assigned in the contacts to the name Gunter.  And then you have

21  the timestamp as the moment in time when the message was in this

22  case sent.

23  Q    And what was that moment in time in this case?

24  A    4:41 and 59 seconds.

25  Q    Okay. On July 29th, 2019?

1    A    That's correct.

2    Q    Okay.  And this Exhibit 4, which is Bates stamped AASS 935,

3    is this the same message, just a different way to look at it,

4    than what was on Exhibit D of Exhibit 1?

5    A    The textual content is exactly the same in both of those

6    messages.

7    Q    Your Honor, I just want to make sure that I've entered my

8    exhibits.

9         THE COURT:  Yes.  I believe, according to my notes,

10   that you have entered all -- looking at your exhibit list, I

11   believe you've introduced all of the exhibits that you listed.

12   Exhibits -- not really sure about Exhibit 6.

13        MS. MCGINLEY:  Yeah, I didn't do Exhibit 6.

14        THE COURT:  You've done, under Local Rule 107.5, the

15   exhibits as listed and provided earlier were deemed admitted upon

16   questions, with no objection.  So, according to my notes, we have

17   Exhibits 1, 2, 3, 4 and 5 that have been introduced, but not

18   Exhibit 6.

19        MS. MCGINLEY:  Thank you very much. No further

20   questions.

21        THE COURT:  So Number 6 is not in evidence.

22        MS. MCGINLEY:  Not at this time.

23        THE COURT:  All right.  That's fine.  All right.  Thank

24   you very much.

25        Any other evidence you want to present on the matter

1    of, with respect to the motion for sanctions and dismissal based

2    upon fraudulent text messages, from your point of view?

3              MS. MCGINLEY:  No, Your Honor.

4              THE COURT:  All right.  Any other witnesses you want to

5    call in any way?

6              MS. MCGINLEY:  No.  Thank you.

7              THE COURT:  Mr. -- yes.  Any other questions of this

8    witness, Mr. Gunter?

9              MR. GUNTER:  I want to ask two more questions, if

10   possible.

11             THE COURT:  Sure.  Go ahead.  On recross examination

12   you are limited to the area of the redirect.  But you may go

13   ahead.

14             RECROSS EXAMINATION

15   BY MR. GUNTER:

16   Q    Well, I just, I just want to ask a question because the

17   gentleman's an expert.  Are you familiar with the term

18   "overwritten?"

19   A    Yes.

20   Q    Could you please explain to the Court what that means?

21   A    In the context of computer forensics, when something is

22   deleted and overwritten, it becomes unavailable.  Computers, and

23   I'm including phones in that, smart phones in that, when they

24   delete something, they typically do it for speed and not for

25   security.  So it will delete something in a manner where it will

1   tell the computer to fool itself into thinking that the data,

2   place where the information lays is available for writing.  And

3   so the data at that point is still potentially recoverable.

4   However, when it's overwritten means new data has been put into

5   that area, so it becomes unrecoverable at that point.

6   Q    Okay, sir.  And I appreciate your explanation.  And you're

7   absolutely correct.  So, since the text message in question, the

8   one that has the difference of four words, that text does not

9   exist in my phone or in Mr. Gunter's phone, is that correct?

10  A    That's correct.

11  Q    So it has been overwritten, is that correct?

12  A    It's not available.  So, yes.

13  Q    So if it's overwritten, it means it has no megadata or

14  metadata can be recovered for that?

15  A    For that particular message from the Gunter phone, that's

16  correct.

17  Q    So then there's no way that you can say under oath that

18  Gunter ever actually literally received that message on his

19  phone, is there?

20  A    So, I guess the, the question is, is there was a production

21  by plaintiff, by you in this case, with particular messages and

22  there was a production by defendants per Mr. Castor's phone.  So

23  as far as the electronic version being in particular on the

24  Gunter phone, I don't have any evidence it exists at this moment

25  in time.

1    Q    Do you have any evidence that it existed at any moment in

2    time?

3    A    The production of the Gunter, the Gunter production of the

4    text messages.

5    Q    Let me ask you a question in a different way, sir.  Is there

6    any evidence on that phone that you physically examined that

7    Gunter ever literally received that message?  It's a simple yes

8    or no, sir.

9    A    I don't have any electronic information within the phone

10   that provides that.

11   Q    So the answer is no?

12   A    That's the best way I can say it.  I have no electronic

13   information within the phone itself.

14   Q    Okay.  So I'm going to ask you one last question.  I swear,

15   Your Honor, I'll be done with it.

16        Now, this is from Judge Coulson's report and

17   recommendation, at the bottom.  And I've got it highlighted right

18   here.  This is from a federal judge.  And he says and I quote:

19   "Plaintiff argues that multiple messages, if sent in quick

20   succession, can contain the same timestamp and the Court accepts

21   that."  So is Judge Coulson delusional?

22   A    I have no way to have an opinion upon that.  The timestamp

23   is an interesting thing because, again, when you look at it from

24   the user's point of view, you're looking at an interpretation of

25   the number of milliseconds past a certain date.  And that's going

```
 1   to be to a certain amount of seconds or milliseconds or depending

 2   on how it's interpreted.  Two messages sent from the same

 3   location in the exact, with the exact same timestamp I don't

 4   think is technically accurate.  But I think generally you can

 5   have two messages that were sent at the same minute or even close

 6   in time to the same second.  But to the exact same second, I

 7   don't necessarily agree.

 8   Q    So you believe Judge Coulson is incorrect?

 9   A    I think the way you're proffering his argument here is not

10   correct.

11   Q    I'm reading from the paper, sir.

12            THE COURT:  Just so the record is clear, matter of

13   completeness for the record, Mr. Gunter.  Footnote 2 reads as

14   follows.  You've only read part of it.  And the footnote reads,

15   by Judge Coulson:  "Plaintiff argues that multiple messages, if

16   sent in quick succession, can contain the same timestamp and the

17   Court accepts this as true."

18            And then which you did not read here for the record is

19   that Judge Coulson continued:  "However, other than the partially

20   preserved paper printout allegedly generated by the Bobs" --

21   these are individuals named Bob, last name of which no one knows,

22   that you previously represented to Magistrate Coulson, continues

23   by Judge Coulson -- "plaintiff has no support authenticating the

24   messages and, as importantly, no evidence that those messages

25   were received but deleted by his supervisor, especially in the
```

1    face of contradictory messages produced by that supervisor with

2    the same timestamp."  That is the totality of Footnote 2 of Judge

3    Coulson's opinion.

4            MR. GUNTER:  Yes, Your Honor.

5            THE COURT:  Okay.

6            MR. GUNTER:  I don't have any further questions for

7    this gentleman.

8            THE COURT:  Thank you very much, Mr. Gunter.  You may

9    step down, Mr. Racich.  And thank you very much.

10           With that, is there any evidence that you intend to

11   proffer, Mr. Gunter?

12           MR. GUNTER:  Your Honor, I have submitted 50-some odd,

13   if not 60, exhibits.

14           THE COURT:  Pull the microphone closer, if you will,

15   please.

16           MR. GUNTER:  I've submitted more than 60 or 70

17   exhibits.  And you've explained at the beginning of the hearing

18   that the majority of which is already on the record.  You put the

19   motion for summary judgment --

20           THE COURT:  Yes.  I'm not on the merits of the case.

21   I'm trying to clarify.  I looked at your exhibits that you

22   produced.  And in light of your cross examination of the expert

23   witness by the defense, I'm just trying to clarify, with respect

24   to your proffer of specifically the matter of the two-second

25   variance, for example, 2:42:26 and 2:42:24, which amounts to a

1    two-second variance, that essentially the witness responded to

2    your questions that the two seconds would be attributable from

3    the time gap from your phone to Mr. Castor's phone.  And then

4    your cross examination specifically talked about screen shots and

5    overwriting.  And I'll hear from your theory in a minute on this.

6    But I'm asking if you have any evidence as to that.

7            MR. GUNTER:  I have Exhibit 16, which is different --

8    they had a highlighted version of this.

9            THE COURT:  Of Exhibit 16?

10           MR. GUNTER:  Yes, sir.  It's Gunter, it's 13.

11           THE COURT:  All right.  Hold on one second.  I have

12   Gunter 12 here.  Hold on one second.  Why don't you put it up on

13   the screen there so I can see it, the document to which you're

14   referring, Mr. Gunter?

15           MR. GUNTER:  I'm going to go down to the bottom, Your

16   Honor, where it says Gunter 13.

17           THE COURT:  Just hold on a second.

18           MR. GUNTER:  I'm sorry.  Want me to move it down

19   further?

20           THE COURT:  No.  Just wait a second, Mr. Gunter.

21   Please.  I'm looking at a stack of exhibits which you filed

22   yesterday, most of which are on the matter of the -- thank you

23   very much.  All right.

24           I'm looking at Plaintiff's Exhibit Number 16, which

25   will be introduced into evidence for today's proceeding.  And I

1    have it here.  Yes, sir.  What is it -- I'm asking you, I'm

2    basically asking you if there's any evidence you're going to

3    present here.  And you've referred me to Plaintiff's Exhibit 16.

4    I'll be glad to hear from you on it.

5           MR. GUNTER:  Well, the reason I want to present this,

6    Your Honor, is because it clearly shows the difference in time.

7           THE COURT:  The two-second difference in time.

8           MR. GUNTER:  Yes, Your Honor.

9           THE COURT:  And you're attributing -- I gather, I'm

10   asking what evidence you're going to present with respect to

11   screen shot or overwriting because, obviously, your theory is

12   someone on the defense side has fabricated something.  And I'm

13   asking what your evidence is in that regard.  And you've referred

14   me to Plaintiff's Exhibit 16 with respect to a two-second

15   variance in time.

16          Is there any other evidence that you're submitting here

17   at the hearing, Mr. Gunter?

18          MR. GUNTER:  No.  Because it would be a duplicate.  For

19   example, my Exhibit 10 is a duplicate of theirs.

20          THE COURT:  You're referring to Defendant's Exhibit 4?

21          MR. GUNTER:  That's correct, Your Honor.

22          THE COURT:  All right.  I understand.

23          MR. GUNTER:  I don't think I need to duplicate.

24          THE COURT:  Well, it's up to you whether you -- I don't

25   think you need to duplicate that.  No.  It's in evidence.  That's

1    fine.  I guess my main point is this hearing is, also in fairness

2    to you, to see if you have any evidence.  I'll be glad to hear

3    what your theories are.  But I need to know if you have any

4    evidence from which I can judge this in terms of particularly

5    before I hear from you on your view of photoshopping or

6    overwriting or whatever, is there any other evidence you want to

7    produce in that regard?

8              MR. GUNTER:  No, Your Honor.

9              THE COURT:  All right.  Well, thank you very much.  You

10   may be seated for a second.

11             With that, this is the defendant's motion for sanctions

12   and dismissal.  And I have read the submissions.  I'll be glad to

13   hear from you, Ms. McGinley, and I'll give Mr. Gunter an

14   opportunity to argue in opposition to the motion for sanctions

15   and dismissal.

16             We've already established when we started here that

17   there does not appear to be any dispute based upon the record

18   here.  And my earlier questions when we started here, about an

19   hour and a half ago, were that Defendant's Exhibit 2, that has

20   the last four words of a text message dated July 29, 2019, about

21   the IG investigation, is in fact not true.  In fact, there hasn't

22   been any contentions that it's true.  To the extent it's

23   represented to be true, it's fraudulent.  I mean, it's just not

24   accurate.  Doesn't appear to be any question that Defendant's

25   Exhibit 4, to which Mr. Gunter's just referenced, the actual

1    message, according to what the evidence has been presented here

2    is, you've been pretty straight.

3            So the text message that was originally -- and I would

4    note, just for the record, that the plaintiff is now proceeding

5    on a fourth amended complaint.  And there are references to this

6    text message in his complaint.  But I think at least what I have

7    here are the references in an earlier complaint in terms of a

8    fourth amended complaint -- bear with me one second here.  All

9    right.

10           There has been some variance presented here.  I'm just

11   trying to make sure I can focus on this because I want to have

12   counsel argue.  In Paragraph 55 of the operative complaint here

13   now, Paper Number 35 filed on August the 25th of 2021 by counsel

14   who has now asked to be removed from the case, counsel of Alan

15   Lescht and Associates, Paragraph Number 55 specifically makes

16   reference to an email that said, I already told you the deal, it

17   doesn't have anything to do with what I say or recommend, I've

18   told them about the IG investigation.  And, clearly, there

19   doesn't appear to be any dispute that that's not accurate, that

20   that doesn't exist anywhere, and that the, the email

21   communication, from the point of view of the defendant, reads,

22   you've been pretty straight.  And there's definitely been some

23   alteration of that.  That is referred to in the complaint.

24           So with that, it's a pretty easy factual finding for

25   the Court.  There isn't any contention by Mr. Gunter that the

1   email that says "about the IG investigation" exists.

2           So with that, I'll be glad to hear from you, Ms.

3   McGinley, on the matter of the sanctions and/or dismissal from

4   your point of view.  Then I'll hear from Mr. Gunter.

5           MS. MCGINLEY:  Thank you, Your Honor.  It's plaintiff's

6   intentional fabrication of key documentary evidence in this case

7   and his actions to then cover it up by falsely testifying under

8   oath to the origin of the message, and he also --

9           THE COURT:  You mean in terms of the deposition?

10          MS. MCGINLEY:  I'm sorry, yes.  During the deposition.

11          THE COURT:  Mr. Gunter has not been placed under oath

12   here.

13          MS. MCGINLEY:  That is right.  Thank you for the

14   correction on that.  It was the testimony that we detailed in our

15   motion for sanctions, which was under oath at his deposition in

16   September.

17          He also, during that deposition, he admitted that the

18   underlying electronic messages of these two messages that we, you

19   know, the Court should find are false, were deleted from his

20   phone.  Obviously, if they were not, that would reveal the fraud.

21   And instead we had to go through, you know, this entire

22   evidentiary hearing today.

23          Those actions about direct evidence that he has placed

24   forth, including in his complaint, to support his claims of

25   retaliation, warrant dismissal because his acts were intentional,

1  serious, and his entire case is based primarily on his own

2  testimony if he were to proceed.

3      For example, his age discrimination claim per the

4  complaint is based on an alleged comment about his age that was

5  made verbally to him and only he heard it.  Given his intentional

6  bad acts, even if we were to tell the jury about what he did

7  today, which at the very least we should be able to do, no

8  reasonable juror could possibly credit his testimony at trial.

9  And if given the opportunity to testify, we believe he will

10  continue to fabricate evidence to support his claims.  And he has

11  done this already in his opposition to the motion for sanctions,

12  which we detail in the reply.

13      In his opposition, when faced with the possibility that

14  the fabricated text messages may be excluded from this case per

15  our motion, plaintiff made up an oral statement by a supervisor

16  that parroted the fabricated July 29th text message.  That

17  assertion in the opposition is in direct contradiction to his

18  deposition testimony in September when we asked him about verbal

19  conversations underlying the text messages.

20      And this latest attempt by plaintiff to deceive the

21  Court demonstrates that the only appropriate sanction here to

22  stop the severe continuing prejudice to defendant in having to

23  defend a lawsuit premised primarily on fabricated evidence, and

24  to punish plaintiff for his egregious continuing acts, is

25  dismissal of the case with prejudice today.

1          THE COURT:  Thank you, Ms. McGinley.  Mr. Gunter, be

2    glad to hear from you.

3          MR. GUNTER:  All right, Your Honor.

4          THE COURT:  Just so the record is clear, you do not

5    desire to testify under oath here today as a witness, correct?

6          MR. GUNTER:  I don't know that it would be beneficial,

7    Your Honor.

8          THE COURT:  Well, given that there's a matter, given

9    that there's a contention of a fraudulent document, it's your

10   choice to make on that because you would be put under oath.  And

11   you're a former law enforcement officer, correct?

12         MR. GUNTER:  That's correct, Your Honor.

13         THE COURT:  So you understand the penalties against

14   perjury?

15         MR. GUNTER:  That is correct.

16         THE COURT:  All right.  So then there's also Fifth

17   Amendment privileges that attend to it.  So the record will

18   reflect that you're not testifying under oath but you're

19   certainly free to make arguments here in whatever fashion you

20   want.  So, with that, I'll be glad to hear from you.

21         MR. GUNTER:  Okay, Your Honor.  This case is a

22   whistleblower retaliation case.  I've submitted two letters from

23   the Department of Homeland Security that gave me the right to sue

24   these people.  So when Ms. --

25         THE COURT:  The Equal Employment Opportunity

1    Commission, as I recall, gave you Right to Sue letters within 90

2    days.  And then you, I think on the 90th day, you did in fact

3    file your initial lawsuit, correct?

4           MR. GUNTER:  Yes, Your Honor.  But that's a separate

5    issue from whistleblower retaliation.

6           THE COURT:  I understand.

7           MR. GUNTER:  So, in order to pursue a whistleblower

8    retaliation claim, you have to get the Director of DHS, through

9    the Department of Homeland Security's General Inspector's Office,

10   to do an investigation and give you permission, which was done.

11   So the government fully supports this lawsuit.

12          THE COURT:  That is absolutely, that is absolutely not

13   a correct statement of law, Mr. Gunter.  These whistleblower

14   lawsuits and the qui tam statute are brought and the government

15   can determine whether or not it seeks to be a party with it.  You

16   have every right to have a whistleblower lawsuit.

17          As a matter of fundamental law, that is not correct on

18   the record for you to suggest that someone has sanctified your

19   lawsuit and supports your theory in this matter.

20          MR. GUNTER:  What I'm saying -- maybe I said it the

21   wrong way, Your Honor.

22          THE COURT:  You certainly did, sir.  And I'm not going

23   to permit you to make false statements of that ilk and try to put

24   things on the record that are not true.  What you just said is

25   not correct.  Do you acknowledge that now?

64

1    MR. GUNTER:  Your Honor, you're correct in that I

2    worded it wrong.

3    THE COURT:  Okay.  That's fine.  Be careful how you

4    word things, Mr. Gunter.

5    MR. GUNTER:  Yes, Your Honor.  But what I'm saying is,

6    in order to file suit for whistleblower retaliation you must get

7    a letter from the Department of Homeland Security in order to do

8    so.

9    THE COURT:  Yes.  I understand what you're saying.

10   MR. GUNTER:  So I've got two letters from the

11   Department of Homeland Security that allows me to pursue --

12   THE COURT:  Allows you to pursue the case.  Correct.

13   It doesn't ratify or support your theory.  It allows you to

14   pursue the case, correct?

15   MR. GUNTER:  That's correct, Your Honor.

16   THE COURT:  All right.  Okay.  That's fine.  Yes.

17   MR. GUNTER:  Now, in the second letter that they sent

18   to me it says that this lawsuit is extremely duplicative of their

19   investigation.  That's word-for-word verbatim from the letter.

20   So I'm not making up nothing.  I'm not ad libbing.  That's

21   verbatim.

