IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ANTHONY GUNTER,** | |
| *Plaintiff,* | |
| v. | Civil No.: 1:20-cv-03410-JRR |
| **ALUTIIQ ADVANCED SECURITY SOLUTIONS, LLC,** | |
| *Defendant.* | |

## MEMORANDUM OPINION[1]

Pending before the court is Defendant Alutiiq Advanced Security Solutions, LLC's Motion for Summary Judgment. (ECF No. 129; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, Defendant's Motion will be granted.

## I.    BACKGROUND

On November 23, 2020, Plaintiff Anthony Gunter, represented by counsel at the time, initiated this action against Defendant alleging employment discrimination. (ECF No. 1.) On August 25, 2021, Plaintiff filed the now-operative Fourth Amended Complaint (ECF No. 35), asserting eight counts under the Age Discrimination in Employment Act ("ADEA"), the Maryland Fair Employment Practices Act ("MFEPA"), as well as the anti-retaliation provisions of the False

---

[1] In Plaintiff's papers presently before the court, he fails to conform to the court's admonition in its order at ECF No. 106 that he "is obliged to abide the Federal Rules of Civil Procedure, the Local Rules of this court, and the orders of this court[; and that t]he court will not tolerate further incivility or misrepresentation of facts (or law)." (ECF No. 106 at p. 6.) Specifically, Plaintiff continues to lob innumerous insults and accusations of various forms of professional misconduct against opposing counsel and the court. (*See* ECF No. 106 at pp. 5-6 citing *Edokobi v. Toyota Motor Credit Corp.,* No. PWG-19-248, 2019 WL 2250568, at *3–4 (D. Md. May 24, 2019).) Notwithstanding Plaintiff's conduct, the court cabins its analysis to the merits of the Motion and ignores Plaintiff's mischaracterizations and accusations with respect to opposing counsel and the court.

Claims Act ("FCA") and the Defense Contractor Whistleblower Protection Act ("DCWPA"), asserted as follows:

> Count One: Retaliation in Violation of the ADEA;
> Count Two: Discrimination in Violation of the ADEA;
> Count Three: Hostile Work Environment in Violation of the ADEA;
> Count Four: Retaliation in Violation of MFEPA;
> Count Five: Discrimination in Violation of MFEPA;
> Count Six: Hostile Work Environment in Violation of MFEPA;
> Count Seven: Retaliation in Violation of the False Claims Act; and
> Count Eight: Whistleblower Retaliation under DCWPA.

(ECF No. 35 ¶¶ 64–112.)[2]

Defendant moves for summary judgment on all claims. (ECF No. 129.) Plaintiff, now *pro se*, opposes the Motion.[3]  (ECF No. 131.)

---

[2] While not relevant to the instant Motion, the court notes certain procedural history in this case that Plaintiff discusses extensively in his opposition. As the Fourth Circuit summarized:

> While defending a lawsuit filed by one of its former employees, Alutiiq Advanced Security Solutions, Inc. ("Alutiiq") discovered that the plaintiff, Anthony C. Gunter, had altered certain text message evidence and failed to produce other evidence. Alutiiq moved for sanctions, seeking both dismissal of the case and reimbursement for costs associated with uncovering Gunter's misconduct. District Judge Bennett held an evidentiary hearing and found that Gunter had indeed doctored evidence. However, Judge Bennett denied Alutiiq's request to dismiss. Instead, Judge Bennett prohibited Gunter from using the altered messages at trial; permitted Alutiiq to use the same for impeachment purposes; and directed Gunter to reimburse Alutiiq, unless he was unable to pay.

> Thereafter, the case was transferred to District Judge Rubin. Upon getting acquainted with the case, Judge Rubin questioned whether the sanctions imposed by Judge Bennett were adequate. After notifying the parties that she was contemplating reconsideration, Judge Rubin concluded that dismissal with prejudice was warranted. Further, she ordered Gunter to pay Alutiiq $10,000— short of what Alutiiq requested, but the maximum Gunter could afford.

*Gunter v. Alutiiq Advanced Sec. Sols., LLC*, No. 23-1229, 2024 WL 3949262, at *1 (4th Cir. Aug. 27, 2024). Plaintiff then appealed, challenging the undersigned's reconsideration of Judge Bennett's sanction ruling, order imposing monetary sanctions, and order denying his motion to recuse. *Id.* On appeal, the Fourth Circuit affirmed the court's award of monetary sanctions and order denying the motion to recuse, but vacated the court's dismissal of the action and remanded for further proceedings. *Id.* at *1–2. On remand, the case proceeded through discovery and the instant pretrial dispositive Motion.

[3] The vast majority of Plaintiff's opposition addresses the court's prior rulings on recusal and sanctions. These matters bear no relevance to the instant Motion or the court's consideration of same. The Fourth Circuit's opinion speaks for itself.

## II.    **UNDISPUTED FACTS**

Plaintiff, who was 52 in August 2021,[4] began his employment with Defendant as an Armed Security Guard (or Access Control Officer) on or about July 1, 2017.  (Hoover Decl., ECF No. 129-3 ¶ 6.)  Defendant "provides professional security services to the United States government." *Id.* ¶ 4.  Specifically, it "employs security professionals who are tasked with deterring, detecting, and mitigating threats to the federal government's workforce and critical assets." *Id.* ¶ 5.  In 2017, Defendant contracted with the United States Coast Guard, part of the United States Department of Homeland Security ("DHS"), to provide security services for multiple Coast Guard locations, including the United States Coast Guard Yard in Baltimore, Maryland ("USCGY").  (Hoover Decl., ECF No. 129-3 ¶ 4; ECF No. 35 ¶ 18.)

Defendant's relevant chain of command is as follows: Site Leads (sometimes called Captains); Lead Officers (sometimes called Shift Leads, Lieutenants, or Sergeants); and Armed Security Guards.  (Watts Decl., ECF No. 129-4 ¶ 7.)  The Site Lead "provide[s] day-to-day on-site supervision of the Armed Security Guards and Lead Officers" and regularly corresponds with the Regional Program Coordinator regarding Defendant's USCGY operations. *Id.* ¶ 9.  Lead Officers have responsibilities akin to Armed Security Guards, but also "oversee[] the shift to which they were assigned and tak[e] any concerns to the attention of the Site Lead." *Id.* ¶ 8.  The Regional Program Coordinator manages the performance of Defendant's operations at USCGY. *Id.* ¶ 5.  Relevant here, Alicia Smith was Defendant's Site Lead at USCGY before 2019, and Zachary Caster, born in 1973, was Defendant's Site Lead starting in January 2019. *Id.* ¶ 10; Hoover Decl., 129-3 ¶ 7.  During all relevant times, Norman Watts, born in 1959, was Defendant's Regional Program Coordinator for USCGY.  (Watts Decl., ECF No. 129-4 ¶¶ 2–3.)   During all relevant

---

[4] Plaintiff appears to be about 56 years old as of the time of this opinion.

times, David Hoover, born in 1964, was in a Human Resources supervisor or manager role with Defendant.  (Hoover Decl., ECF No. 129-3 ¶¶ 2–3.)

## A.  Plaintiff's Previous Disciplinary History

During his years of employment, Plaintiff was subject to four disciplinary actions. Specifically, in September 2017, Plaintiff was subjected to disciplinary action for two offenses— allowing an unauthorized vehicle on the USCGY base without a parking pass, *see* Gunter Dep. II, ECF No. 129-6 at 32:5–15; September 6, 2017 Corrective Action Notice, ECF No. 129-8; and having an "inappropriate website pulled up" on his phone while on post, *see* Gunter Dep. II., ECF No. 129-6 at 32:20–34:3; September 21, 2017 Corrective Action Notice, ECF No. 129-9.  Then, in April 2018, Plaintiff was subjected to a two-day suspension (in May 2018) for calling out for two scheduled shifts with limited notice because he did not have a babysitter and needed to take his mother to a doctor.  (Gunter Dep. II., ECF No. 129-6 at 34:4–21; April 15, 2018, Corrective Action Notice, ECF No. 129-10.)  Finally, in December 2018, Plaintiff was subject to disciplinary action for failure to follow instructions, specifically not following the Coast Guard's policy "of assuring everyone who came on base had a parking hangtag in their possession."  (Gunter Dep. II., ECF No. 129-6 at 35:8–36:3; December 10, 2018, Corrective Action Notice, ECF No. 129-11.)