22   THE COURT:  These are going to the merits, Mr. Gunter.

23   I understand that.  What we're dealing with is, what I'm trying

24   to address here is that Judge Coulson, in his report and

25   recommendation, specifically noted, okay, specifically noted, he

1    specifically noted that he did not have enough evidence before

2    it, before him to conclude that you fabricated text messages so

3    as to justify dismissal of this case for malfeasance.  And he

4    specifically noted that he did not, that he distinguished another

5    case and that he did not have before him forensic evidence

6    regarding the disputed messages.

7             So the purpose of this hearing has been for me to get,

8    to get forensic evidence and to hear what an expert had to say.

9    That's what we're addressing here is in terms of whether or not

10   there's been fabrication, and then if there has been fabrication,

11   what is the sanction to be applied.

12            And we started this hearing an hour and 45 minutes ago

13   with your acknowledging that the jury could certainly be aware of

14   the variance between the true text message and the fabricated

15   text message, and you said you didn't have any objection to that.

16   You acknowledged that could take place at a trial, correct?

17            MR. GUNTER:  You're correct, Your Honor.

18            THE COURT:  All right.  So then the point is whether or

19   not the sanctions should be greater, whether or not the sanction

20   should be dismissal of your case.  That is what is before me now.

21            I'm not into the merits.  So I'm not into the matter of

22   the whistleblower complaint and the contentions raised therein,

23   nor with respect to your discrimination retaliation.

24            We're dealing with a clear discovery violation and the

25   Court's exercise of power under Rule 41 and the extent of what,

1    how I should handle this discovery violation.

2              MR. GUNTER:  I understand, Your Honor.  Can I speak?

3              THE COURT:  Go right ahead.

4              MR. GUNTER:  Ms. McGinley just made reference to the

5    ADA and age discrimination claim.  I heard her just make

6    reference to it.  That's the reason why I went into the

7    whistleblower.  But since you have redirected, I want to address

8    the expert forensics.

9              THE COURT:  Yes.  That's what I want you to address.

10             MR. GUNTER:  The gentleman said under oath that the

11   times were in fact different.  The gentleman said if a text is

12   overwritten, there's no metadata.  The gentleman said that since

13   it's no metadata, he cannot prove with any reasonable doubt that

14   I ever literally received the message.

15             Now, you asked, do I have any evidence to counter it?

16   But if I never received it, there's nothing to counter it.

17             THE COURT:  Well, let me just focus here so you

18   understand, sir, what determination I have to make.  I'm not

19   trying to debate you.  I'm trying to get to something.

20             The record already reflects that you acknowledge, there

21   is absolutely no question here on this record that you

22   acknowledge that Defendant's Exhibit Number 2, where there's a

23   representation that there's a text message that references about

24   the IG investigation, is fraudulent, it doesn't exist.  And you

25   don't contend that it exists, isn't that correct?

1          MR. GUNTER:  No, Your Honor.  I wasn't given the

2     opportunity to have a forensic expert download his phone a second

3     time.  Therefore, I wasn't given an opportunity to produce expert

4     testimony or witness.

5          THE COURT:  You've been given every opportunity here,

6     Mr. Gunter.  I'm not going to rule on the merits here today and

7     I'm going to reflect on it.  But I am not, I am not going to

8     entertain baseless comments by you.

9          This matter has been sitting since January.  This is

10     now mid April.  You have chosen to represent yourself, and two

11     different lawyers who represented you have chose to recuse

12     themselves.  You have every right under our local rules to

13     represent yourself.  And you have had every opportunity to come

14     forward with an expert witness to counter the expert testimony of

15     this defense witness.

16          MR. GUNTER:  What I'm saying, Your Honor, is I wasn't

17     given an opportunity to have an expert witness download his

18     phone.  I asked Ms. McGinley could I download his phone and she

19     told me he wasn't a party to this.

20          THE COURT:  Well, Mr. Gunter, I'm trying to carefully

21     not put you under oath here.  Okay?  So the record will reflect

22     it is what it is.  You have two different, one set of lawyers

23     literally recused themselves within four days of my ordering you,

24     ordering you to hand over a phone you would not turn over.  And

25     this matter has been sitting since January.

1          The record will reflect this is now April the 14th.

2  You have had every opportunity here.  I'm asking very simply, do

3  you contend that the reference here in your fourth amended

4  complaint, the fourth amended complaint, do you contend that with

5  respect to Paragraph 55 that there is an email that said, that

6  ends with, "I've told them about the IG investigation", do you

7  contend that that is a true statement?

8          MR. GUNTER:  Since I don't have any evidence, no.

9          THE COURT:  Okay.  That's fine.  That's fine.  I'm

10 not -- the whole thing's not going to be judged on that.  So it's

11 pretty clear in terms of my making an opinion on this, the test

12 message, the email communication that is alleged to have said

13 about the IG investigation is fraudulent.  It does not exist.

14 Okay?  It does not exist.  The email ends with the words "you've

15 been pretty straight", not "about the IG investigation."

16         Now, you can argue and present your position that

17 there's no evidence that you received that, and I understand what

18 your argument is.  You can say that you didn't receive the email

19 that ends appropriately, "you've been pretty straight."  But the

20 record is abundantly clear, with no dispute, that to represent

21 that the email ends with "about the IG investigation" is

22 fraudulent, it does not exist.

23         And the issue before me, the issue before me is with

24 respect to that discovery violation, what should the sanction be.

25 That's where we are.  Clearly, that can be presented to the jury,

1    and you agree with that, at a trial.  Or once the case gets to

2    dispositive motions, whether or not there's any genuine issue of

3    material fact, that goes to the jury.

4          The focus I have here is based upon the forensic

5    expert's testimony, your challenge is to his credibility.  And

6    you're free to argue that.  You're free to argue now your theory

7    of overwriting and you're free to argue now your theory of, of, I

8    think of photoshopping, if that's your theory.  And I'll

9    determine whether there's any basis on that at all.  And then

10   I'll determine what the sanction should be for what has clearly

11   been a discovery violation.

12         So, if you'll just focus upon that.  We don't need to

13   get into the matter of the ambit of the whistleblower statute.  I

14   just had to correct you when you said the government had ratified

15   your case.  They've not.  It has not.  Not "they", it has not.

16   But the question becomes your attack upon the testimony of this

17   expert and your position with respect to what the sanctions

18   should be, if I find that there's this discovery violation.

19         So if you'll focus upon that, that would be helpful to

20   me.

21         MR. GUNTER:  Okay, Your Honor.  Judge Coulson, in his

22   recommendation, said that because there, the text message is not

23   in my phone, that they cannot prove that I ever received that

24   text message or that, in fact, it was fraudulent.

25         THE COURT:  No, he did not say that.

1          MR. GUNTER:  I have it.

2          THE COURT:  I've got his opinion right here, Mr.

3    Gunter.  He said, to be sure the Court has serious doubts --

4    first of all, Judge Coulson's, Judge Coulson's report and

5    recommendation, why we're having this hearing is under Local Rule

6    301, I determine to the extent to which I accept portions of it

7    or all of it.  But I can't permit you to put on the record things

8    that aren't correct.

9          Judge Coulson said he has serious doubts about the

10   authenticity of the text messages, but he could not find based

11   upon the evidence before him, because there was no forensic

12   examination.  And I took the next step to have there be a

13   forensic examination.

14         MR. GUNTER:  Yes, Your Honor.  If you will allow me,

15   you said I can argue it.  This is Page 8 from Judge Coulson's

16   recommendation.  Am I permitted to read the first sentence?

17         THE COURT:  I've got it right here.

18         MR. GUNTER:  It says --

19         THE COURT:  What line?  Given that you've had some

20   difficulty quoting him correctly, I want you to give me the line

21   where you're going to read.  I've got it in my hand right here.

22         MR. GUNTER:  Okay.  It's Page 8.  I'm going to read the

23   first paragraph.  May I do that?

24         THE COURT:  Yeah.  Go ahead.

25         MR. GUNTER:  It says:  Although the Court lacks the

```
1    clear evidence necessary to justify dismissal, under its inherent
2    authority of Rule 41, the Court recognizes that the chief reason
3    for the absence of such evidence is due to plaintiff's failure to
4    preserve the disputed text messages in a reasonable way so that,
5    for an example, a forensic examiner could examine the metadata
6    surrounding the time, place, circumstance of the creation.  This
7    is Judge Coulson.  I haven't added any words.
8         THE COURT:  And I interpret that to mean that he lacks
9    clear evidence based upon the fact that he did not have a
10   forensic analysis.  And that is correct.  That is correct.
11        MR. GUNTER:  Okay, Your Honor.  And so you said I could
12   argue about the overwriting?
13        THE COURT:  I understand what your theories were.  I'll
14   be glad to hear from you as to your theories.  I've clarified
15   there is no evidence in support of your theories this far.
16   Doesn't mean I can't hear what your theory is.  I'll be glad to
17   hear from you.
18        MR. GUNTER:  Okay.  So I asked the expert about the
19   presence of a certain act that allows you to manipulate text
20   messages.  And he said he was familiar with it, it's called
21   Cydia.  Okay?  So because of that, he can't say with definity
22   (sic) whether or not that particular text message was actually
23   manipulated or not.  He explained about the overwriting.  It's
24   gone.
25        So, again, I know as a judge you're going to give a
```

72

1    certain value to the expert.  But I believe it has been

2    demonstrated clearly that they cannot prove beyond a shadow of a

3    doubt that Anthony Gunter sat down somewhere and somehow

4    manipulated something.  There's no text in my phone that can

5    prove that.  The text in his phone -- that's why you said you got

6    any evidence that you want to dispute?  I said, no, Your Honor,

7    because I don't have any legitimate evidence.  I'm not trying to

8    defraud the Court.  So I said nope.  So I can't be accused of

9    that.  I can go by what the expert said.  I heard every word he

10   said when he sat there.

11          There the fact that it's not there, you can't prove I

12   ever received it.  Without examining the other guy's phone, him,

13   he can't prove that the Cydia program was never there.

14          THE COURT:  Okay.  Fine.  I understand what your

15   argument is, Mr. Gunter.  I understand it.

16          MR. GUNTER:  So, I don't know what the time limit is.

17          THE COURT:  Take all the time you want.  We're not in

18   any rush.

19          MR. GUNTER:  My argument basically is if they could

20   demonstrate by a download from my phone from their expert that

21   can clearly demonstrate, Mr. Gunter, you fabricated this text

22   message, then it would be nothing to argue.  But they cannot do

23   that.  Only thing they can confirm is that they discovered that

24   text message in Castor's phone.  That's the only thing they can

25   confirm.

1          So, I mean, you know, I don't know what else I can do

2    or say.  To me, to dismiss a case based on four words in a text

3    message, the other text has been proven it is a different time.

4    So this comes down to dismissing this case for four words in a

5    text message.

6          You know, according to everything I've researched, you

7    know, it has to be, they have to be deprived.  They have to be

8    prejudiced.  They have to, it has to be some egregious pattern of

9    behavior.  I have to violate court orders.  I haven't violated

10   any court order.  They have.

11         Judge Coulson signed a court order saying that they

12   would file for 11 and 37.  I drafted a brief directed at 11 and

13   37.  They on their own changed it to 11 and 41 without ever

14   notifying me.  And I got a court order.  If you need me to show

15   you a copy of it, this says 11 and 37.

16         Now, if the Court ignores that, well, how do you give a

17   value to four words in a text message?  That's a court order,

18   Your Honor.

19              THE COURT:  Anything else you want to say, Mr. Gunter?

20              MR. GUNTER:  No, Your Honor.

21              THE COURT:  All right.  Well, then, the question is

22   before me the matter of what the sanction should be.  The fact --

23   essentially, your argument is is that because four words are

24   fraudulent and don't exist and you represented them to be true,

25   that whether or not the sanction should be a dismissal.  And that

1    is what is before me here in terms of what the ultimate sanction

2    should be in terms of a dismissal.

3         And, quite frankly, the issue also before me is whether

4    or not there's anything further that can be developed from

5    discovery where testimony is placed under oath, and you have not

6    been placed under oath here.  Quite frankly, I've tried to be

7    very careful that you're not placed under oath so I can make a

8    determination as to whether or not you've been truthful.

9         So the record will reflect that you have not said

10   anything here under oath, under penalties of perjury, because

11   you're a pro se litigant.  And given the tone of this case, I've

12   tried to be careful to make sure we don't do that, put you in

13   that position.  Because there are serious ramifications as to

14   that, sir.  Serious ramifications.

15        So, the fact of the matter is is that in terms of

16   exercising my inherent power with respect to whether or not to

17   dismiss a case based on the wrongdoing of a party, there's

18   clearly the wrongdoing here.  The question is whether or not it

19   warrants dismissal.

20        And the Fourth Circuit has, one key case has been

21   established some 25 years ago, and that is the case, the Shaffer

22   case with respect to what are known as the six Shaffer factors in

23   terms of what penalties should be imposed.  The case of United

24   States v. Shaffer Equipment, 11 F.3d 450, a Fourth Circuit

25   opinion in 1993.  The federal courts have the inherent power to

1  dismiss an action with prejudice as a sanction under <u>In Re</u>

2  <u>Jemsek</u>, J-E-M-S-E-K, <u>Clinic, PA</u>, 850 F.3d 150, a Fourth Circuit

3  opinion in 2017, to which Judge Chasanow made reference in

4  another case, <u>Dewitt v. Ritz</u>, in a 2021 opinion here of this

5  court.

6          In looking at these factors, I'll certainly look at

7  these factors in terms of the factors to be considered here.  But

8  it is abundantly clear that, to make reference to "about the IG

9  investigation" in Paragraph 55 of the fourth amended complaint is

10  not a correct representation.  Not finding it was willful.  It

11  may have been negligent.  But it's not accurate.

12          And it doesn't, I absolutely accept the defendant's

13  expert's testimony in terms of the forensic analysis.  I have the

14  benefit of that, which Judge Coulson did not have.

15          And the forensic expert has testified very carefully.

16  And I find without question that Defendant's Exhibit 2 noted

17  there's been an alteration, that "about the IG investigation" did

18  not exist.  And I find as a factual matter, a factual matter,

19  that is a misrepresentation.  That is not the accurate email.

20  And to have responded in that fashion was a misrepresentation in

21  discovery.

22          And so there has been a violation of discovery when, in

23  fact, the email reads "you've been pretty straight."  The

24  question becomes, as you've noted, the import of those four

25  words.

1    That certainly affects your credibility in the eyes of

2  the finder of fact, Mr. Gunter.  But the question is whether or

3  not it amounts to a necessary sanction of a dismissal.  It does

4  set the context in terms of whether or not there's any reasonable

5  jury that could find in your favor.  And that may or may not need

6  to await further discovery and it may or may not need to await

7  the matter of summary judgment motions filed by both sides.

8    Is there anything further in rebuttal from the point of

9  view of the defense, Ms. McGinley, because it is your motion?

10    MS. MCGINLEY:  No, Your Honor.

11    THE COURT:  All right.  So I'll take this under

12  advisement.  This matter will continue to remain stayed for any

13  further discovery until I make a determination as to that.

14    And then we will, depending upon this Court's ruling,

15  there will either be a dismissal of this case with prejudice,

16  which would give you a right to take this appeal down to Richmond

17  to the United States Court of Appeals for the Fourth Circuit, or

18  I'll just apply appropriate sanctions.

19    The record will reflect without question that the

20  defense is free to utilize, by concurrence with the defendant,

21  with the plaintiff, rather -- Mr. Gunter's conceded this -- that

22  Defendant's Exhibits 2 and 3 -- I'm sorry -- Defendant's Exhibits

23  2 and 4, Ms. McGinley, the variations can be presented in the

24  defendant's case to show the inconsistencies there in terms of

25  the issue of credibility of Mr. Gunter if he places his

1    credibility at issue in that fashion.

2            I have received further evidence here under Local Rule

3    301 with respect to accepting, rejecting or modifying Judge

4    Coulson's report and recommendation.  That's why I took great

5    care making sure it was adequately quoted in terms of what his

6    report and recommendation was because he did not have forensic

7    examination evidence, which I've now had the benefit to listen

8    to.

9            The plaintiff had plenty of time to come forward.  I

10   recognize that two different law firms have asked to be excused

11   from this case and I've let both sets of lawyers out of the case.

12   Now the plaintiff is proceeding pro se.  But the plaintiff's had

13   plenty of time to present his own expert if he so chose.

14           The record will also reflect that essentially the

15   plaintiff, the defense has incurred $12,000 in costs with respect

16   to this forensic examination and presenting forensic evidence in

17   this matter.

18           There being nothing further, now after a full two-hour

19   hearing on this matter, I want to thank everyone for their

20   submissions, and also court staff.  And with that, this Court

21   stands adjourned for the day.

22           (Conclusion of Proceedings at 12:57 p.m.)

23

24

25

78

1                               INDEX

2

3

4                                                      PAGE

5    DEFENSE WITNESS

6    WITNESS: JOHN CHRISTOPHER RACICH

7    DIRECT EXAMINATION BY MS. MCGINLEY              17
     CROSS EXAMINATION BY MR. GUNTER                36
8    REDIRECT EXAMINATION BY MS. MCGINLEY           48
     RECROSS EXAMINATION BY MR. GUNTER              51
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    REPORTER'S CERTIFICATE

4

5          I, Mary M. Zajac, do hereby certify that I recorded

6    stenographically the proceedings in the matter of Gunter v.

7    Alutiiq, Case Number(s) RDB-20-03410, on April 14, 2022.

8          I further certify that the foregoing pages constitute

9    the official transcript of proceedings as transcribed by me to

10   the within matter in a complete and accurate manner.

11         In Witness Whereof, I have hereunto affixed my

12   signature this _____ day of _____, 2022.