## B.  Physical Fitness Testing

Pursuant to Defendant's contract with the Coast Guard, physical fitness testing was required for all employees at USCGY.  (Hoover Decl., ECF No. 129-3 ¶¶ 8–9; Watts Decl., ECF No. 129-4 ¶¶ 10–11.)  While in place, all of Defendant's employees were required to comply with the physician fitness testing.  (Gunter Dep. II, ECF No. 129-6 at 78:6–21; Hoover Decl., ECF No. 129-3 ¶ 9; Watts Decl., ECF No. 129-4 ¶ 11.)  This requirement was later eliminated in January of

2019.  (Gunter Dep. I, ECF No. 129-5 at 109:20–111:4; Gunter Dep. II, ECF No. 129-6 at 79:17–20; Hoover Decl., ECF No. 129-3 ¶ 10; Watts Decl., ECF No. 129-4 ¶ 12.)

Plaintiff's testimony on this point deviates.  At first, he testified that neither he nor others were required to complete the physical fitness tests after that point.  (Gunter Dep. I, ECF No. 129-5 at 109:20–111:4.)  He later testified that he was required to complete the physical fitness test after the requirement was eliminated, but he does not know if other employees were required to do so.  (Gunter Dep. II, ECF No. 129-6 at 78:6–20, 79:1–16.)  The parties dispute this.  (Gunter Dep. I, ECF No. 129-5 at 111:5–12; Hoover Decl., ECF No. 129-3 ¶ 9; Watts Decl., ECF No. 129-4 ¶ 11.)  Plaintiff testifies he was ordered by Alicia Smith to complete physical fitness tests "multiple times between January of 2019 and June of 2019."  (Gunter Dep. II, ECF No. 129-6 at 22:17–23:18; ECF No. 35 ¶ 27.)  Smith was not Plaintiff's supervisor during this period.  (Pl.'s Interrog. Resp., ECF No. 129-7 at p. 10.)  Regardless of the outcomes of the physical fitness tests, Plaintiff was never taken off site for failure to pass the test.  (Gunter Dep. I, ECF No. 129-5 at 110:2–7.)

## C.  Lead Officer Openings

December announced an opening for a Lead Officer in early 2019.  (Watts Decl., ECF No. 129-4 ¶ 14.)  Plaintiff was not selected for the Lead Officer position; instead, Defendant hired Tical Montgomery, under 40 years old, for the role.  (Watts Decl., ECF No. 129-4 ¶ 14; ECF No. 35 ¶ 42.)  As to the decision, Watts, as decisionmaker, attests:

> It was my understanding that Mr. Montgomery had prior experience filling in for the role of Lead Officer, and I was not (and still am not) aware of any discipline or corrective actions received by Mr. Montgomery. Mr. Gunter, on the other hand, had previously received a number of corrective actions, including corrective actions for violating security protocols, and a corrective action for having inappropriate material on his cell phone while at work. In my

> opinion, Mr. Montgomery was more reliable and a better performer
> than Mr. Gunter.

*Id.* ¶ 15.

In the summer of 2019, Montgomery left his employment with Defendant after which Defendant again announced an opening for a Lead Officer. *Id.* ¶ 16. In June 2019, Plaintiff testifies that he "stood [his] ground" with Caster in discussing the promotion and alleged age discrimination. (Gunter Dep. II, ECF No. 129-6 at 18:1–6.) Caster emailed his team regarding the Summer 2019 Lead Officer opening, informing Armed Security Officers that they could respond to the email if interested. (July 2019 Email, ECF No. 129-13.) Plaintiff responded to Caster's email: "really ok i'm already senior officer by time on the site but it's whatever." (July 2019 Email, ECF No. 129-13.)

The record does not include whether Plaintiff applied for the Summer 2019 Lead Officer opening. Regardless, Plaintiff was not selected for the position, and instead Defendant hired Corey McClure, under 40 years old, for the role. (Watts Decl., ECF No. 129-4 ¶¶ 16–17.) As to the decision, Watts, as the final decisionmaker, attests:

> I had the same concerns about Mr. Gunter in the summer of 2019 as
> I did in early 2019. Specifically, I had concerns regarding Mr.
> Gunter's ability to supervise and be in a leadership position, as
> evidenced by the corrective action notices that Mr. Gunter had
> received, which I viewed as demonstrating that Mr. Gunter had a
> disregard for security protocols and inattentiveness on post. I,
> therefore, did not think that Mr. Gunter modeled the performance
> and adherence to security protocols that would be expected of
> someone in the Lead Officer position. I also did not feel that Mr.
> Gunter was willing to step up to fill in for others when necessary.
>
> I was not (and still am not) aware of Mr. McClure having any
> disciplinary actions for inappropriate behavior or lack of compliance
> with security protocols. Also, Mr. McClure was generally more
> flexible with his schedule than Mr. Gunter. I felt that Mr. McClure
> could handle the responsibility of the Lead Officer role.

*Id.* ¶¶ 18–19.  Watts had ultimate decision-making authority on the hiring of both Lead Officer positions.  *Id.* ¶¶ 14, 17.

### D. Whistleblower Complaint

Plaintiff testified at deposition that, during his employment, Smith and Caster directed him to sign falsified timecards.  (Gunter Dep. II, ECF No. 129-6 at 45:5–8.)  Based on this direction, Plaintiff contends that he signed and submitted timecards, knowing they were false.  (Gunter Dep. II, ECF No. 129-6 at 45:5–8.)  He further attests that he assumes that after he signed the falsified timecards, they were submitted to "upper management" based on the fact that his paycheck, issued by Defendant and not the federal government, reflected the falsified hours.  *Id.* at 45:9–46:5, 62:10–17.  Plaintiff does not know if the falsified timecards were provided to the federal government.  *Id.* at 46:1–16.

Plaintiff testified further at deposition that he contacted DHS's Office of Inspector General ("OIG") regarding his allegations that he was being ordered by Smith and Caster to falsify timecards in January 2019.  (Gunter Dep. II, ECF No. 129-6 at 40:8–41:17, 60:3–51:3.)  He attests that he made initial contact by going to OIG headquarters in Washington, D.C., where he spoke with two agents and was instructed to "see how many more times" he would be asked to falsify timecards.  *Id.* at 52:8–53:21, 54:3–11.  That same year, Plaintiff contends, two agents visited his home to speak with him, seemingly about the allegations; there is no record of that visit.  *Id.* at 87:11–88:4.  According to Plaintiff, he had further phone conversations with OIG on the subject, but has no records reflecting these communications.  *Id.* at 88:10–90:15.  Plaintiff did not formally contact OIG's hotline with his report until 2020.  *Id.* at 51:5–17, 56:14–18.

Plaintiff testified that, beginning in July 2019, he informed Caster of his contact with OIG by telling Caster that he (Caster) was "being investigated for falsifying timecards," that it was

"illegal," and that it was "a violation of [Plaintiff's] rights." (Gunter Dep. I, ECF No. 129-5 at 37:14–39:7; Gunter Dep. II, ECF No. 129-6 at 56:19–60:9.) Plaintiff's testimony is that Caster did not believe him. (Gunter Dep. II, ECF No. 129-6 at 60:1–13.) At no time during Plaintiff's employment did Watts or Hoover know Plaintiff had complained to OIG about timecard fraud. (Hoover Decl., ECF No. 129-3 ¶ 17; Watts Decl., ECF No. 129-4 ¶ 31.)

In January 2020, Plaintiff received an email from a special agent with OIG noting that OIG had received Plaintiff's complaint and was "in the preliminary stage of evaluating [Plaintiff's] complaint." (Hostelley Email, ECF No. 131-3 at p. 11.)[5] The agent asked Plaintiff to provide evidence of the text messages regarding the falsified timecards, and instructed Plaintiff not to discuss the communications with anyone, including Defendant. *Id.* In December 2020, Plaintiff received correspondence from OIG, advising that it had completed its review of his whistleblower retaliation claim, based on allegations related to the failure to promote Plaintiff to the Summer 2019 Lead Officer position and Plaintiff's September 2019 discharge, and that it was opening an investigation. (OIG December 30, 2020, Correspondence, ECF No. 131-1 at p. 6.)[6] On September 28, 2021, OIG provided correspondence that its investigation had become duplicative with the instant action. (OIG September 29, 2021, Correspondence, ECF No. 43-1 at p. 13–14.)[7] OIG never issued a finding of fraud. (Gunter Dep. II, ECF No. 129-6 at 101:20–102:3.)