13

14

15

16                    _____/S/_____
                      Mary M. Zajac,
17                    Official Court Reporter

18

19

20

21

22

23

24

25

## $

**$12,000** [2] - 36:16, 77:15
**$400** [1] - 36:12
**$550** [1] - 36:13

## /

**/S** [1] - 79:16

## 1

**1** [5] - 24:14, 24:15, 48:11, 50:4, 50:17
**10** [3] - 6:8, 8:5, 57:19
**101** [1] - 1:24
**101.2** [1] - 3:4
**107.5** [1] - 50:14
**10:47** [1] - 47:10
**10th** [7] - 7:18, 12:1, 38:9, 47:14, 48:7, 48:10
**11** [10] - 9:16, 9:18, 9:25, 11:15, 47:5, 73:12, 73:13, 73:15, 74:24
**11(d** [4] - 9:22, 9:25, 10:2
**11:03** [1] - 2:1
**11:46** [1] - 47:5
**12** [7] - 24:11, 24:12, 24:13, 24:15, 26:18, 26:19, 56:12
**12:57** [1] - 77:22
**13** [7] - 24:19, 30:19, 31:1, 32:8, 39:9, 56:10, 56:16
**13th** [1] - 8:21
**14** [2] - 1:11, 79:7
**14th** [1] - 68:1
**150** [1] - 75:2
**16** [6] - 40:7, 56:7, 56:9, 56:24, 57:3, 57:14
**17** [1] - 78:7
**1970** [1] - 42:5
**1993** [2] - 20:3, 74:25
**1997** [1] - 20:4
**1st** [1] - 42:5

## 2

**2** [16] - 26:18, 28:15, 33:2, 33:25, 34:3, 35:21, 48:18, 50:17, 54:13, 55:2, 58:19, 66:22, 75:16, 76:22, 76:23
**20** [1] - 12:12
**2017** [1] - 75:3

**2019** [13] - 8:2, 12:12, 26:23, 31:24, 35:1, 35:14, 35:15, 36:1, 45:19, 46:7, 48:8, 49:25, 58:20
**2020** [3] - 26:23, 35:19, 36:2
**2021** [9] - 7:18, 8:5, 26:4, 38:9, 46:12, 48:7, 48:10, 59:13, 75:4
**2022** [3] - 1:11, 79:7, 79:12
**20th** [3] - 30:22, 31:12, 31:24
**21201** [1] - 1:24
**22nd** [3] - 35:13, 35:25, 36:1
**23rd** [1] - 35:13
**24** [2] - 40:9, 40:14
**2409** [1] - 6:9
**25** [1] - 74:21
**25th** [1] - 59:13
**26** [2] - 40:3, 40:14
**26(g** [2] - 10:6, 11:15
**29** [2] - 12:12, 58:20
**29th** [2] - 49:25, 61:16
**2:42** [6] - 30:22, 31:12, 31:14, 31:24, 40:3, 40:9
**2:42:24** [1] - 55:25
**2:42:26** [2] - 40:5, 55:25

## 3

**3** [9] - 24:18, 30:18, 32:8, 33:2, 33:25, 34:3, 35:21, 50:17, 76:22
**30-day** [1] - 33:15
**301** [3] - 15:17, 70:6, 77:3
**31** [1] - 8:1
**35** [1] - 59:13
**36** [1] - 78:7
**37** [5] - 11:14, 12:24, 73:12, 73:13, 73:15
**37(b** [1] - 14:10
**37(e** [1] - 10:5
**39** [1] - 7:23

## 4

**4** [11] - 24:23, 26:18, 28:5, 28:10, 44:23, 46:23, 50:2, 50:17, 57:20, 58:25, 76:23
**41** [6] - 9:17, 12:24, 14:10, 65:25, 71:2, 73:13
**41(b** [1] - 11:14
**41(c** [1] - 10:4

**410-608-2110** [1] - 27:5
**410-707-0368** [1] - 49:19
**43** [2] - 5:14, 8:11
**44** [1] - 21:3
**45** [2] - 39:22, 65:12
**450** [1] - 74:24
**47** [2] - 5:16, 8:17
**48** [1] - 78:8
**4:41** [1] - 49:24
**4:42** [2] - 27:6, 28:1
**4th** [4] - 47:5, 47:6, 47:10, 47:11

## 5

**5** [6] - 8:1, 25:2, 31:11, 31:25, 50:17
**50** [1] - 10:2
**50-some** [1] - 55:12
**51** [1] - 78:8
**53** [1] - 11:10
**55** [4] - 59:12, 59:15, 68:5, 75:9
**59** [1] - 49:24

## 6

**6** [5] - 27:6, 50:12, 50:13, 50:18, 50:21
**60** [2] - 55:13, 55:16

## 7

**7/29/2019** [1] - 27:2
**70** [2] - 8:22, 55:16
**702** [1] - 21:17

## 8

**8** [3] - 36:1, 70:15, 70:22
**850** [1] - 75:2
**8th** [2] - 35:19, 36:2

## 9

**90** [1] - 63:1
**90-day** [1] - 33:15
**90th** [1] - 63:2
**935** [3] - 24:23, 28:6, 50:2
**936** [2] - 25:2, 31:11
**99%** [1] - 12:15

## A

**a.m** [1] - 2:1
**AASS** [5] - 24:23, 25:2, 28:6, 31:11, 50:2
**ability** [3] - 29:23, 46:14, 49:7
**able** [8] - 19:20, 24:8, 25:16, 29:19, 32:15, 34:7, 45:5, 61:7
**absence** [1] - 71:3
**absolutely** [6] - 39:17, 52:7, 63:12, 66:21, 75:12
**abundantly** [2] - 68:20, 75:8
**accept** [6] - 12:17, 13:15, 15:17, 21:13, 70:6, 75:12
**accepting** [1] - 77:3
**accepts** [3] - 13:18, 53:20, 54:17
**according** [4] - 50:9, 50:16, 59:1, 73:6
**accurate** [6] - 54:4, 58:24, 59:19, 75:11, 75:19, 79:10
**accused** [1] - 72:8
**acknowledge** [3] - 63:25, 66:20, 66:22
**acknowledged** [2] - 13:25, 65:16
**acknowledging** [1] - 65:13
**acknowledgment** [1] - 15:4
**acquire** [1] - 17:23
**Act** [4] - 6:1, 6:5, 6:7, 6:8
**act** [6] - 6:2, 6:6, 14:21, 30:5, 71:19
**acting** [1] - 5:7
**action** [3] - 5:25, 34:17, 75:1
**actions** [3] - 14:21, 60:7, 60:23
**active** [1] - 18:12
**activity** [2] - 19:18, 19:20
**acts** [3] - 60:25, 61:6, 61:24
**actual** [5] - 22:1, 22:4, 29:22, 30:3, 58:25
**ad** [1] - 64:20
**ADA** [1] - 66:5
**add** [1] - 10:9
**added** [2] - 32:10, 71:7
**address** [8] - 7:10, 9:7, 9:18, 41:4, 49:17, 64:24, 66:7, 66:9

**addressed** [3] - 6:11, 8:2, 14:15
**addressing** [4] - 3:25, 9:4, 9:10, 65:9
**adequately** [1] - 77:5
**adjourned** [1] - 77:21
**adjunct** [1] - 20:15
**admitted** [2] - 50:15, 60:17
**advance** [1] - 8:22
**ADVANCED** [1] - 1:7
**Advanced** [2] - 2:3, 3:16
**advisement** [1] - 76:12
**affects** [1] - 76:1
**affixed** [1] - 79:11
**age** [3] - 61:3, 61:4, 66:5
**Age** [2] - 6:1, 6:6
**ago** [3] - 58:19, 65:12, 74:21
**agree** [2] - 54:7, 69:1
**agreement** [1] - 12:15
**ahead** [5] - 13:19, 51:11, 51:13, 66:3, 70:24
**Alan** [1] - 59:14
**algorithm** [1] - 25:20
**allegations** [1] - 7:21
**alleged** [3] - 7:4, 61:4, 68:12
**allegedly** [3] - 9:5, 12:11, 54:20
**alleges** [1] - 5:25
**allow** [4] - 15:20, 31:21, 32:20, 70:14
**allowing** [1] - 14:19
**allows** [5] - 18:17, 64:11, 64:12, 64:13, 71:19
**alter** [2] - 18:18, 30:10
**alteration** [3] - 31:21, 59:23, 75:17
**alterations** [1] - 46:10
**altered** [7] - 9:5, 12:22, 14:20, 29:4, 30:16, 31:20, 32:9
**altering** [1] - 11:4
**Alutiiq** [10] - 2:3, 3:16, 5:21, 5:23, 5:24, 5:25, 7:24, 8:3, 8:17, 79:7
**ALUTIIQ** [1] - 1:7
**Alutiiq's** [6] - 6:12, 6:17, 8:6, 9:2, 12:7
**ambit** [1] - 69:13
**amended** [7] - 5:19, 59:5, 59:8, 68:3, 68:4, 75:9
**Amendment** [1] - 62:17
**American** [1] - 20:3
**amount** [1] - 54:1

**amounts** [2] - 55:25, 76:3
**analysis** [10] - 11:13, 11:24, 12:16, 22:7, 22:18, 23:2, 26:12, 32:1, 71:10, 75:13
**Android** [12] - 23:8, 23:9, 25:10, 25:13, 26:11, 26:22, 32:18, 33:22, 34:6, 41:16, 41:24, 42:4
**answer** [1] - 53:11
**ANTHONY** [1] - 1:5
**Anthony** [3] - 1:17, 2:2, 72:3
**apart** [1] - 35:9
**apologize** [2] - 35:15, 37:24
**appeal** [2] - 16:13, 76:16
**Appeals** [2] - 16:14, 76:17
**appear** [4] - 8:24, 58:17, 58:24, 59:19
**appearance** [1] - 3:5
**Appearances** [1] - 1:15
**appearances** [1] - 2:11
**apple** [1] - 29:22
**Apple** [5] - 30:2, 37:7, 43:18, 49:9
**Apple/shift** [1] - 46:23
**application** [11] - 29:24, 31:22, 34:25, 35:2, 35:4, 35:11, 35:16, 35:18, 42:11, 46:22
**applications** [4] - 20:12, 34:24, 37:5, 49:8
**applied** [1] - 65:11
**applies** [2] - 4:18, 5:2
**apply** [1] - 76:18
**appreciate** [1] - 52:6
**appropriate** [3] - 11:13, 61:21, 76:18
**appropriately** [1] - 68:19
**April** [5] - 1:11, 8:21, 67:10, 68:1, 79:7
**apropos** [1] - 10:17
**Arbitration** [1] - 21:6
**arbitration** [1] - 21:7
**area** [4] - 21:10, 21:17, 51:12, 52:5
**areas** [1] - 2:9
**argue** [12] - 40:21, 41:10, 44:15, 58:14, 59:12, 68:16, 69:6, 69:7, 70:15, 71:12, 72:22
**argues** [2] - 53:19, 54:15
**argument** [15] - 16:4,

16:7, 40:15, 41:2, 45:2, 45:7, 45:8, 47:20, 47:21, 54:9, 68:18, 72:15, 72:19, 73:23
**arguments** [1] - 62:19
**artifacts** [2] - 19:9, 45:22
**Arts** [1] - 20:2
**assertion** [1] - 61:17
**assigned** [1] - 49:20
**assignment** [1] - 22:5
**Associates** [2] - 20:7, 59:15
**Association** [1] - 20:22
**attack** [2] - 13:14, 69:16
**attacking** [2] - 13:12, 14:2, 15:4
**attempt** [1] - 61:20
**attend** [1] - 62:17
**attributable** [1] - 56:2
**attributing** [1] - 57:9
**August** [12] - 8:1, 12:12, 30:22, 30:23, 31:12, 31:24, 35:1, 35:13, 35:25, 36:1, 59:13
**authenticating** [1] - 54:23
**authenticity** [4] - 11:11, 28:21, 31:24, 70:10
**authority** [1] - 71:2
**automated** [1] - 34:12
**automatic** [1] - 33:10
**available** [4] - 9:23, 10:2, 52:2, 52:12
**await** [3] - 45:1, 76:6
**award** [1] - 20:23
**awards** [1] - 20:18
**aware** [1] - 65:13

## B

**Bachelor** [1] - 20:2
**background** [1] - 20:1
**bad** [1] - 61:6
**Baltimore** [2] - 1:12, 1:24
**barring** [1] - 14:18
**based** [16] - 18:1, 32:1, 33:15, 44:12, 46:2, 47:6, 48:25, 51:1, 58:17, 61:1, 61:4, 69:4, 70:10, 71:9, 73:2, 74:17
**baseless** [1] - 67:8
**basis** [4] - 10:24, 19:21, 29:7, 69:9
**Bates** [12] - 24:12, 24:15, 24:18, 24:23, 25:2, 26:18, 28:5, 30:18, 30:25, 32:8, 39:9, 50:2

**bear** [1] - 59:8
**becomes** [6] - 12:20, 13:5, 51:22, 52:5, 69:16, 75:24
**began** [2] - 20:8, 36:24
**beginning** [1] - 55:17
**behalf** [4] - 3:16, 4:10, 5:7
**Behalf** [2] - 1:16, 1:18
**behavior** [1] - 73:9
**behind** [2] - 2:15, 23:24
**bench** [2] - 2:14, 24:4
**beneath** [1] - 44:4
**beneficial** [1] - 62:6
**benefit** [2] - 75:14, 77:7
**Bennett** [1] - 1:13
**best** [1] - 53:12
**between** [14] - 28:24, 32:12, 32:16, 33:4, 33:6, 38:2, 40:14, 44:13, 44:14, 45:15, 45:22, 47:17, 49:1, 65:14
**beyond** [2] - 42:18, 72:2
**bill** [2] - 36:12
**Board** [1] - 21:7
**Bob** [1] - 54:21
**Bobs** [1] - 54:20
**bodies** [1] - 21:8
**body** [5] - 29:22, 30:3, 31:10, 31:21, 32:3
**boosted** [1] - 3:23
**booster** [4] - 2:16, 3:10, 3:11, 4:16
**bottom** [5] - 24:13, 24:20, 30:21, 53:17, 56:15
**breaking** [1] - 26:16
**brief** [2] - 12:14, 73:12
**briefed** [1] - 11:7
**briefly** [2] - 21:4, 48:1
**broken** [1] - 35:9
**brought** [1] - 63:14
**bubble** [1] - 49:9
**button** [2] - 22:13, 46:20
**BY** [16] - 17:12, 21:21, 24:7, 27:19, 30:17, 36:21, 39:3, 39:24, 42:21, 45:11, 48:4, 51:15, 78:7, 78:7, 78:8, 78:8
**bypass** [2] - 30:2, 37:7

## C

**calendar** [1] - 42:2
**cannot** [6] - 24:9, 37:6, 66:13, 69:23, 72:2, 72:22
**capability** [1] - 30:9

**card** [1] - 3:11
**care** [1] - 77:5
**careful** [3] - 64:3, 74:7, 74:12
**carefully** [2] - 67:20, 75:15
**carrier** [1] - 34:18
**carrier's** [1] - 34:21
**CASE** [1] - 1:6
**Case** [1] - 79:7
**case** [61] - 2:7, 6:24, 7:5, 8:4, 8:10, 8:14, 10:3, 10:11, 11:19, 12:9, 12:18, 13:11, 13:23, 14:7, 14:9, 14:12, 16:12, 19:1, 19:2, 20:20, 20:21, 21:23, 21:25, 25:5, 26:3, 42:4, 46:10, 48:21, 49:13, 49:22, 49:23, 52:21, 55:20, 59:14, 60:6, 61:1, 61:14, 61:25, 62:21, 62:22, 64:12, 64:14, 65:3, 65:5, 65:20, 69:1, 69:15, 73:2, 73:4, 74:11, 74:17, 74:20, 74:21, 74:22, 74:23, 75:4, 76:15, 76:24, 77:11
**cases** [1] - 11:20
**Castor** [10] - 22:1, 23:4, 25:9, 26:10, 27:11, 27:25, 28:8, 32:16, 33:4, 42:17
**Castor's** [23] - 27:22, 28:4, 28:19, 28:22, 28:24, 28:25, 29:1, 31:6, 31:9, 31:13, 31:15, 32:2, 32:4, 32:13, 36:7, 38:18, 38:19, 45:12, 46:1, 49:4, 52:22, 56:3, 72:24
**causes** [1] - 5:25
**CDC** [1] - 3:11
**cell** [14] - 7:24, 17:25, 18:6, 19:1, 22:1, 25:17, 26:9, 27:20, 34:18, 34:19, 34:21, 34:22, 38:11, 38:12
**Cellebrite** [18] - 19:1, 19:4, 19:8, 23:6, 23:7, 23:10, 25:14, 25:18, 25:23, 32:2, 37:15, 37:25, 45:13, 45:23, 48:6, 48:17, 49:7
**certain** [16] - 11:6, 11:20, 12:1, 12:2, 12:3, 20:12, 21:24, 26:8, 32:23, 33:18, 35:17, 42:3, 53:25, 54:1, 71:19, 72:1
**certainly** [14] - 7:5, 7:6, 9:13, 12:18, 13:24, 15:9,

16:9, 16:13, 29:15, 62:19, 63:22, 65:13, 75:6, 76:1
**certainty** [1] - 26:14
**CERTIFICATE** [1] - 79:3
**certificate** [1] - 37:7
**certify** [2] - 79:5, 79:8
**chain** [1] - 33:4
**challenge** [2] - 21:11, 69:5
**challenging** [1] - 14:2
**change** [3] - 18:18, 29:23, 30:3
**changed** [2] - 29:21, 73:13
**charges** [1] - 6:4
**Chasanow** [1] - 75:3
**check** [1] - 48:9
**chief** [1] - 71:2
**choice** [1] - 62:10
**chooses** [1] - 15:8
**chose** [2] - 67:11, 77:13
**chosen** [2] - 15:20, 67:10
**Christopher** [4] - 1:20, 4:23, 15:25, 17:2
**CHRISTOPHER** [2] - 16:22, 78:6
**Circuit** [5] - 16:14, 74:20, 74:24, 75:2, 76:17
**circumstance** [1] - 71:6
**circumstances** [1] - 8:2
**cited** [1] - 11:20
**CIVIL** [1] - 1:6
**Civil** [1] - 2:3
**claim** [4] - 9:8, 61:3, 63:8, 66:5
**claims** [3] - 5:20, 60:24, 61:10
**clarified** [1] - 71:14
**clarify** [5] - 27:15, 29:8, 38:21, 55:21, 55:23
**clarity** [1] - 39:12
**class** [1] - 20:14
**classes** [1] - 20:13
**clear** [18] - 7:16, 14:13, 15:16, 27:10, 38:7, 39:2, 40:19, 41:17, 44:21, 48:5, 54:12, 62:4, 65:24, 68:11, 68:20, 71:1, 71:9, 75:8
**cleared** [1] - 14:14
**clearer** [1] - 40:19
**clearly** [13] - 4:3, 13:17, 40:16, 43:14, 44:12, 44:16, 57:6, 59:18, 68:25, 69:10, 72:2, 72:21, 74:18
**CLERK** [2] - 16:21, 16:24

**Clinic** [1] - 75:2
**close** [1] - 54:5
**closer** [2] - 19:14, 55:14
**codified** [1] - 6:8
**College** [2] - 20:4, 20:15
**commenced** [1] - 2:1
**comment** [1] - 61:4
**comments** [1] - 67:8
**Commission** [1] - 63:1
**communication** [2] - 59:21, 68:12
**Companion** [9] - 35:1, 35:6, 35:18, 35:23, 36:5, 37:19, 37:21, 37:23
**company** [1] - 17:17
**compare** [2] - 21:25, 25:23
**compared** [1] - 38:1
**complaint** [15] - 5:19, 5:20, 5:25, 59:5, 59:6, 59:7, 59:8, 59:12, 59:23, 60:24, 61:4, 65:22, 68:4, 75:9
**complete** [2] - 8:14, 79:10
**completed** [4] - 6:23, 15:3, 22:5, 46:7
**completeness** [1] - 54:13
**completing** [1] - 22:18
**compressed** [1] - 19:7
**computer** [18] - 17:19, 17:21, 17:23, 17:24, 18:14, 19:12, 19:16, 20:5, 20:8, 20:13, 20:14, 20:16, 20:19, 22:8, 35:4, 46:23, 51:21, 52:1
**computers** [4] - 17:24, 19:19, 41:25, 51:22
**conceded** [1] - 76:21
**concerns** [3] - 7:21, 9:19, 10:24
**conclude** [3] - 8:9, 11:18, 65:2
**concluded** [1] - 7:7
**conclusion** [2] - 15:2, 77:22
**concurrence** [1] - 76:20
**conduct** [1] - 23:2
**conducted** [1] - 7:18
**conference** [2] - 7:19, 11:25
**confirm** [3] - 30:8, 72:23, 72:25
**considered** [1] - 75:7
**constitute** [1] - 79:8
**consulting** [1] - 17:19
**contact** [1] - 49:17
**contacts** [1] - 49:20