### E. Plaintiff's Discharge

The events leading up to Plaintiff's discharge from Defendant's employment began on August 20, 2019, when Plaintiff called out from work for the following day, August 21, 2019, and then again on August 21, 2019, when he called out for work on August 22, 2019, stating that he

---

[5] Unless otherwise specified, the court's references to this filing refer to the internal CM/ECF pagination.
[6] Unless otherwise specified, the court's references to this filing refer to the internal CM/ECF pagination.
[7] Unless otherwise specified, the court's references to this filing refer to the internal CM/ECF pagination.

was sick. (August 2019 Text Messages, ECF No. 129-14.) When Plaintiff did not show up for his next scheduled shift on August 22, 2019, Caster contacted Plaintiff via email and text message stating that he was "officially a no call no show," and asked Plaintiff to contact him. (Gunter Dep. II, ECF No. 129-6 at 121:2–123:18; August 24, 2019, Correspondence, ECF No. 129-15.) Caster reached out to Plaintiff again the following day to no avail. (August 25, 2019, Correspondence, ECF No. 129-16.) Caster again contacted Plaintiff on August 26, 2019, with no response from Plaintiff. (August 26, 2019, Correspondence, ECF No. 129-17.)

On August 27, 2019, Plaintiff again did not show up for his scheduled shift. (Gunter Dep. II, ECF No. 129-6 at 122:17–20.) Caster again contacted Plaintiff via email and text message, asking Plaintiff to contact him. (August 27, 2019, Correspondence, ECF No. 129-18.) This time, Plaintiff responded to Caster's text message by return text: "I already informed you that i was sick federal law does not require a employee to give a employer a update on his or her sickness every five minutes i have a right to be sick until i recover."[8] (August 27, 2019, Text Messages, ECF No. 129-19.) Caster replied: "You will need to provide me with a doctor not [sic] for the time that you were out sick, and how long it will be until you are expected to return." *Id.*

On August 28, 2019, Plaintiff again did not show up for his scheduled shift. (Gunter Dep. II, ECF No. 129-6 at 122:21–123:6.) Caster again contacted Plaintiff via email and text message, noting that Plaintiff had missed five consecutive shifts and that he needed to provide a doctor's note. (August 28, 2019, Correspondence, ECF No. 129-20.) When Plaintiff did not show up for his scheduled shift on August 29, 2019, Caster sent similar correspondence. (August 29, 2019, Correspondence, ECF No. 129-21.) Caster sent follow up emails on August 30, August 31,

---

[8] In his opposition, Plaintiff talks at length about his entitlement to leave under the Family and Medical Leave Act ("FMLA"). (ECF No. 131 at pp. 3–4.) Plaintiff presents no evidence that he applied for FMLA leave from Defendant; and Plaintiff asserts no FMLA claim in the instant action.

September 1, and September 2, 2019, advising that, following communications with Watts, Plaintiff had been placed on Administrative Leave Without Pay pending outcome of an investigation into his absences.  (Caster Emails, ECF No. 129-22.)  On September 4, 2019, Caster emailed Plaintiff requesting Plaintiff contact him by September 6, 2019, or he will consider Plaintiff voluntary resigned.  (September 4, 2019, Email, ECF No. 129-23.)  Castor attempted contact again on September 5, 2019.   (September 5, 2019, Email, ECF No. 129-24.)  Plaintiff testified that he "tried to get FMLA," but never received the paperwork to apply.  (Gunter Dep. I, ECF No. 129-5 at 78:3–80:2.)

When Plaintiff did not respond by September 6, 2019, Hoover instructed Watts to process Plaintiff's voluntary resignation.  (Hoover Decl., ECF No. 129-3 ¶ 12; Watts Decl., ECF No. 129-4 ¶¶ 24–25.)  Defendant processed Plaintiff's voluntary resignation on September 10, 2019, submitting a separation form that was transmitted to Plaintiff at 7:23 a.m.  (September 10, 2019, Correspondence, ECF No. 129-25.)  Plaintiff's voluntary resignation was processed as of (*i.e.*, effective) August 21, 2019.[9]  (Watts Decl., Ex. A, ECF No. 129-4 at p. 10.)

## F.  EEOC Charge of Discrimination

On September 10, 2019, at 9:38 a.m. EDT, Plaintiff filed a formal Charge of Discrimination with the EEOC.  (EEOC Charge, ECF No. 129-26.)  Plaintiff signed the EEOC Charge under

---

[9] The court notes that Plaintiff provides a record from the State of Maryland's Department of Labor regarding its unemployment compensation decision.  (ECF No. 131-1 at p. 1.)  Plaintiff contends that this "represents a huge dispute in material facts."  (ECF No. 131 at p. 4.)  The court, however, disagrees.  This bears no consequence on the arguments asserted here.  *See Pettis v. House of Ruth Maryland, Inc.*, No. 04-2443, 2006 WL 6507699, at *1 (4th Cir. Mar. 6, 2006) (explaining that "[f]actual determinations made in state unemployment claim proceedings receive no preclusive effect in actions brought under federal statutes despite involving the same operative facts") (quoting *Ross v. Communication Satellite Corp.*, 759 F.2d 355, 360 (4th Cir.1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)); *Ndjofang v. Wal-Mart*, No. 7:17-CV-1504-AMQ, 2018 WL 3738002, at *3 (D.S.C. Aug. 7, 2018) (same); *Wright v. SunTrust Bank*, No. CV RDB-15-3985, 2017 WL 633470, at *3 n.3 (D. Md. Feb. 16, 2017) (same); *Mitchell v. N. Carolina Div. of Emp. Sec.*, 76 F. Supp. 3d 620, 628 (E.D.N.C. 2014), *aff'd*, 599 F. App'x 517 (4th Cir. 2015) (same); *Ndjofang v. Wal-Mart*, No. 7:17-CV-1504-AMQ, 2018 WL 3738002, at *3 (D.S.C. Aug. 7, 2018) (same).

penalty of perjury. *Id.* In it, he checked boxes to indicate he had experienced discrimination based on sex and age, and that the latest discrimination had occurred on August 23, 2019. *Id.* The EEOC Charge further states:

> During my employment, I was over looked [sic] twice for the position of Lead Lieutenant. Others similarly situated younger employe[e]s Corey McClure and Taylor Montgomery although lesser qualified were selected for the positions. Additionally, female staff do not have to take physical testing however, males are. On August 23, 2019, my work space became so hostile I resigned.

*Id.*

## III.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a factfinder for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A party "need[s] to present more than their own unsupported speculation and conclusory allegations to survive." *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023). Further, "[u]nder this standard,

'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion." *Wai Man Tom v. Hospitality Ventures, LLC*, 980 F.2d 1027, 1037 (4th Cir. 2020) (quoting *Anderson*, 477 U.S. at 252).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

At issue here, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by," in part, citing to particular record evidence. FED. R. CIV. P. 56(c)(1)(A). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). Except where Plaintiff has asserted specific challenges in accordance with Rule 56(c), the court considers Defendant's asserted facts, where supported by record evidence, undisputed.

## IV.   <u>ANALYSIS</u>

Defendant moves for summary judgment on all counts. Plaintiff opposes the Motion. In conducting its analysis, the court is ever mindful that *pro se* filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings drafted by lawyers." *See Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v.*

*Paradus*, 551 U.S. 89, 94 (2007)).  The court considers Plaintiff's *pro se* status accordingly in addressing the arguments at issue.[10]

### A.  Overarching Legal Principles: ADEA and MFEPA Claims

"The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age." *E.E.O.C. v. Baltimore Cnty.*, 747 F.3d 267, 272 (4th Cir. 2014) (quoting 29 U.S.C. §§ 623(a)(1), 631(a)).  It further prohibits retaliation against an individual "because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

Maryland employers are similarly prohibited from age-based discrimination and retaliation under the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE ANN., STATE GOV'T § 20-606.  Under MFEPA, like the ADEA, an employer "may not . . . fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of," relevant here, the individual's age, or "engage in harassment of an employee," *see id.* § 20-606(a)(1)(i), (5), or "retaliate against any of its employees . . . because the individual has" opposed a prohibited

---

[10] As noted above, Plaintiff's opposition focuses in significant part on making attacks on the court and relitigating previous matters previously decided and addressed on appeal.  The court will not address such matters in substance except to state (again) that such conduct is inappropriate, as previously expressed by the court at ECF No. 106.  The court excludes from its consideration of the Motion Plaintiff's repeated gratuitous insults and other inappropriate remarks.  The court takes note of Plaintiff's attached exhibits and, especially in consideration of his *pro se* status, has done its yeoman best to filter out superfluous, irrelevant content, and, instead, to consume and evaluate Plaintiff's arguments.  And, of course, the court views the facts and all reasonable inferences in a light more favorable to Plaintiff than movant Defendant.  But it bears mentioning that "[j]udges are not like pigs, hunting for truffles buried in briefs." *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 42 F.4th 300, 315 (4th Cir. 2022); *see also Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted) (explaining that a Rule 56 non-movant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").  *See also,* footnote 1, *supra.*

practice or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle," *id.* § 20-606(f).