**contain** [2] - 53:20, 54:16
**contend** [6] - 14:11, 41:11, 66:25, 68:3, 68:4, 68:7
**contended** [1] - 14:1
**content** [8] - 18:8, 28:25, 29:4, 29:22, 30:14, 48:20, 50:5
**contention** [3] - 45:5, 59:25, 62:9
**contentions** [2] - 58:22, 65:22
**context** [8] - 9:25, 10:3, 10:7, 12:20, 13:20, 15:9, 51:21, 76:4
**continue** [4] - 2:22, 39:1, 61:10, 76:12
**continued** [1] - 54:19
**continues** [2] - 30:21, 54:22
**continuing** [1] - 61:22, 61:24
**contractor** [1] - 6:8
**contradiction** [1] - 61:17
**contradictory** [1] - 55:1
**control** [1] - 34:21
**convention** [1] - 27:3
**conversation** [4] - 33:4, 34:9, 34:11, 43:17
**conversations** [2] - 33:20, 61:19
**copies** [5] - 21:24, 23:3, 25:5, 27:16, 33:1
**copy** [15] - 26:21, 27:7, 27:22, 28:25, 29:18, 30:22, 31:7, 31:16, 31:18, 32:4, 32:5, 32:10, 33:24, 73:15
**Cornell** [1] - 20:2
**corollary** [2] - 6:6, 8:21
**correct** [44] - 9:24, 10:12, 10:13, 13:13, 14:1, 27:12, 27:21, 28:11, 31:17, 38:14, 40:6, 41:21, 43:2, 43:9, 47:14, 50:1, 52:7, 52:9, 52:10, 52:11, 52:16, 54:10, 57:21, 62:5, 62:11, 62:12, 62:15, 63:3, 63:13, 63:17, 63:25, 64:1, 64:12, 64:14, 64:15, 65:16, 65:17, 66:25, 69:14, 70:8, 71:10, 75:10
**correction** [1] - 60:14
**correctly** [3] - 5:22, 46:8, 70:20
**cost** [1] - 10:6

**costs** [1] - 77:15
**Coulson** [18] - 2:6, 10:1, 10:23, 11:9, 11:16, 13:22, 53:21, 54:8, 54:15, 54:19, 54:22, 54:23, 64:24, 69:21, 70:9, 71:7, 73:11, 75:14
**Coulson's** [10] - 9:21, 11:1, 12:10, 12:15, 53:16, 55:3, 70:4, 70:15, 77:4
**counsel** [11] - 2:13, 2:19, 3:17, 5:14, 7:20, 10:21, 38:10, 59:12, 59:13, 59:14
**count** [1] - 5:18
**counter** [3] - 66:15, 66:16, 67:14
**couple** [1] - 38:6
**COURT** [120] - 1:1, 2:2, 3:3, 3:10, 3:13, 3:21, 3:24, 4:13, 4:17, 4:20, 5:2, 5:5, 5:24, 7:10, 7:13, 7:16, 9:20, 10:14, 12:19, 13:16, 14:5, 14:25, 15:12, 16:5, 16:19, 17:5, 17:9, 19:13, 21:11, 21:15, 22:21, 23:14, 23:16, 24:4, 24:12, 27:10, 27:14, 28:10, 28:13, 29:5, 29:7, 29:11, 29:14, 36:18, 38:7, 38:16, 38:19, 38:21, 38:25, 39:6, 39:19, 40:20, 41:6, 41:14, 41:17, 41:20, 42:20, 44:18, 44:20, 45:1, 47:21, 47:24, 48:2, 50:9, 50:14, 50:21, 50:23, 51:4, 51:7, 51:11, 54:12, 55:5, 55:8, 55:14, 55:20, 56:9, 56:11, 56:17, 56:20, 57:7, 57:9, 57:20, 57:22, 57:24, 58:9, 60:9, 60:11, 62:1, 62:4, 62:8, 62:13, 62:16, 62:25, 63:6, 63:12, 63:22, 64:3, 64:9, 64:12, 64:16, 64:22, 65:18, 66:3, 66:9, 66:17, 67:5, 67:20, 68:9, 69:25, 70:2, 70:17, 70:19, 70:24, 71:8, 71:13, 72:14, 72:17, 73:19, 73:21, 76:11
**Court** [36] - 4:1, 6:10, 7:10, 10:4, 10:22, 11:18, 13:1, 16:14, 17:15, 18:5, 21:6, 21:16, 23:1, 37:4, 37:12, 38:14, 39:13,

40:1, 41:10, 43:16, 46:16, 47:2, 51:20, 53:20, 54:17, 59:25, 60:19, 61:21, 70:3, 70:25, 71:2, 72:8, 73:16, 76:17, 77:20, 79:17
**court** [16] - 2:9, 2:11, 4:3, 15:17, 18:22, 20:24, 21:5, 40:10, 73:9, 73:10, 73:11, 73:14, 73:17, 75:5, 77:20
**Court's** [2] - 65:25, 76:14
**Courthouse** [1] - 1:23
**courthouse** [1] - 2:10
**courtroom** [1] - 4:25
**courts** [2] - 21:4, 74:25
**cover** [2] - 14:23, 60:7
**create** [2] - 18:19, 46:21
**created** [10] - 23:10, 25:14, 25:22, 26:2, 26:3, 26:6, 27:16, 27:17, 46:8, 47:12
**creates** [2] - 25:18, 25:19
**creation** [1] - 71:6
**credibility** [9] - 13:12, 13:14, 14:3, 15:5, 44:22, 69:5, 76:1, 76:25, 77:1
**credit** [2] - 14:24, 61:8
**Crimes** [1] - 20:21
**cross** [10] - 5:8, 9:12, 15:8, 21:11, 29:15, 36:19, 39:1, 47:22, 55:22, 56:4
**CROSS** [2] - 36:20, 78:7
**Cydia** [7] - 37:2, 37:4, 37:5, 37:12, 37:17, 71:21, 72:13

**D**

**data** [20] - 18:1, 18:7, 18:10, 18:18, 18:21, 19:6, 19:10, 19:20, 22:12, 25:16, 25:20, 30:10, 34:22, 46:11, 52:1, 52:3, 52:4
**database** [10] - 19:7, 30:3, 30:15, 32:18, 33:8, 33:18, 34:20, 42:7, 45:21, 49:3
**date** [22] - 7:23, 32:22, 34:3, 35:4, 35:8, 35:19, 35:20, 39:25, 41:24, 42:3, 43:11, 43:14, 43:19, 44:1, 44:3, 44:6, 44:14, 47:8, 47:11, 53:25
**dated** [3] - 8:1, 48:7,

58:20
**dates** [3] - 18:11, 19:10, 34:5
**days** [2] - 63:2, 67:23
**deal** [3] - 4:6, 5:17, 59:16
**dealing** [4] - 8:20, 9:24, 64:23, 65:24
**dealt** [1] - 12:1
**debate** [1] - 66:19
**deceive** [1] - 61:20
**decision** [1] - 15:18
**decks** [1] - 14:14
**declared** [1] - 40:4
**deemed** [1] - 50:15
**default** [1] - 48:16
**defend** [1] - 61:23
**Defendant** [2] - 1:8, 1:18
**defendant** [18] - 3:16, 4:10, 5:6, 5:21, 6:25, 7:2, 9:13, 10:25, 11:3, 11:7, 11:21, 14:9, 16:8, 21:22, 23:4, 59:21, 61:22, 76:20
**defendant's** [4] - 14:21, 58:11, 75:12, 76:24
**Defendant's** [9] - 28:10, 44:23, 57:20, 58:19, 58:24, 66:22, 75:16, 76:22
**DEFENDANTS** [1] - 16:22
**defendants** [3] - 10:21, 19:24, 52:22
**DEFENSE** [1] - 78:5
**defense** [13] - 5:17, 6:8, 12:23, 13:11, 13:13, 15:24, 38:11, 55:23, 57:12, 67:15, 76:9, 76:20, 77:15
**definable** [1] - 13:6
**definitely** [1] - 59:22
**definity** [1] - 71:21
**defraud** [1] - 72:8
**degree** [1] - 26:14
**delete** [7] - 33:16, 33:18, 33:19, 33:20, 34:18, 51:24, 51:25
**deleted** [12] - 18:12, 32:21, 32:22, 32:25, 33:9, 33:11, 33:15, 33:17, 51:22, 54:25, 60:19
**deleted-on** [1] - 32:22
**deletion** [5] - 33:13, 33:25, 34:2, 34:8, 34:12
**delta** [1] - 38:2
**delusional** [1] - 53:21
**demonstrate** [2] -

72:20, 72:21
  **demonstrated** [1] - 72:2
  **demonstrates** [1] -
61:21
  **denial** [2] - 6:20
  **denied** [2] - 6:16, 11:2
  **Department** [4] - 62:23,
63:9, 64:7, 64:11
  **deposition** [7] - 7:18,
38:9, 60:9, 60:10, 60:15,
60:17, 61:18
  **deprived** [1] - 73:7
  **describe** [3] - 17:15,
17:21, 20:1
  **designed** [1] - 35:2
  **desire** [2] - 2:23, 62:5
  **destroy** [1] - 33:22
  **detail** [1] - 61:12
  **detailed** [1] - 60:14
  **determination** [8] -
13:22, 22:15, 32:20,
46:2, 46:4, 66:18, 74:8,
76:13
  **determine** [10] - 13:8,
22:2, 29:2, 34:7, 40:23,
45:8, 63:15, 69:9, 69:10,
70:6
  **determined** [1] - 13:8
  **determining** [1] - 12:21
  **developed** [1] - 74:4
  **device** [6] - 18:12,
19:11, 30:14, 42:14,
42:15, 46:18
  **devices** [2] - 22:4,
46:25
  **Dewitt** [1] - 75:4
  **DHS** [1] - 63:8
  **difference** [12] - 28:24,
40:13, 40:22, 41:13,
41:14, 44:13, 44:16,
45:15, 45:22, 52:8, 57:6,
57:7
  **different** [24] - 3:5,
17:20, 20:11, 27:16,
28:9, 28:15, 28:16,
32:15, 32:16, 33:13,
40:17, 40:19, 40:24,
46:24, 46:25, 49:8, 50:3,
53:5, 56:7, 66:11, 67:11,
67:22, 73:3, 77:10
  **difficulty** [4] - 40:24,
40:25, 41:7, 70:20
  **DIRECT** [2] - 17:11,
78:7
  **direct** [2] - 60:23, 61:17
  **directed** [1] - 73:12
  **directly** [1] - 16:24
  **Director** [1] - 63:8
  **discovered** [3] - 37:19,
37:23, 72:23

**Discovery** [9] - 23:6,
25:8, 26:4, 26:10, 27:17,
37:15, 45:19, 45:24, 46:7
  **discovery** [28] - 6:23,
7:1, 7:4, 7:7, 8:4, 8:14,
9:5, 9:23, 10:2, 10:24,
11:12, 12:1, 15:1, 15:3,
20:16, 20:17, 23:5,
65:24, 66:1, 68:24,
69:11, 69:18, 74:5,
75:21, 75:22, 76:6, 76:13
  **discovery's** [1] - 15:3
  **discretion** [1] - 2:11
  **discrimination** [5] - 6:5,
9:8, 61:3, 65:23, 66:5
  **Discrimination** [2] -
6:1, 6:6
  **discussion** [1] - 38:10
  **dismiss** [6] - 12:18,
13:23, 16:11, 73:2,
74:17, 75:1
  **dismissal** [24] - 2:5,
8:6, 9:2, 10:22, 11:1,
11:4, 11:19, 12:24,
14:11, 16:8, 51:1, 58:12,
58:15, 60:3, 60:25,
61:25, 65:3, 65:20, 71:1,
73:25, 74:2, 74:19, 76:3,
76:15
  **dismissed** [4] - 8:12,
8:13, 14:7
  **dismissing** [2] - 13:11,
73:4
  **dispositive** [3] - 10:25,
15:2, 69:2
  **dispute** [4] - 58:17,
59:19, 68:20, 72:6
  **disputed** [3] - 11:22,
65:6, 71:4
  **disputes** [1] - 12:1
  **dissimilar** [1] - 35:7
  **distinguished** [1] - 65:4
  **district** [1] - 15:17
  **District** [2] - 21:5, 21:6
  **DISTRICT** [2] - 1:1, 1:2
  **DIVISION** [1] - 1:2
  **DOAR** [1] - 23:17
  **document** [2] - 24:11,
24:24, 26:19, 42:13,
56:13, 62:9
  **documentary** [1] - 60:6
  **documents** [8] - 23:1,
23:12, 23:18, 24:16,
24:19, 24:20, 24:25, 25:3
  **dollar** [1] - 49:15
  **done** [8] - 18:19, 23:8,
29:25, 35:9, 50:14,
53:15, 61:11, 63:10
  **doubt** [2] - 66:13, 72:3
  **doubts** [3] - 11:11,

70:3, 70:9
  **down** [20] - 2:12, 2:17,
2:18, 2:21, 2:23, 3:13,
3:25, 4:2, 5:6, 5:9, 17:6,
26:16, 43:23, 47:4, 55:9,
56:15, 56:18, 72:3, 73:4,
76:16
  **download** [8] - 37:6,
37:20, 47:13, 47:17,
67:2, 67:17, 67:18, 72:20
  **drafted** [1] - 73:12
  **drives** [4] - 17:25, 19:19
  **due** [1] - 71:3
  **duplicate** [4] - 57:18,
57:19, 57:23, 57:25
  **duplicates** [1] - 8:25
  **duplicative** [2] - 8:24,
64:18
  **during** [2] - 60:10,
60:17

## E

  **E-discovery** [1] - 20:17
  **early** [2] - 4:4, 26:23
  **easily** [2] - 13:6, 23:19
  **eastern** [1] - 21:5
  **easy** [1] - 59:24
  **educational** [1] - 20:1
  **effect** [1] - 8:16
  **effective** [1] - 8:9
  **egregious** [2] - 61:24,
73:8
  **eight** [1] - 5:18
  **eight-count** [1] - 5:18
  **either** [7] - 6:25, 15:1,
22:3, 27:18, 45:4, 46:19,
76:15
  **electronic** [11] - 20:16,
25:25, 28:22, 29:18,
30:15, 32:1, 32:5, 52:23,
53:9, 53:12, 60:18
  **ellipses** [3] - 28:2, 28:9,
28:16
  **ELMO** [1] - 23:17
  **email** [10] - 59:16,
59:20, 60:1, 68:5, 68:12,
68:14, 68:18, 68:21,
75:19, 75:23
  **embedded** [2] - 26:8,
41:24
  **employees** [1] - 20:22
  **employment** [5] - 5:20,
8:3
  **Employment** [4] - 6:1,
6:4, 6:7, 62:25
  **employment-related**
[1] - 5:20
  **encoding** [1] - 19:7

**end** [1] - 38:4
  **ending** [1] - 44:23
  **ends** [5] - 48:24, 68:6,
68:14, 68:19, 68:21
  **enforcement** [1] - 62:11
  **enter** [1] - 6:24
  **entered** [2] - 50:7,
50:10
  **entertain** [1] - 67:8
  **entire** [2] - 60:21, 61:1
  **entitled** [1] - 3:4
  **environment** [2] - 6:2,
29:4
  **Equal** [1] - 62:25
  **Equipment** [1] - 74:24
  **errors** [1] - 46:8
  **especially** [1] - 54:25
  **Esquire** [2] - 1:18, 1:19
  **essentially** [12] - 2:5,
6:13, 7:25, 11:23, 12:3,
12:13, 14:12, 15:19,
15:21, 22:13, 29:21,
30:11, 31:20, 34:1, 34:4,
34:12, 45:2, 45:9, 50:21,
50:25, 52:24, 53:1, 53:6,
54:24, 55:10, 56:6,
56:25, 57:2, 57:10,
57:13, 57:16, 57:25,
58:2, 58:4, 58:6, 59:1,
60:6, 60:23, 61:10,
61:23, 65:1, 65:5, 65:8,
66:15, 68:8, 68:17,
70:11, 71:1, 71:3, 71:9,
71:15, 72:6, 72:7, 77:2,
77:7, 77:16
  **evidentiary** [2] - 8:23,
60:22
  **exact** [11] - 27:25, 31:9,
39:7, 39:8, 39:25, 40:11,
40:14, 46:2, 54:3, 54:6
  **exactly** [8] - 26:2, 26:5,
28:2, 28:23, 29:20, 42:5,
46:6, 50:5
  **examination** [24] - 7:24,
7:25, 12:5, 18:24, 19:23,
20:25, 21:10, 21:11,
21:17, 22:8, 29:9, 29:15,
36:19, 38:12, 39:1,
47:22, 51:11, 55:22,
56:4, 70:12, 70:13, 77:7,

77:16
  **EXAMINATION** [8] -
17:11, 36:20, 48:3,
51:14, 78:7, 78:7, 78:8,
78:8
  **examine** [11] - 5:8,
9:12, 15:8, 17:24, 18:15,
37:9, 38:5, 38:18, 45:12,
46:1, 71:5
  **examined** [10] - 31:4,
31:7, 31:16, 32:14,
33:24, 34:2, 37:19,
45:13, 45:16, 53:6
  **examiner** [5] - 17:21,
17:23, 18:14, 20:19, 71:5
  **examiners** [2] - 19:12,
19:16
  **examining** [3] - 32:11,
41:8, 72:12
  **example** [6] - 18:6,
49:1, 55:25, 57:19, 61:3,
71:5
  **exception** [1] - 2:10
  **exclamation** [1] - 49:15
  **excluded** [1] - 61:14
  **excused** [1] - 77:10
  **exercise** [1] - 65:25
  **exercising** [1] - 74:16
  **exhibit** [10] - 31:3, 31:6,
39:14, 39:16, 42:22,
42:23, 43:1, 44:19, 47:5,
50:10
  **Exhibit** [44] - 22:20,
22:21, 22:22, 24:14,
24:15, 24:18, 24:23,
25:2, 26:18, 28:5, 28:10,
28:15, 30:18, 31:11,
31:25, 32:8, 33:2, 35:21,
40:7, 44:23, 48:11,
48:12, 48:15, 48:18,
50:2, 50:4, 50:12, 50:13,
50:18, 56:7, 56:9, 56:24,
57:3, 57:14, 57:19,
57:20, 58:19, 58:25,
66:22, 75:16
  **Exhibits** [6] - 33:2,
33:25, 34:3, 50:17, 76:22
  **exhibits** [10] - 8:22,
8:24, 8:25, 9:6, 9:18,
23:13, 36:6, 38:6, 50:8,
50:11, 50:12, 50:15,
55:13, 55:17, 55:21,
56:21
  **exist** [10] - 36:8, 36:9,
52:9, 59:20, 66:24,
68:13, 68:14, 68:22,
73:24, 75:18
  **existed** [10] - 22:3,
30:15, 31:13, 32:2,
32:17, 34:5, 34:10,