"[C]ourts interpret the MFEPA consistent with its federal corollary, absent 'legislative intent to the contrary." *Doe v. Cath. Relief Servs.*, 484 Md. 640, 680–81 (2023). "Maryland courts have thus applied federal frameworks in evaluating employment discrimination claims under both federal and state discrimination laws." *Mulamba v. Bd. of Educ. of Baltimore Cnty.*, No. 1656, Sept.term,2023, 2024 WL 5103270, at *4 (Md. Ct. Spec. App. Dec. 13, 2024), *cert. denied,* 490 Md. 288 (2025), and *cert. denied,* 146 S. Ct. 184 (2025) (referring to federal frameworks in assessing plaintiff's federal and state discrimination claims). Accordingly, where, as here, "[t]he parties have not identified 'a distinction between a federal and Maryland age discrimination claim,'" the court "appl[ies] the same standards to the analysis of the state and federal discrimination claims." *Allen v. Baltimore Cnty. Bd. of Educ.*, No. CV ELH-21-1006, 2023 WL 5352416, at *26 (D. Md. Aug. 21, 2023) (quoting *Berger v. Baltimore County, Maryland*, LKG-22-64, 2022 WL 2116867, at *2 n. 3 (D. Md. June 13, 2022)). *See also*, *Weil v. Sunrise Senior Living Mgmt., Inc.*, No. CV RDB-20-701, 2021 WL 5742383, at *4 (D. Md. Dec. 1, 2021); *Avant v. S. Maryland Hosp., Inc.*, No. GJH-13-02989, 2015 WL 435011, at *9 (D. Md. Feb. 2, 2015); *Hartman v. Univ. of Maryland at Baltimore*, 595 F. App'x 179, 181 (4th Cir. 2014).

A plaintiff who lacks direct evidence of age-based discrimination or retaliation, as is the case here, may proceed pursuant to the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "This framework recognizes 'that the question facing triers of fact in discrimination cases is both sensitive and difficult, and that there will seldom be eyewitness testimony as to the employer's mental processes.'" *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 141 (2000)). Pursuant to this framework, Plaintiff must first establish a prima facie case of age-based discrimination or retaliation. *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (discrimination); *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 901 (4th Cir. 2024) (retaliation). If Plaintiff does so, at the second step, the burden shifts to the employer "to articulate a non-discriminatory or non-retaliatory reason for the adverse action." *Palmer*, 72 F.4th at 63 (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). Where the employer makes such a showing, "the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason" is discriminatory or retaliatory. *Id.* (quoting *Guessous*, 828 F.3d at 216).

The *McDonnell Douglas* framework also applies to claims under MFEPA. *Maryland Dep't of Health v. Best*, 264 Md. App. 181, 224 (2024) (noting that "[i]n cases where the evidence of discrimination is circumstantial rather than direct, Maryland courts apply the three-step burden-shifting analysis first articulated in *McDonnell Douglas*") (quoting *Belfiore v. Merchant Link, LLC*, 236 Md. App. 32, 45 (2018)); *Pease v. Nemours Found.*, No. CV JKB-23-0717, 2023 WL 3932312, at *2 (D. Md. June 9, 2023) (same).

### 1. Administrative Exhaustion

The court turns first to Defendant's arguments that Plaintiff failed to exhaust his administrative remedies as to his claim of retaliation in violation of the ADEA and MFEPA, his claim that he was made to complete physical fitness tests based on his age, and his claim of a hostile work environment in violation of the ADEA and MFEPA. (ECF No. 129-1 at pp. 19, 23–24, 39.)

"[B]efore filing suit under . . . the ADEA, a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC."[11] *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 29 U.S.C. § 633a(d)).   MFEPA, like the ADEA, requires a plaintiff exhaust administrative remedies before filing suit.  *See Bush v. Frederick Cnty. Pub. Schs.*, No. 23-1127, 2024 WL 639255, at *3 (4th Cir. Feb. 15, 2024) (first citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); then citing *Watson v. Bd. of Educ. for Prince George's Cnty.*, No. 2006, Sept. Term, 2019, 2021 WL 4893594, at *16 (Md. Ct. Spec. App. Oct. 20, 2021)).  A plaintiff's administrative charge "defines the scope of [his] subsequent right to institute a civil suit."  *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000).   "Requiring exhaustion of administrative remedies serves twin objectives: protecting agency authority in the administrative process and 'promot[ing] efficiency' in the resolution of claims."  *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

Generally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).  In determining whether a plaintiff has exhausted his claims, the court should look to claims raised in the administrative complaint, as well as claims "that would naturally have arisen from an investigation thereof."  *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).  "[W]hen the claims in [his] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative [complaint],' they are procedurally barred."  *Id.* (quoting *Chacko*, 429 F. 3d at 508–

---

[11] "Although exhaustion is imperative, it is not jurisdictional."  *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022); *see Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").

10)).  The court recognizes, however, that administrative charges "often are not completed by lawyers and as such 'must be construed with utmost liberality.'"  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)).  Still, the court is not "at liberty to read into administrative charges allegations they do not contain."  *Id.*

As the Fourth Cricut summarized in *Walton v. Harker*:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.  The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint.  [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge.  Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [] lawsuit.

33 F.4th 165, 172 (4th Cir. 2022) (citations omitted).

a.  Retaliation

Plaintiff's claim of retaliation seemingly arises from purported protected activity that he verbally complained to Caster in June of 2019 and was subject to adverse actions in the form of physical fitness tests and denial of the Summer 2019 Lead Officer promotion.[12]  (Gunter Dep. II, ECF No. 129-6 at 12:5–16:5.)  Defendant contends that because Plaintiff's EEOC charge made no mention of retaliation, and did not check the box indicating same, he has failed to exhaust the claim.

---

[12] The court notes Plaintiff's (unsupported) allegation that Smith denied him permission to use the bathroom and subjected him to harsher discipline; however, there is no record evidence of same presented, let alone evidence that it was done for retaliatory purposes or on which a reasonable fact finder could infer such a purpose.  (ECF No. 35 ¶¶ 32–35, 67.)  Additionally, while Plaintiff's filing of his EEOC charge certainly constitutes protected activity, it cannot form the basis of his claim where the complained-of adverse actions precede the protected activity.  *See Foster v. Summer Vill. Cmty. Ass'n, Inc.*, 520 F. Supp. 3d 734, 746 (D. Md. 2021) (noting that ""[t]o establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that the protected activity preceded the adverse action and that the employer knew the employee engaged in a protected activity") (quoting *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010)).

The court is satisfied that Plaintiff's claim of retaliation, which concerns the same time frames, actors, and factual allegations, is reasonably related to his EEOC charge and thus is properly exhausted. *See Chacko*, 429 F.3d at 506 and *Walton*, 33 F.4th at 172, *supra*. Although Plaintiff did not check the box indicating retaliation, it is plain that Plaintiff's claim of retaliatory conduct "would naturally have arisen from an investigation" into his allegations that he was discriminated against via physical fitness testing requirements and promotion denials. *See Parker*, 915 F.3d at 306, *supra*. The "failure to check a box on the form is not dispositive." *Mercer v. PHH Corp.*, 641 F. App'x 233, 238–39 (4th Cir. 2016). The court looks instead "at the charge as a whole, and the absence of a checked box is only one factor in [the] analysis." *Id.* Where Plaintiff's EEOC Charge included the exact conduct about which he now complains as retaliatory, and where the protected activity at issue arose in the context of opposing a discriminatory act identified in the EEOC Charge, the court is satisfied that Plaintiff's retaliation claim is properly exhausted.

> b. <u>Discrimination Based on Age / Physical Fitness Test</u>

For the same reasons, the court is satisfied that Plaintiff's claim that Defendant subjected him to disparate treatment based on age by requiring him to complete physical fitness tests, which also concerns the same underlying factual allegations, is also properly exhausted. Plaintiff's EEOC Charge identifies Defendant's practice of subjecting him to physical fitness tests; he identifies that this was a discriminatory practice; he identifies that he experienced discrimination based on age. (EEOC Charge, ECF No. 129-26.) Taken together, whether Defendant subjected Plaintiff to physical fitness tests because of his age is "reasonably related" to the EEOC Charge, and would have been "developed by reasonable investigation" of same. *See Walton*, 33 F.4th at 172, *supra*.

c.  Hostile Work Environment

Finally, the court is also satisfied that Plaintiff's claim of a hostile work environment is plainly related to, and would be developed by a reasonable investigation of, Plaintiff's EEOC Charge that alleged discrimination based on age and that his workspace had become hostile.  *See Walton*, 33 F.4th at 172, *supra*.  "[C]ourts do not require a plaintiff to have invoked a hostile work environment claim by name or to use specific 'magic words' in order to exhaust it."  *Gaines v. Baltimore Police Dep't*, No. CV ELH-21-1211, 2022 WL 1451629, at *18 (D. Md. May 9, 2022) (alteration in original) (quoting *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 171 (D.D.C. 2018)).  Instead, the concern is whether the plaintiff has offered "at least *some* suggestion of a hostile work environment in the charge narrative."  *Id.* (emphasis in original) (quoting *Congress*, 324 F. Supp. 3d at 171).  That is certainly the case here where the EEOC Charge expressly references the hostile workspace.