46:11, 49:4, 53:1
  **existence** [3] - 33:5, 33:8, 34:6
  **exists** [8] - 18:1, 31:10, 41:11, 43:19, 46:5, 52:24, 60:1, 66:25
  **experience** [1] - 22:8
  **expert** [31] - 4:24, 9:12, 10:20, 11:22, 15:7, 15:13, 20:25, 21:8, 21:10, 21:16, 21:18, 23:23, 45:3, 47:1, 48:12, 51:17, 55:22, 65:8, 66:8, 67:2, 67:3, 67:14, 67:17, 69:17, 71:18, 72:1, 72:9, 72:20, 75:15, 77:13
  **expert's** [2] - 69:5, 75:13
  **explain** [12] - 18:5, 19:4, 25:6, 31:19, 37:4, 38:25, 43:15, 46:16, 47:8, 48:25, 49:11, 51:20
  **explained** [3] - 7:14, 55:17, 71:23
  **explanation** [2] - 18:7, 52:6
  **export** [4] - 35:3, 35:6, 35:23, 35:24
  **exported** [1] - 36:10
  **exports** [1] - 48:16
  **extension** [4] - 5:15, 6:13, 6:17, 8:17
  **extent** [5] - 9:11, 16:11, 58:22, 65:25, 70:6
  **extract** [1] - 37:16
  **extracted** [5] - 23:10, 26:22, 26:24, 37:16, 49:4
  **extraction** [23] - 18:20, 23:6, 23:8, 25:10, 25:14, 25:19, 25:23, 26:1, 26:10, 29:17, 32:2, 37:14, 41:15, 41:16, 41:23, 45:13, 45:18, 45:19, 45:23, 45:24, 45:25, 46:7, 48:6
  **extractions** [6] - 25:7, 25:16, 27:18, 32:14, 32:15, 37:25
  **extremely** [1] - 64:18
  **eyes** [1] - 76:1

## F

  **F.3d** [2] - 74:24, 75:2
  **fabricate** [2] - 14:22, 61:10
  **fabricated** [14] - 11:18, 13:8, 13:9, 13:14, 14:2, 14:20, 15:6, 57:12,

61:14, 61:16, 61:23, 65:2, 65:14, 72:21
  **fabrication** [5] - 11:5, 14:12, 60:6, 65:10
  **face** [3] - 35:24, 40:25, 55:1
  **faced** [1] - 61:13
  **fact** [17] - 12:3, 32:16, 32:25, 33:1, 45:15, 58:21, 63:2, 66:11, 69:3, 69:24, 71:9, 72:11, 73:22, 74:15, 75:23, 76:2
  **factors** [4] - 74:22, 75:6, 75:7
  **factual** [8] - 12:22, 13:9, 13:21, 19:21, 45:5, 59:24, 75:18
  **failing** [1] - 11:6
  **failure** [1] - 71:3
  **Fair** [1] - 6:4
  **fair** [1] - 36:3
  **fairness** [1] - 58:1
  **false** [3] - 14:20, 60:19, 63:23
  **falsely** [1] - 60:7
  **falsity** [1] - 14:23
  **familiar** [7] - 37:2, 39:4, 42:24, 46:13, 46:14, 51:17, 71:20
  **far** [4] - 33:22, 40:12, 52:23, 71:15
  **fashion** [3] - 62:19, 75:20, 77:1
  **favor** [2] - 7:2, 76:5
  **FCRR** [1] - 1:23
  **February** [2] - 45:20, 46:5
  **federal** [5] - 4:6, 21:5, 40:10, 53:18, 74:25
  **fee** [1] - 36:11
  **felt** [1] - 11:17
  **few** [2] - 21:4, 23:13
  **field** [4] - 20:10, 20:17, 40:2, 49:14
  **fifth** [1] - 40:3
  **Fifth** [1] - 62:16
  **file** [8] - 7:6, 7:23, 15:1, 35:17, 46:10, 63:3, 64:6, 73:12
  **filed** [9] - 5:13, 5:16, 5:18, 8:15, 8:17, 10:10, 56:21, 59:13, 76:7
  **finally** [1] - 15:15
  **find-evidence** [1] - 22:13
  **finder** [1] - 76:2
  **findings** [6] - 26:13, 26:16, 28:21, 31:23, 44:22, 48:25
  **fine** [14] - 13:11, 27:14,

38:22, 39:6, 43:5, 47:21, 47:24, 50:23, 58:1, 64:3, 64:16, 68:9, 72:14
  **fingerprint** [1] - 25:25
  **fingerprints** [1] - 30:6
  **finish** [1] - 28:14
  **firm** [1] - 20:7
  **firms** [1] - 77:10
  **first** [12] - 5:12, 11:4, 17:1, 17:3, 18:16, 18:19, 41:25, 43:19, 48:14, 70:4, 70:16, 70:23
  **five** [1] - 47:18
  **fixed** [1] - 23:20
  **flip** [1] - 48:12
  **Floor** [1] - 1:23
  **FMLA** [2] - 30:23, 39:8
  **focus** [5] - 59:11, 66:17, 69:4, 69:12, 69:19
  **folks** [1] - 12:17
  **follows** [2] - 6:14, 54:14
  **fool** [1] - 52:1
  **Footnote** [1] - 55:2
  **footnote** [2] - 54:13, 54:14
  **FOR** [1] - 1:2
  **foregoing** [1] - 79:8
  **forensic** [36] - 7:24, 11:22, 11:24, 12:4, 17:19, 17:21, 17:23, 18:14, 18:20, 18:21, 18:25, 19:12, 19:16, 19:23, 20:19, 20:25, 21:10, 21:17, 21:25, 22:8, 25:7, 38:12, 45:13, 65:5, 65:8, 67:2, 69:4, 70:11, 70:13, 71:5, 71:10, 75:13, 75:15, 77:6, 77:16
  **forensics** [7] - 20:5, 20:8, 20:13, 20:14, 20:16, 51:21, 66:8
  **form** [1] - 10:25
  **format** [9] - 18:17, 19:7, 19:9, 28:23, 30:15, 35:4, 35:10, 36:8
  **formats** [1] - 19:8
  **former** [1] - 62:11
  **forth** [2] - 42:9, 60:24
  **forthwith** [2] - 5:17, 6:13
  **forward** [4] - 13:23, 16:19, 67:14, 77:9
  **four** [11] - 43:1, 43:6, 43:8, 52:8, 58:20, 67:23, 73:2, 73:4, 73:17, 73:23, 75:24
  **Fourth** [6] - 1:23, 16:14, 74:20, 74:24, 75:2, 76:17
  **fourth** [8] - 5:18, 5:19,

40:2, 59:5, 59:8, 68:3, 68:4, 75:9
  **frame** [3] - 23:9, 28:1, 31:14
  **frankly** [3] - 14:6, 74:3, 74:6
  **fraud** [1] - 60:20
  **fraudulent** [12] - 10:11, 12:21, 51:2, 58:23, 62:9, 66:24, 68:13, 68:22, 69:24, 73:24
  **free** [11] - 3:14, 7:6, 13:12, 13:13, 13:24, 13:25, 62:19, 69:6, 69:7, 76:20
  **frivolous** [1] - 9:17
  **front** [1] - 48:16
  **full** [4] - 11:15, 16:25, 24:24, 77:18
  **fully** [10] - 2:13, 2:15, 2:17, 3:7, 3:22, 4:13, 4:15, 5:3, 17:6, 63:11
  **fundamental** [1] - 63:17

## G

  **gain** [1] - 45:16
  **gallery** [1] - 4:22
  **gap** [2] - 41:11, 56:3
  **gather** [2] - 4:22, 57:9
  **General** [1] - 63:9
  **general** [1] - 41:25
  **generally** [2] - 10:20, 54:4
  **generated** [1] - 54:20
  **generates** [1] - 44:6
  **gentleman** [5] - 42:22, 55:7, 66:10, 66:11, 66:12
  **gentleman's** [1] - 51:17
  **genuine** [2] - 43:11, 69:2
  **given** [13] - 16:9, 30:13, 44:6, 61:5, 61:9, 62:8, 67:1, 67:3, 67:5, 67:17, 70:19, 74:11
  **glad** [9] - 17:9, 57:4, 58:2, 58:12, 60:2, 62:2, 62:20, 71:14, 71:16
  **government** [2] - 63:11, 63:14, 69:14
  **granted** [1] - 11:1
  **great** [3] - 24:3, 48:11, 77:4
  **greater** [1] - 65:19
  **green** [2] - 44:9, 49:9
  **Gregorian** [1] - 42:2
  **grounds** [1] - 11:4
  **guess** [2] - 52:20, 58:1
  **GUNTER** [77] - 1:5, 3:2,

3:8, 3:11, 7:9, 7:12, 7:14, 9:15, 12:14, 13:15, 16:3, 21:13, 29:6, 29:8, 29:13, 36:21, 38:15, 38:17, 38:20, 38:23, 39:3, 39:24, 41:5, 42:21, 44:19, 44:25, 45:11, 47:23, 51:9, 51:15, 55:4, 55:6, 55:12, 55:16, 56:7, 56:10, 56:15, 56:18, 57:5, 57:8, 57:18, 57:21, 57:23, 58:8, 62:3, 62:6, 62:12, 62:15, 62:21, 63:4, 63:7, 63:20, 64:1, 64:5, 64:10, 64:15, 64:17, 65:17, 66:2, 66:4, 66:10, 67:1, 67:16, 68:8, 69:21, 70:1, 70:14, 70:18, 70:22, 70:25, 71:11, 71:18, 72:16, 72:19, 73:20, 78:7, 78:8
  **Gunter** [92] - 1:17, 2:3, 2:25, 5:7, 5:13, 5:18, 7:8, 7:20, 7:21, 7:23, 8:22, 9:6, 9:14, 10:10, 10:21, 11:8, 11:18, 12:7, 13:18, 15:7, 16:1, 21:12, 21:16, 22:1, 23:4, 24:5, 24:10, 24:12, 24:13, 24:15, 24:19, 25:11, 25:15, 26:11, 26:18, 26:19, 27:4, 27:13, 27:14, 29:5, 30:19, 30:23, 30:25, 31:1, 32:8, 33:5, 35:7, 36:19, 38:8, 39:9, 39:20, 40:21, 41:21, 42:16, 42:20, 45:10, 49:20, 51:8, 52:15, 52:18, 52:24, 53:3, 53:7, 54:13, 55:8, 55:11, 56:10, 56:12, 56:14, 56:16, 56:20, 57:17, 58:13, 59:25, 60:4, 60:11, 62:1, 63:13, 64:4, 64:22, 67:6, 67:20, 70:3, 72:3, 72:15, 72:21, 73:19, 76:2, 76:25, 79:6
  **Gunter's** [29] - 6:11, 6:15, 6:19, 7:17, 8:2, 12:6, 13:24, 14:3, 15:4, 23:8, 23:9, 26:22, 27:20, 27:25, 28:17, 31:4, 32:12, 32:13, 32:14, 32:17, 32:18, 33:2, 33:8, 34:22, 42:15, 48:6, 52:9, 58:25, 76:21

## H

  **half** [1] - 58:19

**hallmarks** [1] - 30:11
**hand** [4] - 16:21, 24:13, 67:24, 70:21
**handle** [1] - 66:1
**handled** [1] - 6:13
**hands** [1] - 13:3
**hard** [2] - 17:25, 19:19
**hash** [6] - 25:19, 25:22, 25:23, 25:25, 26:4, 46:9
**hashed** [1] - 46:8
**hear** [24] - 10:19, 10:20, 13:21, 15:6, 15:13, 15:24, 16:2, 16:5, 17:9, 45:8, 47:21, 56:5, 57:4, 58:2, 58:5, 58:13, 60:2, 60:4, 62:2, 62:20, 65:8, 71:14, 71:16, 71:17
**heard** [3] - 61:5, 66:5, 72:9
**hearing** [15] - 2:4, 8:23, 9:4, 10:11, 13:7, 16:12, 45:4, 55:17, 57:17, 58:1, 60:22, 65:7, 65:12, 70:5, 77:19
**Hearing** [1] - 1:11
**help** [2] - 35:2, 38:8
**helpful** [3] - 23:14, 23:21, 69:19
**helps** [1] - 19:4
**hereby** [1] - 79:5
**hereunto** [1] - 79:11
**High** [1] - 20:21
**highlighted** [9] - 26:25, 27:2, 28:6, 30:21, 31:3, 31:12, 31:15, 53:17, 56:8
**highlighting** [1] - 40:21
**himself** [1] - 13:25
**hold** [3] - 56:11, 56:12, 56:17
**home** [1] - 46:20
**Homeland** [4] - 62:23, 63:9, 64:7, 64:11
**Honor** [57] - 3:2, 3:8, 3:19, 4:12, 5:1, 7:9, 7:14, 9:15, 10:13, 12:14, 13:15, 14:4, 14:17, 16:3, 16:18, 17:13, 21:9, 28:12, 36:17, 38:15, 38:23, 41:5, 44:14, 44:25, 47:23, 48:1, 50:7, 51:3, 53:15, 55:4, 55:12, 56:16, 57:6, 57:8, 57:21, 58:8, 60:5, 62:3, 62:7, 62:12, 62:21, 63:4, 63:21, 64:1, 64:5, 64:15, 65:17, 66:2, 67:1, 67:16, 69:21, 70:14, 71:11, 72:6, 73:18, 73:20, 76:10
**Honor's** [1] - 40:12
**Honorable** [1] - 1:13

**hood** [1] - 22:15
**hope** [1] - 24:1
**hostile** [1] - 6:2
**hour** [5] - 36:12, 36:13, 58:19, 65:12, 77:18
**human** [3] - 18:21, 19:9, 42:8

## I

**identically** [1] - 32:3
**identified** [2] - 30:23, 31:9
**identify** [3] - 3:17, 29:19, 32:15
**identifying** [1] - 19:21
**IG** [11] - 28:3, 58:21, 59:18, 60:1, 66:24, 68:6, 68:13, 68:15, 68:21, 75:8, 75:17
**ignored** [1] - 10:16
**ignores** [1] - 73:16
**ilk** [1] - 63:23
**image** [3] - 18:20, 23:10, 26:1
**images** [2] - 18:9, 21:25
**imbedded** [1] - 34:20, 35:17, 49:16, 49:17
**immediately** [2] - 20:6, 20:8
**import** [1] - 75:24
**important** [1] - 13:21
**importantly** [1] - 54:24
**imposed** [1] - 74:23
**impressive** [1] - 21:14
**IN** [1] - 1:1
**inappropriate** [1] - 6:22
**include** [4] - 9:16, 13:1, 36:15
**included** [1] - 24:14
**including** [4] - 35:4, 37:17, 51:23, 60:24
**inconsistencies** [1] - 76:24
**inconvenient** [1] - 24:1
**incorrect** [1] - 54:8
**incurred** [1] - 77:15
**indeed** [1] - 8:6
**INDEX** [1] - 78:1
**indicate** [1] - 6:16
**indicated** [3] - 11:9, 13:2, 13:4
**indicates** [1] - 35:19
**individual** [4] - 29:23, 33:19, 34:10, 34:18
**individuals** [1] - 54:21
**industry** [1] - 19:1
**inferred** [1] - 32:23
**information** [26] - 23:1,

23:11, 26:8, 26:11, 26:24, 32:3, 32:6, 32:7, 32:23, 33:22, 35:5, 35:8, 37:16, 38:3, 42:2, 42:14, 44:10, 46:10, 47:3, 47:7, 49:3, 49:14, 49:15, 52:2, 53:9, 53:13
**inherent** [4] - 10:4, 71:1, 74:16, 74:25
**initial** [1] - 63:3
**inquire** [2] - 2:18, 3:6
**inquiry** [1] - 38:7
**Inspector's** [1] - 63:9
**installed** [3] - 34:24, 34:25, 35:11
**instead** [1] - 60:21
**instructed** [1] - 44:15
**intend** [1] - 55:10
**intent** [1] - 34:16
**intentional** [3] - 60:6, 60:25, 61:5
**intentionally** [1] - 34:15
**interest** [1] - 8:9
**interesting** [1] - 53:23
**International** [1] - 21:6
**interpret** [1] - 71:8
**interpretation** [1] - 53:24
**interpreted** [1] - 54:2
**interpreting** [1] - 42:12
**interprets** [1] - 42:8
**introduce** [6] - 12:8, 12:13, 13:5, 13:13, 13:25, 14:19
**introduced** [5] - 13:2, 22:21, 50:11, 50:17, 56:25
**investigation** [15] - 20:7, 28:4, 36:12, 58:21, 59:18, 60:1, 63:10, 64:19, 66:24, 68:6, 68:13, 68:15, 68:21, 75:9, 75:17
**Investigation** [1] - 20:21
**investigations** [1] - 17:19
**involved** [3] - 23:23, 25:9, 36:25
**iPhone** [25] - 23:5, 23:6, 25:8, 26:9, 27:22, 28:4, 28:8, 28:19, 28:22, 28:24, 29:4, 29:9, 29:17, 31:7, 31:13, 31:16, 31:18, 31:20, 37:10, 38:18, 38:19, 42:18, 45:12, 46:19, 49:9
**issue** [10] - 11:11, 12:20, 21:19, 63:5, 68:23, 69:2, 74:3, 76:25,

77:1
**issued** [1] - 7:22
**issues** [1] - 19:21
**ITC** [2] - 20:20, 21:7
**item** [1] - 48:5
**items** [2] - 26:4, 48:17
**itself** [13] - 18:8, 26:9, 29:1, 29:20, 29:24, 30:4, 34:10, 34:20, 37:25, 42:7, 49:16, 52:1, 53:13

## J

**J-O-H-N** [1] - 17:3
**J.D** [1] - 20:3
**Jackson** [2] - 3:20, 4:11
**jailbreaking** [5] - 30:1, 30:5, 30:12, 30:14, 36:25
**jailbroken** [3] - 31:19, 37:6, 37:16
**January** [4] - 35:18, 36:1, 42:5, 67:9, 67:25
**Jemsek** [1] - 75:2
**JEMSEK** [1] - 75:2
**JOHN** [2] - 16:22, 78:6
**John** [2] - 17:2, 17:3
**judge** [7] - 2:12, 4:6, 15:17, 15:18, 53:18, 58:4, 71:25
**Judge** [29] - 1:13, 2:6, 9:21, 10:1, 10:23, 11:1, 11:9, 11:16, 12:10, 12:15, 13:22, 53:16, 53:21, 54:8, 54:15, 54:19, 54:23, 55:2, 64:24, 69:21, 70:4, 70:9, 70:15, 71:7, 73:11, 75:3, 75:14, 77:3
**judged** [1] - 68:10
**judgment** [15] - 5:14, 5:16, 6:12, 6:15, 6:19, 6:22, 6:24, 7:3, 7:7, 8:7, 8:11, 9:1, 15:2, 55:19, 76:7
**July** [5] - 12:12, 27:4, 49:25, 58:20, 61:16
**juror** [1] - 61:8
**jury** [6] - 14:23, 61:6, 65:13, 68:25, 69:3, 76:5
**justify** [4] - 11:19, 40:14, 65:3, 71:1