For the foregoing reasons, the court will deny the Motion to the extent it seeks summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies.  The court now turns to Defendant's remaining arguments as to all counts.

### 2.  *Counts One and Four: Retaliation in Violation of the ADEA and MFEPA*

As discussed above, the ADEA and MFEPA prohibit retaliation against an employee because he has "opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d); *see also* MD. CODE ANN., STATE GOV'T § 20-606(f) (same).  As with claims of discrimination, Plaintiff may prove retaliation "through one of two ways: (1) by direct evidence of retaliatory animus; or (2) through the *McDonnell Douglas Corp. v. Green* . . .  burden-shifting framework."  *Walton v. Harker*, 33

F.4th 165, 171 (4th Cir. 2022) (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015)). To demonstrate a prima facie case of retaliation, Plaintiff must show "(1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal nexus existed between the protected activity and the adverse action." *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 901–02 (4th Cir. 2024) (citing *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).

Defendant contends that Plaintiff cannot establish a prima facie case of retaliation because he cannot demonstrate he experienced an adverse employment action or that a causal nexus existed between his protected activity and the asserted adverse action.[13] The court focuses its analysis on Defendant's challenge to the third requirement, causation. As discussed above, Plaintiff contends he was retaliated against based on adverse actions in the form of physical fitness testing and his non-selection for the Summer 2019 Lead Officer opening. The court agrees. Specifically, as explained below, based on the undisputed facts and uncontradicted record, given the absence of evidence, no reasonable factfinder could conclude that Plaintiff states a prima facie case of retaliation under the ADEA and MFEPA.

As an initial matter, with regard to his protected activity, Plaintiff's retaliation claim relies upon the allegation that he complained to Caster in June of 2019 regarding age discrimination. But Plaintiff offers no evidence of this. The only evidence before the court is that Plaintiff "stood [his] ground" by speaking with Caster regarding the promotion, *see* Gunter Dep. II, ECF No. 129-6 at 17:17–18:6, and responded to Caster's email about the Summer 2019 Lead Officer opening,

---

[13] For purposes of the Motion, the court assumes without deciding that a reasonable factfinder could conclude that Plaintiff's claim that he was subjected to physical fitness tests in retaliation for protected activity constitutes an adverse action, despite the absence of evidence that these tests, or the results of same, resulted in or amounted to a negative employment consequence. *See Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 328 n.3 (4th Cir. 2018) (noting that the Fourth Circuit "adopt[s] the 'adverse action' formulation because the adverse action need not be employment- or workplace-related in order to sustain a retaliation claim").

saying "really ok i'm already senior officer by time on the site but it's whatever, *see* July 2019 Email, ECF No. 129-13.  Construing all reasonable inferences in Plaintiff's favor, such evidence fails to support a conclusion that Plaintiff engaged in protected activity.

Even assuming a reasonable factfinder could conclude that Plaintiff engaged in protected activity by his communication with Caster, Plaintiff fails to demonstrate a causal nexus between such activity and the identified adverse actions.  The undisputed record before the court is that Caster was not the decisionmaker who made decision regarding either of the adverse actions at issue, *see, e.g.*, ECF No. 35 ¶ 2 and Watts Decl., ECF No. 129-4 ¶ 17; and that Plaintiff was required to complete the physical fitness tests before he complained to Caster in June 2019, *see, e.g.*, Gunter Dep. II, ECF No. 129-6 at 22:17–21.  Further, no evidence before the court shows or suggests that Smith, who required Plaintiff to complete the physical fitness tests, or Watts, who made the decision regarding the July 2019 Lead Officer hiring, knew of Plaintiff's complaint to Caster, *see, e.g.*, Watts Decl., ECF No. 129-4 ¶ 30.  Plaintiff offers no evidence to the contrary or that would otherwise support an inference of a causal connection, as required.  He thus fails to generate a genuine dispute of material fact on this point.  *See, e.g.*, *Foster v. Summer Vill. Cmty. Ass'n, Inc.*, 520 F. Supp. 3d 734, 746 (D. Md. 2021) (explaining that ""[t]o establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that the protected activity preceded the adverse action and that the employer knew the employee engaged in a protected activity") (quoting *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010)); *Pitts v. Baltimore Police Dep't*, No. CV RDB-22-1404, 2023 WL 3158705, at *7 (D. Md. Apr. 28, 2023) (explaining that "a claimant must establish that their employer had knowledge of the protected activity when the retaliation occurred" (citing *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 410-11 (4th Cir. 2013)).

On this basis, Plaintiff fails to generate a triable issue as to his prima facie case of retaliation; and Defendant has met its burden to show it is entitled to judgment as a matter of law as to Counts One and Four.

### 3.  Counts Two and Five: Discrimination in Violation of the ADEA and MFEPA

As discussed above, the ADEA and MFEPA make it unlawful for an employer to fail or refuse to hire, or otherwise discriminate against, an individual with respect to terms and conditions of employment because of his age.  29 U.S.C. §§ 623(a)(1); MD. CODE ANN., STATE GOV'T § 20-606(a)(1)(i).  "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).  "In other words, an employee cannot prevail . . . by showing that age was *one* of multiple motives for an employer's decision; the employee must prove that the employer *would not have* [taken the adverse action] in the absence of age discrimination."  *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (emphasis in original).

A plaintiff may prove a claim under the ADEA by either direct or circumstantial evidence.[14]  *Id.*  Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)).  Where, as here, a plaintiff lacks direct evidence of age-based discrimination, his claims may proceed pursuant to the *McDonnell Douglas* burden-shifting

---

[14] Plaintiff offers no evidence (including his own testimony) to support his Fourth Amended Complaint allegation that Caster told him, with regard to Plaintiff's complaint about the January 2019 Lead Officer promotion, "you should be glad your old ass has a job."  (ECF No. 35 ¶ 44.)  Even if such evidence were in the record, Plaintiff offers no evidence that Caster, who did not make the promotion decisions, somehow influenced Watts' promotion decision for the Summer 2019 Lead Officer opening.

framework. *Id.* "This framework recognizes 'that the question facing triers of fact in discrimination cases is both sensitive and difficult, and that there will seldom be eyewitness testimony as to the employer's mental processes.'" *Westmoreland*, 924 F.3d at 725 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)). Pursuant to this framework, Plaintiff must first establish a prima facie case of age-based discrimination. *Palmer*, 72 F.4th at 63.

Plaintiff asserts age-based discrimination[15] in the form of required physical fitness tests and the failure to select him for the Summer 2019 Lead Officer opening.[16] (Gunter Dep. II, ECF No. 129-6 at 26:15–27:12.) Although the analysis overlaps in some measure, the court considers each below.

a. Physical Fitness Tests

Pursuant to the *McDonnell Douglas* framework, to establish a prima facie case of age discrimination, Plaintiff must demonstrate (1) he was at least 40 years old; (2) satisfactory job performance; and (3) an adverse employment action that (4) "occurred 'under circumstances

---

[15] The court observes that Plaintiff contends each of these asserted adverse actions was also retaliation for engaging in protected activity. Plaintiff's theory of his claims is somewhat at odds with the requisite showing under the ADEA. *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (explaining that "an employee cannot prevail . . . by showing that age was *one* of multiple motives for an employer's decision; the employee must prove that the employer *would not have* [taken the adverse action] in the absence of age discrimination") (emphasis in original).