## K

**Kathleen** [1] - 1:18
**Kathy** [1] - 3:20
**KDL** [2] - 37:20, 38:1
**keep** [4] - 4:5, 17:6, 42:1, 42:2

**kept** [1] - 19:6
**key** [2] - 60:6, 74:20
**KL** [9] - 23:6, 25:8, 26:4, 26:10, 27:16, 37:15, 45:18, 45:24, 46:6
**knowledge** [1] - 22:8
**known** [1] - 74:22
**knows** [1] - 54:21
**Kroll** [1] - 20:6

## L

**Labor** [1] - 21:7
**lacks** [2] - 70:25, 71:8
**large** [1] - 25:21
**larger** [2] - 33:18, 44:9
**largest** [1] - 20:7
**Larry** [2] - 1:19, 4:11
**last** [13] - 7:18, 12:1, 17:1, 17:3, 23:7, 28:16, 35:16, 35:18, 35:19, 35:20, 53:14, 54:21, 58:20
**last-run** [1] - 35:20
**latest** [1] - 61:20
**Law** [2] - 20:4, 20:15
**law** [7] - 20:6, 20:9, 20:15, 62:11, 63:13, 63:17, 77:10
**lawsuit** [4] - 61:23, 63:3, 63:11, 63:16, 63:19, 64:18
**lawsuits** [1] - 63:14
**lawyers** [6] - 3:5, 40:24, 40:25, 67:11, 67:22, 77:11
**lay** [1] - 39:6
**layman** [1] - 47:10
**lays** [1] - 52:2
**least** [2] - 59:6, 61:7
**leave** [1] - 30:5
**leaves** [1] - 30:4
**left** [1] - 40:3
**legitimate** [1] - 72:7
**Lescht** [1] - 59:15
**letter** [4] - 7:22, 64:7, 64:17, 64:19
**letters** [3] - 62:22, 63:1, 64:10
**level** [1] - 43:12
**Lewis** [2] - 3:20, 4:11
**libbing** [1] - 64:20
**library** [1] - 37:5
**lie** [1] - 14:22
**Lieutenant** [1] - 27:11
**life** [1] - 4:4
**light** [5] - 8:13, 14:11, 15:3, 16:7, 55:22
**likely** [1] - 36:7

**limit** [1] - 72:16
**limitations** [1] - 30:13
**limited** [1] - 51:12
**line** [4] - 28:16, 38:7, 70:19, 70:20
**list** [2] - 21:4, 50:10
**listed** [4] - 43:12, 43:15, 50:11, 50:15
**listen** [1] - 77:7
**lists** [2] - 43:18, 43:19
**literally** [5] - 30:3, 52:18, 53:7, 66:14, 67:23
**litigant** [1] - 74:11
**litigants** [2] - 41:7
**litigation** [2] - 17:20, 19:16
**LLC** [5] - 1:20, 2:3, 4:24, 15:25, 17:14
**local** [1] - 67:12
**Local** [5] - 3:4, 15:16, 50:14, 70:5, 77:2
**locate** [1] - 39:20
**located** [4] - 18:11, 31:3, 31:6, 31:15
**location** [2] - 19:10, 54:3
**log** [1] - 35:17
**Lombard** [1] - 1:24
**look** [15] - 18:13, 21:24, 23:18, 23:20, 24:5, 24:6, 25:22, 25:24, 35:6, 35:12, 37:20, 43:1, 50:3, 53:23, 75:6
**looked** [6] - 10:16, 26:1, 30:7, 46:9, 55:21
**looking** [10] - 10:3, 26:20, 29:20, 39:19, 44:12, 50:10, 53:24, 56:21, 56:24, 75:6

**M**

**Mac** [1] - 46:23
**Magistrate** [2] - 2:6, 54:22
**magistrate** [1] - 15:18
**main** [2] - 33:21, 58:1
**majority** [2] - 28:1, 55:18
**Maldeis** [1] - 23:23
**malfeasance** [2] - 11:19, 65:3
**management** [1] - 8:10
**manipulate** [1] - 71:19
**manipulated** [2] - 71:23, 72:4
**manner** [3] - 33:10, 51:25, 79:10
**marked** [1] - 18:12

**Mary** [3] - 1:23, 79:5, 79:16
**MARYLAND** [1] - 1:2
**Maryland** [3] - 1:12, 1:24, 6:4
**mask** [10] - 2:17, 2:21, 2:22, 2:23, 3:13, 3:25, 4:2, 5:6, 5:9, 17:6
**masked** [1] - 4:22
**masks** [3] - 2:9, 2:12, 4:6
**match** [2] - 22:3, 36:6
**matched** [4] - 22:2, 25:25, 26:5, 32:3
**material** [3] - 12:3, 39:21, 69:3
**materials** [2] - 10:24, 23:21
**matter** [42] - 2:2, 2:10, 3:3, 5:12, 6:25, 8:19, 8:23, 9:5, 11:7, 11:13, 12:3, 13:6, 14:2, 14:16, 15:4, 15:14, 16:8, 21:19, 36:11, 50:25, 54:12, 55:24, 56:22, 60:3, 62:8, 63:17, 63:19, 65:21, 67:9, 67:25, 69:13, 73:22, 74:15, 75:18, 76:7, 76:12, 77:17, 77:19, 79:6, 79:10
**matters** [3] - 6:11, 14:14, 21:19
**McGinley** [22] - 1:18, 3:20, 3:21, 4:8, 10:8, 13:17, 16:16, 17:9, 19:14, 23:14, 24:2, 36:18, 39:18, 42:24, 47:25, 58:13, 60:3, 62:1, 66:4, 67:18, 76:9, 76:23
**MCGINLEY** [29] - 3:19, 3:23, 5:1, 5:23, 10:13, 14:4, 14:17, 15:11, 16:18, 17:12, 21:21, 24:3, 24:7, 27:13, 27:19, 30:17, 48:1, 48:4, 50:13, 50:19, 50:22, 51:3, 51:6, 60:5, 60:10, 60:13, 76:10, 78:7, 78:8
**MD5** [4] - 25:19, 25:22, 25:23, 25:24
**mean** [6] - 49:6, 58:23, 60:9, 71:8, 71:16, 73:1
**means** [6] - 32:9, 33:9, 47:16, 51:20, 52:4, 52:13
**media** [5] - 17:24, 18:9, 18:16, 19:18, 19:22
**megadata** [1] - 52:13
**merits** [9] - 6:24, 7:4, 8:13, 9:8, 10:11, 55:20, 64:22, 65:21, 67:6

**Message** [1] - 27:4
**message** [76] - 11:4, 18:9, 26:25, 27:2, 27:3, 27:5, 27:7, 27:17, 27:22, 27:24, 28:2, 28:6, 28:7, 28:15, 28:17, 28:19, 28:22, 28:23, 29:4, 29:18, 29:20, 29:22, 30:4, 30:20, 30:22, 30:23, 30:24, 30:25, 31:3, 31:6, 31:8, 31:12, 31:13, 31:15, 31:24, 32:7, 32:9, 39:8, 42:16, 43:10, 43:11, 43:19, 43:20, 44:5, 44:8, 44:9, 44:10, 48:22, 49:1, 49:6, 49:21, 50:3, 52:7, 52:15, 52:18, 53:7, 58:20, 59:1, 59:3, 59:6, 60:8, 61:16, 65:14, 65:15, 66:14, 66:23, 68:12, 69:22, 69:24, 71:22, 72:22, 72:24, 73:3, 73:5, 73:17
**messages** [90] - 7:22, 8:1, 9:6, 11:5, 11:6, 11:11, 11:19, 11:22, 12:5, 12:8, 12:11, 12:12, 13:13, 13:14, 14:1, 14:2, 14:18, 14:19, 15:5, 18:8, 21:19, 21:25, 22:2, 22:3, 23:4, 25:10, 25:12, 26:17, 26:22, 29:24, 32:11, 32:12, 32:16, 32:20, 32:25, 33:1, 33:3, 33:6, 33:7, 33:9, 33:11, 33:14, 33:16, 33:19, 33:25, 34:3, 34:5, 34:7, 34:9, 34:11, 34:13, 34:18, 35:3, 35:8, 35:20, 35:24, 36:3, 36:6, 36:7, 36:8, 40:16, 43:2, 43:6, 43:14, 45:21, 45:23, 48:20, 50:6, 51:2, 52:21, 53:4, 53:19, 54:2, 54:5, 54:15, 54:24, 55:1, 60:18, 61:14, 61:19, 65:2, 65:6, 70:10, 71:4, 71:20
**messaging** [13] - 29:24, 31:22, 32:17, 33:14, 33:17, 33:22, 35:3, 43:18, 45:21, 49:8
**metadata** [12] - 18:1, 18:5, 18:10, 18:15, 19:5, 21:17, 22:12, 26:3, 52:14, 66:12, 66:13, 71:5
**methodology** [1] - 33:21
**methods** [1] - 29:25
**microphone** [4] - 16:25,

19:13, 44:21, 55:14
**mid** [1] - 67:10
**middle** [2] - 7:17, 38:8
**might** [1] - 23:14
**milliseconds** [5] - 42:3, 42:5, 42:8, 53:25, 54:1
**minute** [5] - 4:21, 40:21, 41:11, 54:5, 56:5
**minutes** [2] - 41:20, 65:12
**misconduct** [2] - 9:23, 10:3
**misrepresentation** [2] - 75:19, 75:20
**missing** [1] - 33:7
**misspoke** [1] - 37:24
**Moderna** [1] - 3:9
**modified** [1] - 35:18
**modify** [1] - 15:18
**modifying** [1] - 77:3
**moment** [2] - 6:17, 25:22, 25:24, 26:2, 27:25, 28:7, 29:19, 31:9, 31:14, 32:24, 36:8, 36:9, 36:10, 39:7, 39:12, 39:20, 40:11, 40:14, 40:23, 46:8, 46:11, 49:21, 49:23, 52:24, 53:1
**monitor** [2] - 23:19, 24:5
**months** [2] - 47:16, 47:18
**moot** [4] - 6:18, 8:8, 8:18, 13:5
**morning** [5] - 2:25, 3:2, 3:19, 3:21, 5:2
**most** [3] - 18:25, 35:7, 56:22
**motion** [27] - 5:13, 5:15, 5:16, 6:12, 6:15, 6:17, 6:19, 8:7, 8:10, 8:16, 8:25, 9:2, 9:16, 10:22, 10:24, 11:2, 14:8, 15:2, 51:1, 55:19, 58:11, 58:14, 60:15, 61:11, 61:15, 76:9
**motions** [7] - 2:4, 7:6, 8:6, 8:7, 8:20, 69:2, 76:7
**Motions** [1] - 1:11
**move** [4] - 16:15, 16:17, 45:10, 56:18
**MR** [80] - 3:2, 3:8, 3:11, 4:11, 4:15, 4:19, 5:4, 7:9, 7:12, 7:14, 9:15, 12:14, 13:15, 16:3, 21:13, 29:6, 29:8, 29:13, 36:21, 38:15, 38:17, 38:20, 38:23, 39:3, 39:24, 41:5, 42:21, 44:19, 44:25, 45:11,

47:23, 51:9, 51:15, 55:4, 55:6, 55:12, 55:16, 56:7, 56:10, 56:15, 56:18, 57:5, 57:8, 57:18, 57:21, 57:23, 58:8, 62:3, 62:6, 62:12, 62:15, 62:21, 63:4, 63:7, 63:20, 64:1, 64:5, 64:10, 64:15, 64:17, 65:17, 66:2, 66:4, 66:10, 67:1, 67:16, 68:8, 69:21, 70:1, 70:14, 70:18, 70:22, 70:25, 71:11, 71:18, 72:16, 72:19, 73:20, 78:7, 78:8
**MS** [29] - 3:19, 3:23, 5:1, 5:23, 10:13, 14:4, 14:17, 15:11, 16:18, 17:12, 21:21, 24:3, 24:7, 27:13, 27:19, 30:17, 48:1, 48:4, 50:13, 50:19, 50:22, 51:3, 51:6, 60:5, 60:10, 60:13, 76:10, 78:7, 78:8
**multiple** [2] - 53:19, 54:15
**must** [1] - 64:6

**N**

**name** [9] - 3:19, 5:22, 16:25, 17:1, 17:3, 27:3, 49:20, 54:21
**named** [1] - 54:21
**National** [1] - 21:7
**native** [3] - 49:5, 49:8, 49:9
**navigate** [1] - 42:16
**necessarily** [2] - 23:16, 54:7
**necessary** [2] - 71:1, 76:3
**need** [16] - 3:6, 9:7, 13:7, 14:15, 16:3, 18:24, 23:16, 38:25, 40:18, 57:23, 57:25, 58:3, 69:12, 73:14, 76:5, 76:6
**negligent** [1] - 75:11
**never** [2] - 66:16, 72:13
**new** [1] - 52:4
**New** [1] - 21:5
**next** [3] - 42:20, 45:10, 70:12
**nice** [6] - 3:24, 4:8, 4:17, 4:19, 4:20
**NO** [1] - 1:6
**normal** [1] - 30:13
**NORTHERN** [1] - 1:2
**note** [4] - 8:21, 11:20, 12:9, 59:4

**noted** [11] - 10:1, 11:3, 11:16, 11:21, 11:25, 64:25, 65:1, 65:4, 75:16, 75:24
**notes** [2] - 50:9, 50:16
**nothing** [5] - 7:3, 64:20, 66:16, 72:22, 77:18
**notice** [1] - 45:4
**notifying** [1] - 73:14
**noting** [1] - 8:16
**November** [1] - 8:5
**number** [19] - 17:20, 24:12, 25:21, 27:5, 27:25, 32:13, 32:15, 32:17, 33:13, 42:3, 42:4, 42:8, 49:12, 49:13, 49:16, 49:18, 49:19, 53:25
**Number** [3] - 2:4, 5:14, 5:16, 7:23, 8:11, 8:17, 10:2, 11:10, 50:21, 56:24, 59:13, 59:15, 66:22
**Number(s** [1] - 79:7
**numbers** [2] - 33:6, 49:11
**numerous** [1] - 33:5

**O**

**oath** [13] - 52:17, 60:8, 60:11, 60:15, 62:5, 62:10, 62:18, 66:10, 67:21, 74:5, 74:6, 74:7, 74:10
**object** [1] - 29:6
**objection** [8] - 2:5, 12:10, 29:7, 29:12, 29:14, 29:16, 50:16, 65:15
**objections** [1] - 12:7
**objects** [1] - 29:23
**obviously** [4] - 16:11, 16:14, 57:11, 60:20
**occupation** [2] - 17:15, 17:18
**occur** [1] - 33:13
**occurred** [3] - 29:19, 30:12, 35:25
**occurring** [1] - 34:12
**odd** [1] - 55:12
**OF** [1] - 1:2
**off-the-record** [1] - 7:19
**offer** [1] - 21:9
**offering** [1] - 26:13
**Office** [1] - 63:9
**officer** [1] - 62:11
**official** [1] - 79:9
**Official** [1] - 79:17

**old** [1] - 20:14
**Olympics** [1] - 40:12
**once** [3] - 7:7, 34:20, 69:1
**one** [43] - 2:16, 4:16, 12:20, 15:14, 20:22, 21:25, 24:15, 24:19, 24:20, 24:24, 25:2, 25:8, 25:9, 26:9, 27:16, 27:17, 28:9, 30:7, 39:17, 40:15, 41:24, 42:10, 43:8, 43:15, 44:4, 44:5, 44:9, 44:13, 46:6, 46:17, 47:9, 48:5, 48:16, 52:8, 53:14, 54:21, 56:11, 56:12, 59:8, 67:22, 74:20
**One** [3] - 22:20, 22:21, 22:22
**open** [1] - 46:23
**operating** [1] - 32:20
**operative** [1] - 54:12
**opinion** [12] - 21:18, 22:17, 42:15, 44:16, 45:3, 53:22, 55:3, 68:11, 70:2, 74:25, 75:3, 75:4
**opinions** [1] - 26:13
**Opportunity** [1] - 62:25
**opportunity** [12] - 6:22, 15:8, 16:4, 16:10, 58:14, 61:9, 67:2, 67:3, 67:5, 67:13, 67:17, 68:2
**opposed** [1] - 35:10
**opposition** [6] - 9:1, 12:6, 58:14, 61:11, 61:13, 61:17
**oral** [3] - 16:4, 16:7, 61:15
**order** [13] - 7:22, 8:15, 22:15, 30:7, 38:3, 38:13, 63:7, 64:6, 64:7, 73:10, 73:11, 73:14, 73:17
**ordered** [2] - 7:23, 38:11
**ordering** [2] - 67:23, 67:24
**orders** [3] - 2:9, 12:2, 73:9
**ordinarily** [1] - 6:21
**origin** [1] - 60:8
**originally** [1] - 59:3
**outside** [1] - 34:21
**overruled** [2] - 29:14, 74:16, 74:23
**overwriting** [6] - 56:5, 57:11, 58:6, 69:7, 71:12, 71:23
**overwritten** [6] - 51:18, 51:22, 52:4, 52:11, 52:13, 66:12
**own** [5] - 5:7, 49:17,

61:1, 73:13, 77:13
**owner** [2] - 49:13, 49:18

**P**

**p.m** [6] - 27:6, 30:23, 31:12, 31:14, 31:24, 77:22
**PA** [1] - 75:2
**page** [4] - 24:13, 43:23, 48:14, 48:16
**Page** [4] - 48:18, 70:15, 70:22
**PAGE** [1] - 78:4
**pages** [2] - 8:22, 79:8
**paging** [1] - 23:20
**Paper** [10] - 5:14, 5:16, 7:23, 8:11, 8:17, 10:1, 11:10, 27:4, 30:23, 59:13
**paper** [1] - 21:24, 23:3, 26:17, 26:21, 28:25, 30:22, 32:3, 32:10, 33:1, 35:10, 43:13, 54:11, 54:20
**paragraph** [1] - 70:23
**Paragraph** [4] - 59:12, 59:15, 68:5, 75:9
**parameters** [1] - 12:25
**parroted** [1] - 61:16
**parse** [1] - 49:7
**part** [9] - 9:15, 11:2, 12:8, 18:25, 27:24, 28:3, 35:7, 54:14
**partially** [1] - 54:19
**particular** [13] - 19:21, 22:2, 25:9, 33:7, 33:9, 34:4, 34:13, 42:1, 45:21, 52:15, 52:21, 52:23, 71:22
**particularly** [2] - 16:7, 58:4
**parties** [4] - 2:13, 2:19, 7:19, 25:9
**party** [4] - 25:11, 63:15, 67:19, 74:17
**pass** [1] - 23:13
**past** [3] - 42:3, 42:5, 53:25
**pattern** [1] - 73:8
**PDF** [1] - 35:10
**penalties** [3] - 62:13, 74:10, 74:23
**pending** [6] - 6:10, 7:1, 8:5, 8:10, 8:19, 10:21
**people** [3] - 4:6, 18:22, 62:24
**per** [5] - 43:17, 47:9, 52:22, 61:3, 61:14
**perfectly** [1] - 7:15