[16] Similarly, Plaintiff has produced no evidence to generate a dispute of material fact as to his claims of age-based discrimination via harsh treatment and disciplinary action, or his discharge. (ECF No. 35 ¶ 72.) In short, Plaintiff offers no evidence to support such a conclusion. The undisputed facts and record before the court similarly do not support a discriminatory discharge claim as a matter of law. Pursuant to the *McDonnell Douglas* framework, a plaintiff asserting a discriminatory discharge claim can make a prima facie case by demonstrating "(1) [he] is a member of a protected class, (2) [he] suffered an adverse employment action (such as discharge), (3) [he] was performing [his] job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) [his] position remained open or was filled by a similarly qualified applicant outside the protected class." *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (quoting *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006)). The undisputed facts before the court are that Plaintiff's voluntary resignation was processed after multiple no call, no shows and repeated instruction from Defendant to make contact. There is no evidence as to whether Plaintiff's position was filled. And while Plaintiff argues he was entitled to FMLA, no evidence is identified in support of same, and, regardless, Plaintiff's non-response is undisputed. Against this backdrop, Plaintiff fails to offer evidence to generate a dispute of fact (*i.e.*, a triable issue) that he was performing his job duties in a manner that met Defendant's legitimate expectations at the time of his discharge or separation from employment.

giving rise to an inference of unlawful discrimination.'" *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 815 (4th Cir. 2026) (regarding Title VII of the Civil Rights Act of 1964 ("Title VII")) (citing *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025)). "[T]he fourth element can be met by establishing 'similarly-situated employees outside the protected class received more favorable treatment.'" *Id.* (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004) (citations omitted)).

An adverse employment action is one that "affects the terms, conditions or benefits of employment." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (citing *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom.*, 566 U.S. 30 (2012)). Importantly, these terms are "not used 'in the narrow contractual sense,'" and instead "cover[] more than the 'economic or tangible.'" *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024) (discussing the standard in Title VII cases) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)). Plaintiff must only show "some harm respecting an identifiable term or condition of employment" and "need not show that the harm was significant, serious, substantial, 'or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.'" *Id.* at 354-55.

For purposes of resolving the Motion, the court focuses on Defendant's challenges under the fourth factor—that, based on the undisputed facts and uncontradicted record, Plaintiff cannot demonstrate that the physical fitness testing requirement occurred under circumstances giving rise to an inference of age-based discrimination. There is little to no evidence before this court to support a dispute of material fact as to same. Plaintiff identifies no evidence to support age-based animus by Smith, the person he contends ordered him to complete these examinations; a nexus

between the physical fitness tests and his age;[17] or of any specific comparators, let alone similarly-situated ones. *See Johnson*, 163 F.4th at 815–16 (noting that "there must be 'sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination'") (quoting *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017)).   Instead, Plaintiff's claim is based entirely on his "own unsupported speculation and conclusory allegations," which is insufficient to survive summary judgment.  *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023); *see Wai Man Tom v. Hospitality Ventures, LLC*, 980 F.2d 1027, 1037 (4th Cir. 2020) (holding that "'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).)

Based on the undisputed facts and record before the court, no reasonable factfinder could conclude that Plaintiff demonstrates a prima facie case that he was subject to discrimination based on age in the form of physical fitness testing.  The court will therefore grant the Motion to the extent it seeks summary judgment as to same.

b.  Failure to Promote

Similarly, to establish a prima facie case under the *McDonnell Douglas* framework that Defendant failed to promote Plaintiff because of his age, he must show: (1) he was at least 40 years old; "(2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly

---

[17]  Plaintiff testified that he does not know whether other employees (regardless of age) were required to complete the physical fitness tests.  (Gunter Dep. II, ECF No. 129-6 at 79:1–16.)

qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

As an initial matter, the court notes that Plaintiff fails to offer any evidence that he applied for the Summer 2019 Lead Officer opening. Indeed, the only record before the court is that he responded to Caster's email including the posting, stating "really ok i'm already senior officer by time on the site but it's whatever." (July 2019 Email, ECF No. 129-13.) On this basis alone, Plaintiff fails to generate a triable issue as to the second element.

Even assuming Plaintiff did apply for the Summer 2019 Lead Officer opening, Plaintiff fails to offer evidence to establish a prima facie claim of discrimination under the *McDonnell Douglas* burden shifting framework. As in the retaliation context, once a plaintiff makes a prima facie showing, the burden then shifts to the defendant to "'produc[e] evidence that' it acted 'for a legitimate, nondiscriminatory reason.'" *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (alteration in original) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)). "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 254–55). If Defendant does so, the burden shifts back to Plaintiff to show by a preponderance of the evidence that "the legitimate reasons offered by the defendant[-employer] were not its true reasons, but were a pretext for discrimination." *Westmoreland*, 924 F.3d at 726 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

Defendant contends it has met its burden to show a legitimate, nondiscriminatory reason for its decision not to promote Plaintiff—the individual hired did not have a disciplinary history,

unlike Plaintiff, and had prior experience filling in for a Lead Officer position.  In support thereof, Defendant offers undisputed record evidence of Plaintiff's disciplinary history and McClure's lack thereof, as well as of McClure's prior experience filling in for the Lead Officer.[18]  The court agrees that Defendant has met its burden, as Defendant has "set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  *Hicks*, 509 U.S. at 507, *supra*.

Accordingly, the burden shifts back to Plaintiff to rebut Defendant's evidence by demonstrating its purported reason for not promoting him was merely a pretext for discrimination. *Westmoreland*, 924 F.3d at 726, and *Burdine*, 450 U.S. at 253, *supra*.  "A plaintiff may establish pretext through two routes"—by "offering evidence that the employer's justification is 'unworthy of credence," or by "adducing other forms of circumstantial evidence sufficiently probative of discrimination."  *Wannamaker-Amos*, 126 F.4th at 257 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 134, 147 (2000)).  "If the plaintiff makes either showing of pretext, the case must be decided by a trier of fact and cannot be resolved on summary judgment.  *Id.* (citing *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021)).

Plaintiff has failed to adduce evidence to meet his shifted burden.  There is no evidence before this court to support a finding that Defendant's offered legitimate, nondiscriminatory reason is factually inaccurate, which is to say Plaintiff offers no evidence to challenge or contradict the existence or content of his disciplinary history (or McClure's lack thereof), or evidence that McClure has not previously filled in as Lead Officer (or that Plaintiff had).  And Plaintiff offers no other circumstantial evidence sufficiently probative of discrimination, including, for example,

---

[18] It should be noted that the same as true as to the January 2019 Lead Officer opening that was eventually filled by Mongomery.

any age-based considerations or animus of Watts, the decisionmaker at issue, or of any other employee that may have in some way affected the promotion decision. Indeed, to the contrary, decisionmaker Watts' membership in the same protected class (age), and the fact that he is older than Plaintiff, "is circumstantial evidence against age discrimination." *See McNeal v. Montgomery Cnty., Md.*, 307 F. App'x 766, 775 (4th Cir. 2009). Based on the undisputed facts, no reasonable factfinder could conclude that "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

Accordingly, based on the undisputed facts and record before it, the court discerns no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law as to Plaintiff's age discrimination claims. The court will therefore grant the Motion as to Counts Two and Five.

### 4. *Counts Three and Six: Hostile Work Environment in Violation of the ADEA and MFEPA*

"[A] hostile work environment claim is available to individuals over the age of 40 under the ADEA." *Royster v. Gahler*, 154 F. Supp. 3d 206, 235 (D. Md. 2015), *abrogated on other grounds by Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97 (4th Cir. 2019) (quoting *Martin v. Scott & Stringfellow, Inc.*, 643 F.Supp.2d 770, 786 (E.D. Va. 2009)); *see Chatman v. Hegseth*, No. 1:24-CV-1585 (LMB/WEF), 2025 WL 2432722, at *10 (E.D. Va. Aug. 22, 2025) (noting that "[c]ourts analyze an ADEA hostile work environment claim under the same standard as a Title VII hostile work environment claim"). MFEPA similarly prohibits harassment of employees.[19] MD. CODE ANN., STATE GOV'T § 20-606(a)(5).

---

[19] While the definition of "harassment" under MFEPA was amended, effective October 1, 2022, to remove the "severe or pervasive" requirement, *see* MD. CODE ANN., STATE GOV'T § 20-601(h), that does not affect the court's analysis here where all claims arise from acts prior to such amendment, and there is no indication the amendment was intended to have retroactive effect. *See Est. of Zimmerman v. Blatter*, 458 Md. 698, 728 (2018) (explaining that "statutes are presumed to operate prospectively unless a contrary intent appears") (citation omitted); *See also, e.g., Felder v. Chimes*

"A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). "This high burden cannot be satisfied by claims based on 'petty slights or minor annoyances.'" *Barnhill v. Bondi*, 138 F.4th 123, 140 (4th Cir. 2025) (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022)).

The demonstrate a hostile work environment claim under the ADEA, Plaintiff must show "(1) he experienced unwelcome harassment; (2) the harassment was based on his[] age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.'" *Wells v. Gates*, 336 F. App'x 378, 386–87 (4th Cir. 2009) (quoting *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006)). The court focuses its analysis on the second and third elements.