**perform** [1] - 46:17
**performed** [2] - 23:6, 47:17
**perjury** [2] - 62:14, 74:10
**permission** [1] - 63:10
**permit** [2] - 63:23, 70:7
**permitted** [4] - 2:22, 5:8, 11:24, 70:16
**person** [2] - 17:23, 49:17
**persons** [1] - 2:12
**Pfizer** [1] - 3:9
**phone** [110] - 7:24, 18:6, 22:1, 23:8, 23:9, 25:11, 25:14, 25:17, 26:7, 26:9, 26:11, 26:22, 27:5, 27:7, 27:10, 27:11, 27:13, 27:16, 27:20, 27:25, 28:17, 29:1, 29:2, 29:8, 29:10, 29:18, 30:1, 30:5, 30:10, 30:13, 31:4, 31:10, 32:2, 32:4, 32:6, 32:12, 32:13, 32:14, 32:17, 32:18, 33:2, 33:6, 33:8, 33:11, 33:12, 33:22, 33:24, 34:2, 34:6, 34:18, 34:19, 34:21, 34:22, 35:11, 35:16, 35:22, 36:4, 36:7, 37:6, 37:19, 37:22, 37:25, 38:1, 38:11, 38:12, 38:13, 39:2, 41:24, 42:4, 42:16, 42:17, 42:18, 42:19, 45:14, 45:16, 45:20, 46:2, 46:4, 46:21, 47:13, 49:4, 49:12, 49:16, 49:18, 52:9, 52:15, 52:19, 52:22, 52:24, 53:6, 53:9, 53:13, 56:3, 60:20, 67:2, 67:18, 67:24, 69:23, 72:4, 72:5, 72:12, 72:20, 72:24
**phones** [8] - 17:25, 19:1, 19:19, 25:5, 38:5, 42:1, 51:23
**photoshopped** [3] - 44:17, 44:19, 44:24
**photoshopping** [2] - 58:5, 69:8
**physical** [3] - 19:10, 29:9, 34:17
**physically** [10] - 37:9, 37:18, 37:21, 37:22, 38:5, 38:17, 45:12, 45:16, 46:1, 53:6
**piece** [2] - 19:22, 43:12
**place** [4] - 47:14, 52:2, 65:16, 71:6
**placed** [5] - 60:11,

60:23, 74:5, 74:6, 74:7
**places** [1] - 76:25
**Plaintiff** [1] - 1:16
**plaintiff** [7] - 2:24, 5:18, 11:12, 15:23, 52:21, 53:19, 54:15, 54:23, 59:4, 61:15, 61:20, 61:24, 76:21, 77:9, 77:12, 77:15
**plaintiff's** [6] - 14:21, 35:11, 35:21, 60:5, 71:3, 77:12
**Plaintiff's** [3] - 56:24, 57:3, 57:14
**plaintiffs** [1] - 19:24
**plenty** [2] - 77:9, 77:13
**plexiglass** [1] - 2:15
**pockets** [1] - 13:3
**podium** [2] - 23:24, 39:4
**point** [23] - 7:6, 9:20, 10:12, 12:20, 13:17, 14:15, 15:23, 15:24, 16:1, 16:16, 20:8, 21:3, 40:18, 49:15, 51:2, 52:3, 52:5, 53:24, 58:1, 59:21, 60:4, 65:18, 76:8
**pointing** [1] - 44:15
**portions** [1] - 70:6
**position** [6] - 9:24, 14:18, 48:23, 68:16, 69:17, 74:13
**possibility** [2] - 30:9, 61:13
**possible** [4] - 13:10, 29:3, 51:10
**possibly** [1] - 61:8
**posture** [1] - 8:14
**postured** [1] - 9:12
**potentially** [1] - 52:3
**power** [5] - 10:4, 46:20, 65:25, 74:16, 74:25
**practical** [1] - 20:16
**practice** [1] - 18:14
**Practices** [1] - 6:5
**precluded** [2] - 12:11, 12:17
**prejudging** [1] - 14:8
**prejudice** [10] - 6:16, 6:20, 6:21, 8:12, 16:8, 16:12, 61:22, 61:25, 75:1, 76:15
**prejudiced** [1] - 73:8
**prejudicial** [1] - 6:20
**preliminarily** [1] - 15:14
**preliminary** [1] - 5:12
**premature** [2] - 6:21, 8:11
**premised** [1] - 61:23
**prepare** [5] - 22:18,

24:16, 24:21, 24:25, 25:3
**prepared** [4] - 2:6, 8:15, 22:24, 24:20
**presence** [1] - 71:19
**Present** [1] - 1:20
**present** [11] - 16:7, 28:17, 28:19, 32:12, 36:15, 50:25, 57:3, 57:5, 57:10, 68:16, 77:13
**presented** [6] - 18:22, 23:19, 59:1, 59:10, 68:25, 76:23
**presenting** [2] - 5:6, 77:16
**presently** [1] - 6:10
**preserve** [1] - 71:4
**preserved** [1] - 54:20
**President** [3] - 1:20, 4:23, 15:25
**President/CEO** [1] - 17:17
**presiding** [1] - 2:11
**press** [2] - 46:19
**pretty** [9] - 44:23, 48:24, 59:2, 59:22, 59:24, 68:11, 68:15, 68:19, 75:23
**previous** [1] - 9:21
**previously** [2] - 7:25, 54:22
**primarily** [2] - 61:1, 61:23
**principal** [1] - 40:15
**printout** [1] - 54:20
**prints** [1] - 42:9
**privileges** [1] - 62:17
**pro** [7] - 2:24, 3:3, 5:7, 41:7, 74:11, 77:12
**Pro** [1] - 1:17
**procedurally** [1] - 8:13
**procedures** [1] - 36:25
**proceed** [3] - 2:20, 36:19, 61:2
**proceeded** [1] - 13:23
**proceeding** [5] - 3:3, 16:9, 56:25, 59:4, 77:12
**Proceedings** [2] - 2:1, 77:22
**proceedings** [4] - 2:18, 15:15, 79:6, 79:9
**proceeds** [2] - 7:5, 15:1
**process** [2] - 18:20, 33:10
**produce** [6] - 7:24, 11:6, 38:11, 46:17, 58:7, 67:3
**produced** [9] - 7:21, 21:24, 23:3, 26:24, 28:9, 30:25, 32:5, 55:1, 55:22
**production** [8] - 11:15,

12:2, 28:25, 35:7, 52:20, 52:22, 53:3
**professor** [1] - 20:15
**proffer** [2] - 55:11, 55:24
**proffering** [1] - 44:22, 54:9
**program** [2] - 37:2, 72:13
**Promotional** [1] - 27:4
**pronouncing** [1] - 5:22
**proper** [1] - 47:20
**Protection** [1] - 6:8
**prove** [6] - 66:13, 69:23, 72:2, 72:5, 72:11, 72:13
**proven** [1] - 73:3
**provide** [3] - 4:24, 19:18, 19:23
**provided** [5] - 23:5, 25:13, 37:14, 38:1, 50:15
**provides** [2] - 9:25, 53:10
**public** [1] - 2:9
**pull** [10] - 2:21, 2:22, 3:13, 3:24, 4:2, 5:6, 5:9, 19:9, 19:13, 55:14
**pulled** [3] - 2:12, 2:17, 2:18
**punish** [1] - 61:24
**pure** [1] - 35:10
**purpose** [2] - 45:17, 65:7
**purposes** [3] - 9:4, 19:14, 45:20
**pursuant** [1] - 2:8
**pursue** [5] - 29:15, 63:7, 64:11, 64:12, 64:14
**pushes** [1] - 25:20
**put** [12] - 12:14, 23:17, 26:17, 47:4, 52:4, 55:18, 56:12, 62:10, 63:23, 67:21, 70:7, 74:12
**puts** [1] - 42:9

## Q

**qualifications** [2] - 21:12, 21:13
**qualified** [2] - 20:24, 21:8
**questions** [8] - 36:17, 50:16, 50:20, 51:7, 51:9, 55:6, 56:2, 58:18
**qui** [1] - 63:14
**quick** [3] - 4:5, 53:19, 54:16
**quite** [4] - 14:6, 45:7, 74:3, 74:6
**quote** [2] - 11:10, 53:18

**quoted** [1] - 77:5
**quoting** [1] - 70:20

## R

**R-A-C-I-C-H** [2] - 17:3, 17:4
**Racich** [19] - 1:20, 4:23, 5:3, 5:8, 9:13, 13:21, 15:25, 17:2, 17:3, 17:5, 17:13, 21:9, 21:16, 21:22, 22:22, 24:8, 28:14, 48:5, 55:9
**RACICH** [2] - 16:22, 78:6
**rACICH** [1] - 5:4
**raise** [1] - 16:21
**raised** [1] - 65:22
**raising** [1] - 5:20
**ramifications** [1] - 12:23, 74:13, 74:14
**rather** [1] - 76:21
**ratified** [1] - 69:14
**ratify** [1] - 64:13
**RDB-20-03410** [2] - 2:4, 79:7
**RDB-20-3410** [1] - 1:6
**Re** [1] - 75:1
**reached** [1] - 12:25
**read** [8] - 39:25, 40:7, 54:14, 54:18, 58:12, 70:16, 70:21, 70:22
**readable** [2] - 18:22, 19:9
**reading** [1] - 54:11
**reads** [4] - 54:13, 54:14, 59:21, 75:23
**ready** [5] - 2:16, 15:13, 15:24, 16:15, 16:16
**real** [1] - 22:13
**reality** [4] - 9:21, 12:17, 13:19, 45:18
**really** [11] - 3:14, 9:3, 9:7, 9:9, 9:24, 10:3, 10:17, 11:14, 12:9, 14:15, 50:12
**reason** [5] - 13:7, 38:23, 57:5, 66:6, 71:2
**reasonable** [7] - 6:23, 14:23, 26:14, 61:8, 66:13, 71:4, 76:4
**reasons** [1] - 6:16
**rebuttal** [1] - 76:8
**receipt** [1] - 15:20
**receive** [2] - 15:19, 68:18
**received** [19] - 9:6, 10:16, 18:9, 20:3, 20:10, 20:18, 20:22, 25:7, 27:5,

52:18, 53:7, 54:25, 66:14, 66:16, 68:17, 69:23, 72:12, 77:2
**recipient** [1] - 42:19
**recognize** [2] - 22:22, 77:10
**recognized** [1] - 20:18
**recognizes** [2] - 21:16, 71:2
**recollection** [1] - 39:14
**recommend** [1] - 59:17
**recommendation** [15] - 2:6, 10:1, 10:23, 11:1, 11:10, 11:17, 12:10, 15:19, 53:17, 64:25, 69:22, 70:5, 70:16, 77:4, 77:6
**recommendations** [1] - 12:15
**recommended** [2] - 12:16, 15:18
**record** [31] - 2:8, 2:14, 3:18, 7:19, 8:4, 11:23, 13:3, 13:18, 15:16, 17:1, 27:10, 44:21, 54:12, 54:13, 54:18, 55:18, 58:17, 59:4, 62:4, 62:17, 63:8, 63:24, 66:20, 66:21, 67:21, 68:1, 68:20, 70:7, 74:9, 76:19, 77:14
**recorded** [1] - 79:5
**recoverable** [1] - 52:3
**recovered** [1] - 52:14
**recross** [1] - 51:11
**RECROSS** [2] - 51:14, 78:8
**recuse** [1] - 67:11
**recused** [1] - 67:23
**redirect** [1] - 47:24, 51:12
**REDIRECT** [2] - 48:3, 78:8
**redirected** [1] - 66:7
**refer** [1] - 9:13
**reference** [9] - 10:10, 23:18, 44:4, 59:16, 66:4, 66:6, 68:3, 75:3, 75:8
**referenced** [1] - 58:25
**references** [3] - 59:5, 59:7, 66:23
**referred** [4] - 39:8, 57:3, 57:13, 59:23
**referring** [2] - 56:14, 57:20
**reflect** [13] - 2:8, 2:14, 11:23, 13:18, 33:24, 34:2, 62:18, 67:7, 67:21, 68:1, 74:9, 76:19, 77:14
**reflected** [1] - 33:1

**reflection** [1] - 16:13
**reflects** [2] - 8:4, 66:20
**refresh** [1] - 39:14
**regard** [8] - 9:23, 15:21, 16:14, 33:14, 45:3, 45:9, 57:13, 58:7
**regarding** [1] - 11:22, 65:6
**regards** [1] - 45:23
**reject** [1] - 15:18
**rejecting** [1] - 77:3
**related** [1] - 5:20
**Relations** [1] - 21:7
**relevant** [2] - 7:22, 9:3
**relief** [2] - 10:25, 14:6
**relying** [1] - 4:22
**remain** [3] - 2:18, 4:22, 76:12
**remedy** [1] - 14:21
**remember** [2] - 3:9, 5:24
**remotely** [1] - 34:19
**removed** [4] - 34:11, 34:12, 34:13, 59:14
**render** [1] - 8:7
**rendered** [3] - 6:18, 8:18, 12:2
**reply** [1] - 61:12
**report** [24] - 2:6, 10:1, 10:23, 11:1, 11:9, 11:16, 15:19, 22:18, 22:24, 24:16, 24:21, 24:25, 25:3, 27:4, 35:12, 39:16, 48:12, 48:16, 48:19, 53:16, 64:24, 70:4, 77:4, 77:6
**Reported** [1] - 1:22
**Reporter** [1] - 79:17
**reporter** [1] - 4:3
**REPORTER'S** [1] - 79:3
**reports** [2] - 48:8, 48:9
**repository** [1] - 37:5
**represent** [4] - 40:24, 67:10, 67:13, 68:20
**representation** [4] - 49:2, 49:3, 66:23, 75:10
**represented** [3] - 5:14, 7:20, 13:24, 38:13, 54:22, 58:23, 67:11, 73:24
**representing** [3] - 3:6, 41:1, 41:6
**requested** [1] - 10:25
**required** [1] - 11:15
**researched** [1] - 73:6
**resolution** [2] - 8:5, 8:7
**respect** [20] - 2:19, 4:24, 9:21, 10:5, 10:6, 12:2, 21:18, 51:1, 55:23, 57:10, 57:14, 65:23,

68:5, 68:24, 69:17, 74:16, 74:22, 77:3, 77:15
**respond** [5] - 5:15, 39:19, 40:22, 41:3, 41:10
**responded** [2] - 56:1, 75:20
**response** [1] - 7:20
**result** [3] - 12:23, 16:12, 38:9
**retained** [1] - 21:22
**retaliation** [10] - 6:3, 6:5, 6:7, 9:9, 60:25, 62:22, 63:5, 63:8, 64:6, 65:23
**retention** [3] - 33:15, 33:16
**reveal** [4] - 32:19, 33:3, 35:20, 60:20
**revealed** [1] - 7:25
**review** [5] - 18:17, 18:21, 24:11, 29:2, 34:22
**reviewed** [19] - 23:2, 23:3, 23:5, 23:9, 23:12, 24:16, 24:21, 24:25, 25:3, 25:5, 25:13, 25:17, 26:17, 27:8, 27:11, 27:15, 27:23, 29:18, 48:7
**reviewing** [1] - 19:5
**Richard** [1] - 1:13
**Richmond** [1] - 76:16
**right-hand** [1] - 24:13
**Ritz** [1] - 75:4
**RPR** [1] - 1:23
**rule** [4] - 4:17, 5:2, 13:10, 67:6
**Rule** [25] - 3:4, 9:16, 9:22, 9:25, 10:2, 10:4, 10:5, 10:6, 11:14, 11:15, 12:24, 14:10, 15:17, 21:17, 50:14, 65:25, 70:5, 71:2, 77:2
**ruled** [1] - 12:4
**rules** [2] - 11:17, 67:12
**ruling** [4] - 9:22, 13:19, 16:6, 76:14
**rulings** [1] - 7:2
**run** [5] - 35:16, 35:19, 35:20, 36:4, 36:5
**rush** [1] - 72:18

# S

**Samsung** [16] - 27:7, 27:10, 27:11, 27:13, 28:17, 29:10, 31:4, 32:12, 32:19, 33:2, 33:12, 33:24, 34:2, 35:21, 38:13, 48:6
**sanctified** [1] - 63:18

**sanction** [14] - 2:5, 8:6, 9:22, 14:11, 61:21, 65:11, 65:19, 68:24, 69:10, 73:22, 73:25, 74:1, 75:1, 76:3
**sanctions** [14] - 9:2, 9:16, 9:17, 10:2, 10:22, 51:1, 58:11, 58:14, 60:3, 60:15, 61:11, 65:19, 69:17, 76:18
**sat** [2] - 72:3, 72:10
**school** [3] - 20:6, 20:9, 20:15
**scientific** [1] - 26:14
**screen** [14] - 23:22, 32:4, 46:13, 46:14, 46:17, 46:19, 46:21, 46:24, 47:2, 47:12, 47:17, 56:4, 56:13, 57:11
**scroll** [1] - 43:23
**Se** [1] - 1:17
**se** [7] - 2:24, 3:3, 5:7, 41:7, 74:11, 77:12
**seated** [4] - 4:21, 7:17, 16:24, 58:10
**second** [21] - 8:20, 41:13, 41:14, 41:15, 41:18, 41:20, 42:17, 54:6, 55:24, 56:1, 56:11, 56:12, 56:17, 56:20, 57:7, 57:14, 58:10, 59:8, 64:17, 67:2
**secondly** [1] - 11:4
**seconds** [6] - 27:6, 40:13, 42:16, 49:24, 54:1, 56:2
**Section** [1] - 6:9
**Security** [5] - 2:3, 3:17, 62:23, 64:7, 64:11
**security** [3] - 30:2, 37:8, 51:25
**SECURITY** [1] - 1:7
**Security's** [1] - 63:9
**see** [15] - 3:24, 4:8, 24:8, 28:8, 29:20, 36:6, 38:2, 43:1, 43:6, 43:20, 43:23, 44:8, 49:9, 56:13, 58:2
**SEEGULL** [3] - 4:11, 4:15, 4:19
**Seegull** [3] - 1:19, 4:11, 4:13
**seeing** [1] - 43:3
**seek** [1] - 14:10
**seeking** [6] - 7:3, 12:8, 12:13, 12:23, 13:4, 16:8
**seeks** [1] - 63:15
**sending** [1] - 42:14
**sent** [15] - 18:9, 18:11, 27:24, 42:14, 42:18,