As to the second element, as the court has now repeatedly addressed, Plaintiff offers no evidence upon which a reasonable factfinder could conclude that the purported harassment (the physical fitness test requirements and the failure to promote) was based on his age. *See id.* On this basis alone, Plaintiff fails to generate a triable issue, and so his hostile work environment claims fail. *See, e.g.*, *Gurganus v. Beneficial N. Carolina, Inc*, 25 F. App'x 110, 112 (4th Cir. 2001) (concluding that the plaintiff did not carry her burden of showing the alleged harassment was because of her age where there was no evidence that the alleged behavior was unique to her

---

*D.C., Inc.*, No. 092, Sept. Term,2021, 2022 WL 17974614, at *7 (Md. Ct. Spec. App. Dec. 28, 2022) (applying a "severe or pervasive" standard to an MFEPA claim); *Walters v. Chimes D.C., Inc.*, No. 253, Sept. Term,2021, 2022 WL 17974610, at *5 (Md. Ct. Spec. App. Dec. 28, 2022) (same); *Worthy v. Chimes D.C., Inc.*, No. 034, Sept. Term, 2021, 2022 WL 17974613, at *6 (Md. Ct. Spec. App. Dec. 28, 2022) (same). In any event, Plaintiff's MFEPA claim based on hostile work environment nonetheless fails because Plaintiff fails to adduce evidence that the alleged harassment was based on his age. *See* MD. CODE ANN., STATE GOV'T § 20-601(h) (defining harassment as "unwelcome and offensive conduct" that is based on, relevant here, age).

or her protected class); *Brown v. Wal-Mart Stores E., L.P.*, No. CA 3:07-2943-JFA-JRM, 2009 WL 2940203, at *10 (D.S.C. Sept. 8, 2009) (concluding that the plaintiff had failed to show any perceived harassment was based on age and that "[c]onclusory statements, without specific evidentiary support,  cannot support an actionable claim for harassment") (quoting *Causey v. Balog,* 162 F.3d 795, 802 (4th Cir. 1998)).

Plaintiff similarly fails to offer evidence to create a triable issue as to the third element— that the harassment at issue was sufficiently severe or pervasive.  "The severe or pervasive conduct which gives rise to an abusive work environment must be both objectively and subjectively 'hostile' and 'abusive.'"  *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022) (citing *Harris*, 510 U.S. at 21–22).  A plaintiff must fulfill the subjective and objective components described above, which is to say "the employee must both personally and reasonably believe that the conduct rises to the level of a hostile environment."  *Id.*  The court must consider all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris*, 510 U.S. at 23).

"[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'"  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher*, 524 U.S. at 788.  Relatedly, "'[c]allous behavior by [one's] superiors' and 'even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.'"  *Couch v. City of Virginia Beach*,

30

768 F. Supp. 3d 741, 752 (E.D. Va. 2025) (quoting *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16).  In

all, "[p]laintiffs must clear a high bar in order to satisfy the severe or pervasive test."  *Sunbelt*

*Rentals, Inc.*, 521 F.3d at 315.

Based on the undisputed record evidence before it, the court concludes that no reasonable

factfinder could conclude that requiring Plaintiff to complete physical fitness tests and failing to

promote him on two occasion amounts to a workplace "permeated with discriminatory

intimidation, ridicule, and insult," such that it "alter[ed] the conditions of [his] employment."  *See*

*Boyer-Liberto*, 786 F.3d at 277, *supra*.

Cases discussing the severe or pervasive requirement provide guidance on the high bar to

satisfy the standard.  *See, e.g.*, *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013)

(finding allegations of, *inter alia*, "'mockingly' yelling at [plaintiff]," "yelling and pounding her

hands on her desk," "'repeatedly harp[ing]' on a mistake," "making 'snide comments,'" "playing

favorites with employees and pitting employees against each other," and "unfairly scrutinizing and

criticizing [plaintiff's] use of leave" fell short of the severe or pervasive standard); *Bass v. E.I.*

*DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding allegations of "a workplace

dispute regarding her reassignment and some perhaps callous behavior by her superiors"

insufficient to amount to severe or pervasive age-based activity to support hostile work

environment); *Couch v. City of Virginia Beach*, 768 F. Supp. 3d 741, 752 (E.D. Va. 2025) (finding

allegations that, *inter alia*, plaintiff's job duties were changed on occasion; his supervisor yelled

at him, criticized his work, and excluded him from meetings, and "[he] was not hired for certain

jobs to which he subsequently applied," insufficient to meet requisite severe or pervasive conduct).

Plaintiff's claims that he was passed over for a promotion on two occasions and required

to take a physical fitness test once it was no longer required by contract are insufficient as a matter

of law to show that the treatment to which he was subjected was so extreme as to amount to a change in the terms and conditions of his employment. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315, *supra*. These allegations do not support a showing of a workplace "permeated with discriminatory intimidation, ridicule, and insult." *See Boyer-Liberto*, 786 F.3d at 277, *supra*. This is especially clear when considering other factors, including that the decisionmaker who did not select Plaintiff for the promotion was older than Plaintiff and is not otherwise alleged to have engaged in harassing behavior toward Plaintiff, and where Plaintiff offers no evidence to support a conclusion that others were not required to complete the physical fitness tests during the relevant period. Further, the challenged acts are discrete and isolated, and not part of a pattern or ongoing course of conduct; and nothing in the record supports a reasonable conclusion that the complained-of conduct was severe, physically threatening, or interfered with Plaintiff's work performance. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315, *supra*.

Based on the foregoing, there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on Plaintiff's hostile work environment claims. The court will grant the Motion as to Counts Three and Six.

## B. Whistleblower Retaliation Claims

The court next turns to Defendant's challenges to Counts Seven and Eight, which assert whistleblower retaliation under the applicable statutes.

### 1. Count Seven: Retaliation in Violation of the FCA

"The FCA is designed to discourage contractor fraud against the federal government." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Under the FCA, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement

material to a false or fraudulent claim" is "liable to the United States Government for a civil penalty." 31 U.S.C. § 3729(a)(1). Relevant here, the FCA's whistleblower anti-retaliation provision at 31 U.S.C. § 3730(h) prohibits retaliation on the basis of "lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

To prevail on a claim of retaliation under § 3730(h), a plaintiff must "establish three basic elements": (1) "he engaged in 'protected activity'"; (2) "his employer knew of these acts"; and (3) "his employer took adverse action against him as a result of these acts." *Glynn*, 710 F.3d at 214 (citing *Zahodnick v. Int'l Bus. Mach. Corp.,* 135 F.3d 911, 914 (4th Cir. 1997)). Protected activity includes acts "in furtherance of an [FCA action]" or "other efforts to stop 1 or more [FCA violations]."[20] *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018) (quoting 31 U.S.C. § 3730(h)(1)). When purported protected activity falls under the latter category, as is the case here, "the plaintiff must have held 'an objectively reasonable belief that the employer [was] violating, or soon [would] violate, the FCA.'" *Leverette v. Louis Berger U.S., Inc.*, No. 22-1891, 2024 WL 2355419, at *1 (4th Cir. May 23, 2024) (quoting *United States ex rel. Grant*, 912 F.3d at 201). "A belief is objectively reasonable when the plaintiff alleges facts sufficient to show that he believed his employer was violating the FCA, that this belief was reasonable, that he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA." *Skibo on behalf of United States v. Greer Lab'ys, Inc.*, 841 F. App'x 527, 534 (4th Cir. 2021) (quoting *United States ex rel. Grant*, 912 F.3d at 200–201).

For purposes of resolving the Motion, the court will assume material facts in dispute as to whether Plaintiff engaged in protected activity. The undisputed facts, however, are insufficient to

---

[20] Plaintiff's claim is asserted under the second prong. (ECF No. 35 ¶ 103) (alleging Plaintiff "engaged in efforts to stop one (1) or more violations of the False Claims Act").

demonstrate that Defendant knew of any protected activity or took adverse action against Plaintiff as a result. *See Glynn*, 710 F.3d at 214, *supra*. The adverse actions Plaintiff contends he experienced include being denied the Summer 2019 Lead Officer promotion and being terminated. (Gunter Dep. II, ECF No. 129-6 at 40:8–16, 105:920.)

As discussed above, to prevail in his claim, Plaintiff must demonstrate that Defendant knew of his protected activity. This prong, "known as the 'notice' prong," is "viewed from 'the employer's perspective' and turns on whether 'the employer is aware of the employee's conduct.'" *U.S. ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 388 (4th Cir. 2012) (quoting *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 344 (4th Cir. 2010)). "[T]he employer must be 'on notice that litigation is a reasonable possibility.'" *Id.* (quoting *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 868 (4th Cir. 1999)). Plaintiff has identified no evidence to support such notice.