44:6, 49:1, 49:13, 49:19, 49:22, 53:19, 54:2, 54:5, 54:16, 64:17
**sentence** [2] - 28:8, 70:16
**separate** [1] - 63:4
**September** [17] - 7:18, 8:1, 11:25, 23:7, 26:4, 26:6, 38:9, 45:19, 46:7, 46:12, 47:14, 47:18, 48:7, 48:9, 60:16, 61:18
**serious** [6] - 11:10, 61:1, 70:3, 70:9, 74:13, 74:14
**servers** [1] - 17:25
**services** [1] - 19:24
**set** [5] - 8:23, 11:5, 33:14, 67:22, 76:4
**sets** [3] - 3:5, 40:25, 77:11
**seven** [1] - 47:16
**severe** [1] - 61:22
**shadow** [1] - 72:2
**Shaffer** [3] - 74:21, 74:22, 74:24
**shot** [13] - 2:16, 3:10, 4:16, 32:4, 46:13, 46:17, 46:19, 46:21, 46:24, 47:2, 47:12, 47:17, 57:11
**shots** [3] - 3:8, 46:14, 56:4
**show** [13] - 24:10, 24:18, 24:19, 24:24, 30:18, 30:20, 31:11, 38:5, 42:22, 48:14, 73:14, 76:24
**showed** [1] - 14:21
**showing** [1] - 28:5
**shown** [1] - 42:24
**shows** [3] - 26:3, 46:9, 57:6
**sic** [2] - 40:22, 71:22
**side** [2] - 15:1, 57:12
**sides** [3] - 7:6, 16:6, 76:7
**sign** [1] - 49:15
**signature** [1] - 79:12
**signed** [1] - 73:11
**significance** [1] - 41:11
**similar** [1] - 35:9
**simple** [1] - 53:7
**simplest** [1] - 18:7
**simply** [2] - 37:20, 68:2
**sit** [2] - 10:9, 40:10
**sitting** [2] - 67:9, 67:25
**six** [2] - 47:16, 74:22
**size** [4] - 33:17, 33:18, 33:25
**small** [1] - 42:11
**smart** [1] - 51:23

**SMS** [1] - 49:3
**so-called** [1] - 46:13
**software** [5] - 18:21, 20:12, 22:14, 25:18, 37:15
**SOLUTIONS** [1] - 1:7
**Solutions** [2] - 2:3, 3:17
**someone** [3] - 29:3, 29:21, 30:9, 57:12, 63:18
**sometime** [2] - 26:23, 35:25
**sometimes** [2] - 32:22, 42:10
**somewhere** [1] - 72:3
**sorry** [9] - 7:12, 29:13, 41:14, 43:4, 44:18, 56:18, 60:10, 76:22
**sort** [2] - 18:13, 19:11
**sought** [2] - 11:3, 14:5
**source** [1] - 49:5
**Southern** [1] - 1:1
**speaking** [7] - 2:12, 3:14, 4:7, 5:9, 16:24, 38:13, 39:2
**specific** [2] - 20:12, 46:24
**specifically** [15] - 11:3, 11:16, 11:20, 11:21, 11:25, 12:12, 35:2, 35:12, 55:24, 56:4, 59:15, 64:25, 65:1, 65:4
**specifics** [2] - 22:17, 26:12
**speeches** [1] - 41:8
**speed** [1] - 51:24
**spell** [1] - 16:25
**spend** [1] - 26:16
**spoliation** [1] - 10:5
**stack** [1] - 56:21
**staff** [1] - 77:20
**stage** [1] - 16:9
**stamp** [1] - 24:12
**stamped** [11] - 24:15, 24:18, 24:23, 25:2, 26:18, 28:5, 30:19, 30:25, 32:8, 40:1, 50:2
**stand** [4] - 2:25, 5:5, 7:11, 40:17
**standard** [1] - 19:2
**standing** [2] - 2:8, 12:18
**stands** [1] - 77:21
**start** [3] - 14:13, 20:5, 23:12
**started** [5] - 4:4, 20:6, 58:16, 58:18, 65:12
**state** [3] - 6:6, 16:25, 37:12
**statement** [3] - 61:15, 63:13, 68:7

**statements** [2] - 10:20, 63:23
**STATES** [1] - 1:1
**States** [2] - 74:24, 76:17
**status** [2] - 2:19, 3:7
**statute** [2] - 63:14, 69:13
**stayed** [2] - 8:5, 76:12
**stenographically** [1] - 79:6
**step** [2] - 55:9, 70:12
**still** [11] - 7:1, 10:21, 12:8, 12:13, 13:7, 13:20, 32:17, 34:5, 34:10, 36:4, 52:3
**stop** [1] - 61:22
**straight** [7] - 44:23, 48:25, 59:2, 59:22, 68:15, 68:19, 75:23
**Street** [1] - 1:24
**subject** [3] - 6:19, 10:23, 12:5
**submissions** [2] - 58:12, 77:20
**submitted** [6] - 8:22, 8:25, 20:20, 55:12, 55:16, 62:22
**submitting** [2] - 9:18, 57:16
**succession** [2] - 53:20, 54:16
**sue** [1] - 62:23
**Sue** [1] - 63:1
**suggest** [1] - 63:18
**suit** [2] - 9:17, 64:6
**summary** [15] - 5:14, 5:16, 6:12, 6:15, 6:19, 6:22, 6:24, 7:3, 7:7, 8:7, 8:10, 9:1, 15:2, 55:19, 76:7
**supervisor** [3] - 54:25, 55:1, 61:15
**supplied** [1] - 11:12
**support** [9] - 8:25, 9:1, 17:20, 45:5, 54:23, 60:24, 61:10, 64:13, 71:15
**supports** [2] - 63:11, 63:19
**surrounding** [1] - 71:6
**swear** [1] - 53:14
**swipe** [1] - 33:19
**SWORN** [1] - 16:22
**sworn** [1] - 14:22
**system** [5] - 18:20, 23:17, 32:20, 37:7, 43:18
**systems** [1] - 18:2, 19:6, 33:14

# T

**tagged** [2] - 48:17, 48:20
**tam** [1] - 63:14
**targeted** [3] - 33:9, 33:10, 34:8
**taught** [1] - 20:13
**teach** [1] - 20:14
**Tech** [1] - 20:21
**technical** [1] - 30:9
**technically** [1] - 54:4
**telephone** [1] - 7:19
**term** [1] - 51:17
**termination** [1] - 8:3
**terms** [28] - 6:5, 7:2, 8:9, 10:4, 10:6, 11:13, 11:15, 13:12, 13:15, 15:15, 16:6, 18:8, 21:12, 44:21, 58:4, 59:7, 60:9, 65:9, 68:11, 74:1, 74:2, 74:15, 74:23, 75:7, 75:13, 76:4, 76:24, 77:5
**test** [1] - 68:11
**testified** [5] - 34:8, 37:18, 39:7, 47:13, 75:15
**testify** [5] - 20:24, 21:18, 39:9, 61:9, 62:5
**testifying** [3] - 17:7, 60:7, 62:18
**testimony** [18] - 4:24, 5:7, 14:22, 16:5, 16:16, 16:17, 36:13, 36:24, 60:14, 61:2, 61:8, 61:18, 67:4, 67:14, 69:5, 69:16, 74:5, 75:13
**text** [75] - 7:22, 8:1, 9:6, 11:4, 11:5, 11:11, 11:18, 12:5, 12:8, 12:11, 12:12, 13:13, 13:14, 14:1, 14:2, 14:18, 15:5, 18:8, 21:19, 21:24, 22:2, 22:3, 23:4, 25:10, 25:12, 26:21, 26:23, 26:25, 27:7, 28:2, 28:6, 31:10, 32:9, 35:3, 35:4, 35:8, 39:8, 40:16, 43:1, 43:6, 43:10, 43:11, 43:14, 47:9, 49:9, 51:2, 52:7, 52:8, 53:4, 58:20, 59:3, 59:6, 61:14, 61:16, 61:19, 65:2, 65:14, 65:15, 66:11, 66:23, 69:22, 69:24, 70:10, 71:4, 71:19, 71:22, 72:4, 72:5, 72:21, 72:24, 73:2, 73:3, 73:5, 73:7
**texting** [1] - 4:25
**textual** [2] - 49:2, 50:5
**THE** [133] - 1:1, 1:2, 2:2,
3:3, 3:10, 3:13, 3:21, 3:24, 4:13, 4:17, 4:20, 5:2, 5:5, 5:24, 7:10, 7:13, 7:16, 9:20, 10:14, 12:19, 13:16, 14:5, 14:25, 15:12, 16:5, 16:19, 16:21, 16:23, 16:24, 17:2, 17:5, 17:8, 17:9, 19:13, 21:11, 21:15, 22:21, 23:14, 23:16, 24:4, 24:12, 27:10, 27:14, 27:15, 28:10, 28:13, 29:5, 29:7, 29:11, 29:14, 29:17, 36:18, 38:7, 38:16, 38:19, 38:21, 38:25, 39:6, 39:19, 39:22, 40:20, 41:6, 41:12, 41:14, 41:15, 41:17, 41:19, 41:20, 41:23, 42:20, 44:18, 44:20, 45:1, 47:21, 47:24, 48:2, 50:9, 50:14, 50:21, 50:23, 51:4, 51:7, 51:11, 54:12, 55:5, 55:8, 55:14, 55:20, 56:9, 56:11, 56:17, 56:20, 57:7, 57:9, 57:20, 57:22, 57:24, 58:9, 60:9, 60:11, 62:1, 62:4, 62:8, 62:13, 62:16, 62:25, 63:6, 63:12, 63:22, 64:3, 64:9, 64:12, 64:16, 64:22, 65:18, 66:3, 66:9, 66:17, 67:5, 67:20, 68:9, 69:25, 70:2, 70:17, 70:19, 70:24, 71:8, 71:13, 72:14, 72:17, 73:19, 73:21, 76:11
**theirs** [1] - 57:19
**themselves** [5] - 3:17, 33:7, 33:20, 67:12, 67:23
**theories** [4] - 58:3, 71:13, 71:14, 71:15
**theory** [11] - 40:21, 41:10, 41:22, 56:5, 57:11, 63:19, 64:13, 69:6, 69:7, 69:8, 71:16
**therefore** [5] - 8:17, 25:24, 26:5, 30:13, 67:3
**therein** [1] - 65:22
**they've** [1] - 69:15
**thing's** [1] - 68:10
**thinking** [1] - 52:1
**thirdly** [1] - 11:5
**thorough** [2] - 12:16, 30:8
**three** [2] - 43:8, 43:14
**thumb** [2] - 17:25, 19:19
**Thursday** [1] - 1:11
**timeline** [1] - 18:1
**timelines** [1] - 19:18
**timestamp** [9] - 39:13, 40:2, 40:7, 49:21, 53:20, 53:22, 54:3, 54:16, 55:2
**timestamps** [1] - 40:17
**today** [18] - 2:4, 5:10, 5:11, 6:11, 8:16, 8:24, 10:11, 10:18, 13:7, 16:12, 26:13, 36:15, 36:22, 60:22, 61:7, 61:25, 62:5, 67:6
**today's** [1] - 56:25
**tone** [1] - 74:11
**took** [4] - 42:15, 47:13, 70:12, 77:4
**tool** [2] - 19:2, 19:8
**tools** [2] - 18:24, 19:1
**top** [9] - 24:20, 30:20, 39:12, 40:8, 43:12, 44:8, 44:11, 47:4, 49:12
**totality** [1] - 55:2
**touching** [1] - 18:18
**traces** [1] - 30:4
**track** [2] - 42:1, 42:2
**training** [5] - 20:10, 20:12, 20:13, 22:7
**transcribed** [1] - 79:9
**transcript** [1] - 79:9
**Transfer** [9] - 35:1, 35:6, 35:18, 35:23, 36:4, 37:19, 37:21, 37:23
**translate** [1] - 19:8
**trial** [3] - 61:8, 65:16, 69:1
**tried** [2] - 74:6, 74:12
**true** [8] - 54:17, 58:21, 58:22, 58:23, 63:24, 65:14, 68:7, 73:24
**truthful** [1] - 74:8
**try** [4] - 22:1, 29:2, 30:19, 63:23
**trying** [13] - 5:24, 12:18, 38:21, 39:1, 39:19, 55:21, 55:23, 59:11, 64:23, 66:19, 67:20, 72:7
**turn** [2] - 48:11, 67:24
**turned** [1] - 38:13
**TV** [1] - 23:19
**two** [44] - 3:4, 3:8, 12:16, 25:5, 25:7, 27:15, 32:15, 33:6, 38:2, 40:4, 40:16, 40:17, 40:19, 40:21, 40:24, 41:11, 41:13, 41:14, 41:15, 41:18, 41:20, 42:15, 42:17, 43:3, 43:8, 44:14, 45:22, 51:9, 54:2, 54:5, 55:24, 56:1, 56:2, 57:7,
57:14, 60:18, 62:22, 64:10, 67:10, 67:22, 77:10, 77:18
**two-hour** [1] - 77:18
**two-minute** [2] - 40:21, 41:11
**two-second** [10] - 41:13, 41:14, 41:15, 41:18, 41:20, 42:17, 55:24, 56:1, 57:7, 57:14
**type** [3] - 18:3, 18:24, 46:18
**types** [3] - 20:11, 20:13, 22:13
**typically** [10] - 18:19, 18:25, 19:17, 32:22, 32:24, 34:16, 43:18, 51:24

# U

**U.S** [1] - 1:23
**ultimate** [1] - 74:1
**unaltered** [1] - 32:5
**unavailable** [1] - 51:22
**unclear** [1] - 12:7
**under** [37] - 3:4, 6:2, 6:4, 6:5, 9:22, 11:14, 11:15, 12:24, 14:10, 15:16, 21:17, 22:14, 44:1, 44:3, 50:14, 52:17, 60:7, 60:11, 60:15, 62:5, 62:10, 62:18, 65:25, 66:10, 67:12, 67:21, 70:5, 71:1, 74:5, 74:6, 74:7, 74:10, 75:1, 76:11, 77:2
**underlying** [3] - 11:12, 60:18, 61:19
**understood** [1] - 13:17
**UNITED** [1] - 1:1
**United** [2] - 74:23, 76:17
**University** [2] - 20:2, 20:4
**unless** [2] - 10:8, 15:22
**unproduced** [1] - 8:1
**unrecoverable** [1] - 52:5
**unusual** [1] - 49:15
**up** [20] - 2:14, 3:15, 4:5, 5:5, 14:23, 23:17, 23:21, 26:17, 28:2, 33:14, 41:8, 42:13, 46:20, 46:21, 48:5, 56:12, 57:24, 60:7, 61:15, 64:20
**upcoming** [1] - 9:4
**USC** [1] - 6:9
**useful** [1] - 19:16
**user** [10] - 18:10, 26:7, 26:8, 26:9, 26:10, 30:13, 30:16, 34:14, 35:2
**user's** [2] - 34:19, 53:24
**users** [1] - 29:23
**uses** [1] - 20:16
**utilize** [4] - 9:11, 18:25, 37:7, 76:20
**utilized** [4] - 19:2, 25:8, 35:23, 37:15
**utilizing** [1] - 18:20

# V

**vaccinated** [9] - 2:13, 2:15, 2:17, 3:7, 3:22, 4:14, 4:15, 5:3, 17:6
**vaccination** [2] - 2:19, 3:6
**value** [5] - 25:19, 25:23, 46:9, 72:1, 73:17
**values** [1] - 26:4
**variance** [7] - 41:18, 41:21, 55:25, 56:1, 57:15, 59:10, 65:14
**variation** [1] - 42:11
**variations** [1] - 76:23
**various** [4] - 5:20, 12:23, 19:7, 21:7
**vast** [1] - 28:1
**verbal** [1] - 61:18
**verbally** [1] - 61:5
**verbatim** [2] - 64:19, 64:21
**verified** [1] - 43:10
**verify** [2] - 25:16, 26:7
**version** [4] - 28:22, 32:1, 52:23, 56:8
**versus** [2] - 2:3, 28:15
**Vestigant** [4] - 4:24, 15:25, 17:14, 19:23
**Vestigent** [1] - 1:20
**veteran** [4] - 4:3, 4:4, 4:5
**view** [12] - 10:12, 13:17, 15:23, 15:24, 16:1, 16:16, 51:2, 53:24, 58:5, 59:21, 60:4, 76:9
**violate** [1] - 73:9
**violated** [1] - 73:9
**violation** [9] - 6:1, 6:7, 9:16, 65:24, 66:1, 68:24, 69:11, 69:18, 75:22
**violations** [2] - 7:5, 10:5
**Virginia** [1] - 21:5
**volume** [2] - 46:20, 46:21

| W | Y |
|---|---|
| **wait** [1] - 56:20<br>**wall** [1] - 2:15<br>**wallet** [1] - 3:12<br>**warrant** [1] - 60:25<br>**warrants** [1] - 74:19<br>**Washington** [2] - 20:4, 20:15<br>**wavelength** [1] - 10:15<br>**ways** [3] - 17:20, 33:13, 46:24<br>**weighed** [1] - 15:9<br>**welcome** [1] - 2:21<br>**West** [1] - 1:24<br>**Whereof** [1] - 79:11<br>**whistleblower** [9] - 62:22, 63:5, 63:7, 63:13, 63:16, 64:6, 65:22, 66:7, 69:13<br>**Whistleblower** [1] - 6:8<br>**whole** [4] - 20:13, 33:20, 34:11, 68:10<br>**willful** [1] - 75:10<br>**willing** [1] - 14:22<br>**withdraw** [1] - 40:25<br>**withdrawn** [1] - 3:5<br>**Witness** [1] - 79:11<br>**WITNESS** [13] - 16:22, 16:23, 17:2, 17:8, 27:15, 29:17, 39:22, 41:12, 41:15, 41:19, 41:23, 78:5, 78:6<br>**witness** [21] - 5:5, 9:12, 10:20, 15:7, 15:13, 16:2, 16:15, 16:17, 38:17, 40:22, 41:3, 41:9, 51:8, 55:23, 56:1, 62:5, 67:4, 67:14, 67:15, 67:17<br>**witnesses** [1] - 51:4<br>**word** [4] - 64:4, 64:19, 72:9<br>**word-for-word** [1] - 64:19<br>**worded** [1] - 64:2<br>**words** [11] - 28:16, 36:3, 52:8, 58:20, 68:14, 71:7, 73:2, 73:4, 73:17, 73:23, 75:25<br>**works** [3] - 24:3, 24:4, 39:5<br>**world** [1] - 20:7<br>**worn** [1] - 2:9<br>**writing** [1] - 52:2<br>**wrongdoing** [2] - 74:17, 74:18 | **year** [7] - 7:18, 12:1, 20:21, 23:7, 33:16, 45:20, 46:5<br>**year-long** [1] - 33:16<br>**years** [2] - 20:11, 74:21<br>**yesterday** [2] - 8:22, 56:22<br>**York** [1] - 21:6<br>**yourself** [4] - 41:1, 41:6, 67:10, 67:13<br>**yup** [1] - 23:15<br><br>**Z**<br><br>**Zajac** [5] - 1:23, 4:3, 19:14, 79:5, 79:16<br>**zoom** [1] - 30:19 |