The undisputed facts are as follows: Plaintiff did not inform Watts or Hoover[21] of his communications with OIG, nor did Watts or Hoover know that Plaintiff engaged in protected activity; and OIG did not begin a formal investigation until after Plaintiff was no longer employed with Defendant. *See Austin v. Charleston Day Sch.*, No. 2:23-CV-02899-JD, 2025 WL 1753694, at *10 (D.S.C. June 25, 2025), *reconsideration denied sub nom.*, 2025 WL 3546269 (D.S.C. Dec. 10, 2025) (explaining that "[t]o establish causation, the plaintiff must show that the final decision-maker responsible for approving or implementing the adverse action was aware of the protected conduct"); *Nifong v. SOC, LLC*, 234 F. Supp. 3d 739, 754–55 (E.D. Va. 2017) (finding second prong was not satisfied where undisputed record was that decisionmaker was unaware of plaintiff's

---

[21] The reader will recall, Watts was the decisionmaker regarding the Summer 2019 Lead Officer opening, and Watts and Hoover were the decisionmakers re processing Plaintiff's voluntary resignation.

protected activity). Where there is no evidence that the relevant decisionmakers knew of Plaintiff's protected activity, he fails to generate a dispute of fact as to same.

Plaintiff's asserted report to Caster does not compel a different result. While Plaintiff contends he informed Caster of his complaint to OIG, the only supportive evidence on this point is Plaintiff's testimony that he told Caster he was "being investigated for falsifying time cards," that it was "fraud" to falsify timecards, and that it was a violation of Plaintiff's rights. (Gunter Dep. I, ECF No. 129-5 at 38:1–39:15; Gunter Dep. II, ECF No. 129-6 at 58:15–60:14.) Such communications, devoid of specific reference to tie them to the FCA and which instead focus on injury to Plaintiff's rights, are not sufficient to put Caster (and, in turn, Defendant) on notice that FCA litigation is a reasonable possibility. *See U.S. ex rel. Parks*, 493 F. App'x at 388, *supra*.[22] Further, Plaintiff does not offer evidence to support that Caster informed Watts or Hoover, the relevant decisionmakers, of this communication with Plaintiff. Accordingly, no reasonable factfinder could conclude, upon the record evidence, that Defendant was on notice of FCA protected activity by Plaintiff (to the extent he engaged in same).

Finally, the last prong requires Plaintiff demonstrate that Defendant "took adverse action against him as a result of these acts." *Glynn*, 710 F.3d at 214, *supra*. As the court's discussion above illustrates, Plaintiff offers no evidence tying his OIG communications in January 2019 to the Summer 2019 Lead Officer promotion decision or his termination. There is no evidence, beyond pure speculation, to raise even an inference that the relevant decisionmakers were aware of Plaintiff's communication with OIG, let alone that they took adverse action against him as a result of same. Indeed, with regard to Plaintiff's termination in particular, the undisputed facts are that Defendant made repeated contact with Plaintiff after he stopped coming to work and asked

---

[22] The court notes further that Plaintiff testified that Caster did not believe him. (Gunter Dep. II, ECF No. 129-6 at 59:17–60:13.)

him to reach out before processing his voluntary resignation.[23]  Plaintiff has failed to present even a mere scintilla of evidence in support of this point.

Even if the record were sufficient to create a triable issue as to Plaintiff's prima facie case, his claim would still fail because he fails to adduce evidence to support that Defendant's offered reason for refusing to promote him and for processing his discharge were pretextual.  The Fourth Circuit has applied the *McDonnell Douglas* burden-shifting framework to retaliation cases under the FCA.  *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 F. App'x 166, 176 (4th Cir. 2018).  Under such framework, as discussed above, if Plaintiff "establishes a prima facie case of retaliation, the burden then shifts to the employer to articulate a legitimate, nonretaliatory basis for the adverse employment action." *Leverette*, 2024 WL 2355419, at *1.  "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by showing that the employer's purported nonretaliatory reasons were pretextual."  *Id.*

As discussed above, Defendant here has offered evidence of its legitimate, non-retaliatory reasons for the challenged adverse employment actions.  As to the failure to promote, Defendant offers uncontradicted evidence of Plaintiff's disciplinary history and McClure's lack thereof, as well as McClure's experience filling in as Lead Officer.  As to Plaintiff's discharge, Defendant offers uncontradicted record evidence that Plaintiff did not attend scheduled shifts, failed to let Defendant know, and following repeated warnings, was processed as a voluntary resignation. Plaintiff offers no record evidence to support a conclusion that these reasons were "dishonest or not the real reason for his termination." *United States ex rel. Dillard v. Fluor Corp., Inc.*, No. 22-1450, 2023 WL 8618545, at *1 (4th Cir. Dec. 13, 2023) (quoting *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 722 (4th Cir. 2013)).

---

[23] This is particularly important here where Plaintiff's own prior sworn statements are in conflict, with him claiming in his EEOC Charge that he resigned from Defendant's employ due to a hostile workspace.

Based on the foregoing, no reasonable factfinder could conclude that Defendant retaliated against Plaintiff in violation of the FCA's anti-retaliation provision. Defendant is therefore entitled to judgment as a matter of law, and the court will grant the Motion as to Count Seven.

### 2. Count Eight: Violation of the DCWPA[24]

"The DCWPA prohibits retaliation against employees of defense contractors who report certain types of misconduct." *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 F. App'x 166, 178 (4th Cir. 2018). Specifically, it provides that an employee of a contractor or subcontractor "may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to" relevant here, the Inspector General, evidence of "[g]ross mismanagement." 10 U.S.C. § 4701(a)(1), (2).[25]

To establish a prima facie case of retaliation in violation of the DCWPA, "a whistleblower plaintiff must establish that: (1) he engaged in protected activity; (2) his employer knew or was reasonably on notice that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity." *Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 F. App'x 191, 193 (4th Cir. 2020) (quoting *United States ex rel. Cody v. Mantech Int'l Corp.*, 207 F. Supp. 3d 610, 621 (E.D. Va. 2016)), *aff'd* 746 F. App'x 166 (4th Cir. 2018). "The difference between a retaliation action pursuant to [the DCWPA] and one under the FCA is that, under [the DCWPA] framework, a plaintiff must only establish that retaliation for a protected disclosure 'was

---

[24] The court notes Defendant's footnote asserting that DCWPA is inapplicable here because Defendant's contract fell under the Department of Homeland Security, not the Department of Defense. (ECF No. 129-1 at p. 39 n.9.) The Fourth Circuit "warn[s] against ruling on a 'minimally addressed' issue based on arguments only raised in a footnote, as it is 'unfair' to the opposing party 'and would risk an improvident or ill-advised opinion on the legal issues raised.'" *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 278 (4th Cir. 2022); *see Sanders v. Callender*, No. CV DKC 17-1721, 2018 WL 337756, at *7 (D. Md. Jan. 9, 2018) (noting that the Fourth Circuit's reasoning "has led district courts to decline to consider arguments only raised in a footnote") (citing cases). Defendant's anemic presentation of the point set forth in footnote 9 is in stark contrast to its fulsome argument on this claim elsewhere in the main text of its brief. The court will therefore exercise its discretion not to consider Defendant's footnote argument.

[25] The relevant statutory provision was previously numbered at 10 U.S.C. § 2409.

a contributing factor' to any adverse personnel action taken against the plaintiff." *United States ex rel. Cody*, 746 F. App'x at 178 (citation omitted).    "A contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Id.* (quoting *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014)).

For the same reasons set forth above regarding Plaintiff's FCA claim, Plaintiff fails to generate a genuine dispute of material fact as to his DCWPA claim, and Defendant is entitled to judgment as a matter of law.[26]  The court will therefore grant the Motion as to Count Eight.

## V.    CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion will be granted.[27]

February 27, 2026                                        /s/

                                                        Julie R. Rubin
                                                        United States District Judge

---

[26] The DCWPA framework permits retaliation for disclosure to be a contributing factor.  This distinction from an FCA claim does not materially affect the court analysis.

[27] At the close of his opposition, Plaintiff asks the court to "reconsider the motion for summary judgment" at ECF No. 43, previously denied by Judge Bennett on April 22, 2022.  (ECF No. 131 at p. 16.)  Apart from the fact that this request comes more than three years after the ruling, the court discerns no reason to reconsider Judge Bennett's order, which found Plaintiff's motion for summary judgment premature while discovery was ongoing.  Nothing prevented Plaintiff from seeking summary judgment following the close of discovery, in accordance with the deadlines set forth in the court's scheduling order at ECF No. 110.  The court will therefore deny Plaintiff's request.